IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

```
- - - - - - - - - - - - - - - x
In Re:                        :        12-20834
                              :        (Chapter 7)
RICH GLOBAL, LLC,             :
                              :
          Debtor.            :
- - - - - - - - - - - - - - - x
```

U.S. Bankruptcy Court
2120 Capitol Avenue
6th Floor
Cheyenne, WY 82001

July 11, 2013

***TELEPHONIC HEARING RE:***
**TRUSTEE'S MOTION TO APPROVE SETTLEMENT;**
**AND OBJECTIONS THERETO**

BEFORE THE HONORABLE PETER J. McNIFF, JUDGE

<u>APPEARANCES</u>:

| | |
|---|---|
| Chapter 7 Trustee: | TRACY ZUBROD, ESQ.<br>1907 House Avenue<br>Cheyenne, WY 82001 |
| For Debtor: | MARK E. MACY, ESQ.<br>217 West 18th Street<br>Cheyenne, WY 82001 |
| For Rich Dad Operating Company: | JOHN F. YOUNG, ESQ.<br>1700 Lincoln St., Ste. 1400<br>Denver, CO 80203 |
| For Robert and Kim Kiyosaki: | JENNY M.F. FUJII, ESQ.<br>303 E. 17th Ave., Ste. 500<br>Denver, CO 80203 |
| | PAUL HUNTER, ESQ.<br>2616 Central Avenue<br>Cheyenne, WY 82001 |
| For Learning Annex, et al.: | JAMES R. BELCHER, ESQ.<br>237 Storey Blvd., Ste. 110<br>Cheyenne, WY 82009 |

Proceedings recorded by electronic sound recording,
    Transcript requested 7/24/13 by *Marcus Williams*
    Transcript provided 8/9/13 by VERBATIM DIGITAL REPORTING, LLC
    Cost of Transcript: $83.95 (\$3.65 ~ Ordinary)

1                      P R O C E E D I N G S

2                  (Court called to order)

3          THE COURT:  Good morning, this is Judge McNiff.

4          This is our first 8:30 matter today.  The case is

5    12-20834.  This is Chapter 7.  The name of the case is Rich

6    Global, LLC.

7          The particular matter before the Court today is a

8    hearing on the Trustee's Motion to Approve the Settlement.

9    We have an objection filed by Rich Dad Operating Company, an

10   objection filed by Mr. and Mrs. Kiyosaki, and I believe we

11   have an objection filed by Learning Annex, et al.

12         And so what we need to do is to get the appearances

13   of the parties.  Let's -- let's begin with counsel for the

14   movant here, and our trustee, Ms. Zubrod.

15         MS. ZUBROD:  Good morning, Your Honor.  Tracy

16   Zubrod, Chapter 7 Trustee, 1907 House Avenue, Cheyenne,

17   Wyoming 82001, phone number is, 307-778-2557.

18         THE COURT:  Thank you.  On behalf of Rich Dad.  I

19   believe it's Mr. Young this morning.

20         MR. YOUNG:  Good morning, Your Honor.  John Young

21   on behalf of Rich Dad Operating Company.  My address is 1700

22   Lincoln Street, Denver, Colorado.

23         THE COURT:  All right.  On behalf of Mr. and Mrs.

24   Kiyosaki, we know that Ms. Fujii is with us today and Mr.

25   Hunter, I believe.  Who's going to handle the matter?

1        MS. FUJII:  Good morning, Your Honor.  Jenny Fujii

2   appearing on behalf of Robert and Kim Kiyosaki.  I believe

3   that our office will handle the matter this morning.

4        THE COURT:  Okay.  Are you with us, Mr. Hunter?

5        MR. HUNTER:  Yes, thank you, Your Honor.  Would you

6   like me to enter my appearance?

7        THE COURT:  I would.

8        MR. HUNTER:  Okay.  Paul Hunter appears as counsel

9   for the Kiyosakis.  My address is 2616 Central Avenue here

10  in Cheyenne, Wyoming.  Thank you.

11       THE COURT:  We have another opposing party here,

12  Learning Annex et al.  I believe that's Mr. Belcher, please.

13       MR. BELCHER:  Good morning, Your Honor.  Jim

14  Belcher with the law firm Belcher & Boomgaarden, LLP, 237

15  Storey Boulevard, Suite 110, Cheyenne, Wyoming 82009.

16  Learning Annex does not oppose this, Your Honor.  Learning

17  Annex is a party to the settlement and supports the

18  trustee's Motion.

19       THE COURT:  So, you support?

20       MR. BELCHER:  Yes.

21       THE COURT:  Okay.

22       MR. BELCHER:  It filed a reply to the objections of

23  Rich Dad Operating Company and the Kiyosakis.

24       THE COURT:  Okay.  Well, we'll -- we'll save a spot

25  for you.

1          MR. BELCHER:  Okay, thank you.

2          THE COURT:  Let's go the -- let's go to the

3   participating debtor here.  I believe Mr. Mark Macy's with

4   us today.  Mr. Macy?

5          MR. MACY:  Good morning, Your Honor.  Mark Macy,

6   217 West 18th Street, Cheyenne, Wyoming, appearing on behalf

7   of Rich Global, the debtor.  We filed a joinder in the

8   objection.

9          THE COURT:  Okay.  Well, boy, this is -- this has

10  been quite a deal here.  Let's go to Ms. Zubrod first.  What

11  have you done, and what has happened, Ms. Zubrod?

12         MS. ZUBROD:  Thank you, Your Honor.  The Court

13  might recall, we had a hearing on May 2nd, 2013.  And at

14  that time, the estate has moved to abandon the pending

15  litigation that was identified on the Statement of Financial

16  Affairs, and specifically, this appeal, that now we are

17  asking the Court to approve the sale off.

18         Several parties disagreed at that time with the

19  trustee's motion, some citing the appeal's not property of

20  the estate, other's stating that there's no legal authority

21  to abandon the appeal.  And then another said that it's not

22  property because it wasn't identified in the Schedules.

23         The Court suggested at that hearing that the

24  objecting parties try to purchase the interest, and I think

25  the Court used some phrase such as, if you had skin in the

1    game, then you need to pony up.  And that's what happened

2    here.  The Learning Annex decided to make an offer and has

3    since ponied up to purchase the estate's interest in this

4    estate asset.

5         I did receive this morning Mr. Macy's objection

6    that he filed sometime last night.  I would note since there

7    has been enough time to file a formal response with the

8    Court, that paragraph three of his objection, that there are

9    several misstatements of fact, specifically regarding the

10   bidding procedures for the auction that was to be held.

11        There were bidding procedures put in place.

12   Unfortunately, Learning Annex and Rich Dad Operating would

13   not agree with the procedures.  And unless the estate agreed

14   to follow either one or the other procedures, no one was

15   going to participate.

16        And so each side had a nonnegotiable position on

17   the bidding procedures, so that is why the auction never

18   occurred.  And I think that when we had the hearing on May

19   2nd, 2013, Mr. Macy was not present at that hearing, so he

20   would not have had the benefit of the Court's direction

21   regarding trying to sell this asset.

22        So we're here today, having followed the Court's

23   advice.  Learning Annex has made an offer.  We're asking the

24   Court to approve that settlement.  We think it's in the best

25   interest of the estate to bring in money for the benefit of

1    the creditors, even if there are only two creditors that

2    have filed Proofs of Claim in this case.  But that is what

3    we're seeking to accomplish today.  Thank you.

4            THE COURT:  All right.  Mr. Belcher, in a

5    supporting mode here.  Where are we with you, sir?

6            MR. BELCHER:   Well, Your Honor, first off I want

7    to make it clear what's going on here.  Learning Annex

8    agreed to settle this litigation.  There's been mentioned,

9    both in some of the objections of some of the parties and,

10   if I understood the trustee's comments, on the sale of this

11   asset.  It's not an asset, and it's settlement of

12   litigation.

13           Your Honor, I think Learning Annex's position is

14   discussed in detail in its reply to the Kiyosaki and Rich

15   Dad Operating Company objections.  I discovered this morning

16   when I got to work that the debtor had filed an untimely --

17   untimely objection last night.  The trustee's motion set a

18   June 21st written objection deadline, which is weeks ago.

19   So I assume that this is just another one of the Kiyosaki's

20   move to see if they can't lawyer up a little more.

21           The applicable law that governs this is discussed

22   in Learning Annex's reply, as well as the analysis of the

23   trial court that Rich Dad Operating asked the trustee to

24   appeal.  And I'm not going to get into that in detail today.

25           In summary, this is Learning Annex's position.  The

1    trustee has discretion to settle the appeal, and this Court

2    is only -- its role is not to second guess the trustee's

3    discretion, but to see if the trustee's judgment is

4    reasonable.

5           Your Honor, if the Court were not to accept the

6    trustee's agreement to enter into the settlement with

7    Learning Annex, it would, first, forego a $100,000 payment

8    that Learning Annex has offered to settle this; secondly, it

9    would require the estate to fund the cost to appeal; and

10   third, it would delay resolution of this Chapter 7 case.

11          Your Honor, this appeal is not an asset and Section

12   363 of the Bankruptcy Code standards do not apply.  And that

13   -- that discretion about this being an asset was fully

14   briefed in the previous objection by Learning Annex to the

15   trustee's abandonment of this litigation.

16          Your Honor, further, the auction that now the

17   Kiyosaki Group, which consists of Rich Dad Operating

18   Company, which is both the owner of the debtor, and an

19   alleged creditor, at least it's filed a Proof of Claim, and

20   the Kiyosakis who are not parties-in-interest in this case,

21   Your Honor, they are the owners of Rich Dad Operating.  They

22   are not creditors of this debtor, they are not owners of

23   this debtor and, frankly, are not interested parties for

24   that reason, but continue to file things with the Court that

25   they don't -- what they are proposing is not the same as

1    settlement of the litigation.  So we're talking about two

2    different things here.  They want to treat it as an asset.

3         I'm going to ask the Court to ignore the debtor's

4    untimely objection for that reason.  And there's no

5    opportunity to even explore it.  It was filed at 9:00

6    o'clock last night, but I assume that's just so that the

7    Kiyosakis could have one more set of attorneys participate

8    in the hearing this morning.

9         Your Honor, I'd like to briefly go through the

10   standards that govern settlement and the citations of law in

11   Learning Annex's reply.  The standard is the lowest point in

12   the range of reasonableness.  And the factors that the Court

13   is to consider is probably a probability of success on

14   appeal.  And the papers that Learning Annex has filed show

15   that statistically less then 10 percent of appeals in the

16   Second Circuit are successful.

17        The legal arguments that these -- the Kiyosaki

18   group wants the trustee to raise have been twice rejected by

19   the trial court in two separate jury trials, and so they

20   want a third bite at the apple.  And the trial court's

21   statements in its order on a -- the Motions to Stay the

22   Judgment, was not high probability of success, whether the

23   Kiyosaki group has misstated what the trial court said, and

24   that court's orders in -- before the Court has been

25   submitted as exhibits by all the parties.

1          We also have a complexity and expense of

2    litigation, Your Honor, that as I said, this has been to two

3    different juries who ruled that Learning Annex is entitled

4    to $23 million for wrongful conduct by this debtor in taking

5    the business proposal, and running with it and making

6    profit.

7          So if you go through two jury trials, Your Honor,

8    it's just an indication of the complexity that's already

9    transpired in this.

10         Your Honor, this estate also has no funds to fund

11   litigation expense.  This is -- they have zero dollars in

12   cash.  It has some promissory notes that are payable by the

13   Kiyosakis who managed to take all of the cash from this

14   debtor, and also under their control, assigned all of the

15   revenues and all of the assets of this debtor to related

16   parties.  So this estate has no money to fund litigation.

17         The value to the estate by participating and

18   agreeing to the settlement, which the trustee chose to do,

19   with a -- to, in fact, accept the $100,000 cash payment.  So

20   it will actually generate an asset.

21         The last factor is interest of creditors.  The

22   appeal can benefit only one creditor, Your Honor, that's the

23   debtor, and the debtor's owner, Rich Dad Operating Company.

24   They've chose to file for bankruptcy so they can use the 362

25   stay to avoid posting an appeal bond.

1          The second aspect of this, Your Honor, is what

2     these parties are proposing is an auction.  And again, I

3     want to go back to prior briefing, settlement of an appeal

4     is not estate property.  It's been fully briefed in the

5     trustee's abandonment proceedings.

6          And I might point this out to the Court, Your

7     Honor.  The Kiyosakis agreed in their objection to the

8     trustee's abandonment, they said a judgment is a liability

9     of this asset.  It's not an asset with any value.  Thus,

10    Your Honor, Section 363 approval standards do not apply, and

11    that's the foundation for the objections that they raised

12    before the Court today.

13         Let me turn to the auction that's been proposed by

14    Rich Dad Operating and the Kiyosakis; it's both unwarranted

15    and improper.  What they're proposing to the Court, Your

16    Honor, is that the Court ought to order an auction of this

17    appeal.  And, Your Honor, to the best of my knowledge, the

18    only person with standing to appeal are the parties to the

19    underlying litigation, which in this case is the debtor.

20    The debtor cannot, doesn't have any money to not only fund

21    the appeal, but to buy the appeal, to participate.

22         So what they're suggesting to the Court is that a

23    party that was not a party to the underlying litigation,

24    becomes the party by purchase of this appeal in the Second

25    Circuit.  And there's no case law and no authority for that.

1    Only interested parties have standing to appeal.

2         And so what they're suggesting to the Court is that

3    the Court allow an auction to go forward and somehow that

4    will give them standing to appeal this in the Second

5    Circuit.  And I suggest, Your Honor, there's no authority

6    for that.  And that's -- that's why this whole auction

7    concept is just a method that they proposed to see if they

8    can't out-muscle Learning Annex who's had to go through two

9    jury trials to obtain a $23 million judgment.

10        I mentioned to the Court, and I'd refer the Court

11   to Docket No. 71 where the Kiyosakis took the position that

12   this litigation is claims against the estate.  And I'm going

13   to quote what they said to the Court on that, Your Honor.

14   They said, "Litigation has no monetary value to the estate."

15   Now, they said that in May and now they've got the opposite

16   view.  And so the Court should just be aware that they're

17   changing their spots.

18        I might also point out, I think the trustee used

19   the phrase that the Court suggested, having skin in the

20   game.  Your Honor, Rich Dad Operating suggested in a letter

21   to the trustee that they would indemnify the estate for

22   costs and expense of litigation.  They did not make any

23   offer to the estate to give money to the estate.  They only

24   said, well, we will protect you from reasonable costs of

25   appeal.

1          Reasonable cost of appeal is meaningless.  The

2    estate doesn't have cash to pay the costs and attorneys'

3    fees, and that would expose the estate to unrecoverable

4    costs and expenses if there was a dispute over

5    reasonableness.  So if they got into that and someone would

6    define that some of the costs or expenses that the estate

7    incurred were not reasonable, then the estate would be in a

8    position where it had suffered costs and expenses on this

9    appeal that it couldn't recover.

10         And so what we have is, in concept, nothing more

11   than a facade by Rich Dad Operating saying, well, you go

12   ahead and do this and we'll protect you, but only if we

13   determine that it's reasonable.

14         The last thing I think along those lines, Your

15   Honor, there was some mention by Ms. Zubrod of the history

16   of the auction in this case.  Rich Dad Operating and the

17   Kiyosakis want to dictate what and how the trustee makes and

18   accepts offers.

19         The last time we went down this road, the trustee

20   offered to sell promissory notes payable by the Kiyosakis,

21   and my client was willing to purchase those and -- Kiyosakis

22   and Rich Dad's, so they wouldn't participate because there

23   weren't some releases of third parties involved in the

24   auction.  And so it failed of -- of its own weight.

25         So I guess to summarize, Your Honor, settlement is

1   in the best interest of the estate, just as the trustee and

2   Learning Annex have agreed.  They've allowed $100,000 in

3   cash.  It will eliminate any expense to the estate.  It will

4   eliminate delay in administering the case, and it will

5   provide certainty.

6           The debtor's twice made arguments that it wants to

7   make the Appellate Court.  It's twice made that in the trial

8   court and been rejected, and less than 10 percent of Second

9   Circuit appeals are successful.

10          Consequently, Your Honor, Learning Annex asks the

11  Court to approve the trustee's Motion to Approve Settlement.

12          THE COURT:  All right.  I turn to Mr. Young,

13  please.

14          MR. YOUNG:  Thank you, Judge.  First of all, the

15  objection by Rich Dad Operating Company is essentially

16  two-fold.  One, because the motion is framed as a motion

17  under Rule 9019 as a Motion to Approve the Settlement, the

18  trustee and the Court ultimately needs to have evidence

19  before it to support the settlement, and Rich Dad Operating

20  Company objects on the basis that there's just insufficient

21  evidence at this point to approve the settlement.

22          There's been no explanation or evidence put forward

23  as to why $100,000 is an appropriate settlement figure in

24  regard to this appeal of the judgment of Learning Annex.  So

25  the parties and the Court is just left to guess as to how

1    this $100,000 figure was arrived at and what, you know, what

2    went into the determination of that figure.

3           There's also no evidence or explanation before the

4    Court and the creditors here as to what the trustee views as

5    the costs and expense of pursuing the appeal.  So what --

6    what is being -- there's no explanation as to what's being

7    saved in deciding not to pursue the appeal.

8           And then, as Mr. Belcher has eluded to and as we

9    have set forth in our objection, the Rich Dad Operating

10   Company is offering to reimburse the estate, or indemnify

11   the estate, for the fees and costs incurred in pursuing the

12   appeal.  And we're kind of at a loss to understand why we

13   haven't received any inquiries as to why the trustee

14   wouldn't pursue that avenue.  We sent a letter, but simply

15   have not received any inquiries or response as to the

16   pursuit of that appeal and our offer to reimburse the estate

17   for that.

18          Mr. Belcher also references that it's not really a

19   hard offer, but the letter sets forth the offer.  And second

20   of all, he claims that the estate would be incurring costs

21   and would have no money to pay those costs, but the

22   mechanisms in the bankruptcy case would be such that if the

23   appeal were pursued, the attorney pursuing that appeal

24   obviously would need to file fee applications with this

25   Court and there would be a determination as to the

1    reasonableness of the fees, and the Rich Dad Operating

2    Company offer incorporates that concept when it says, we

3    will indemnify the estate for reasonable fees.

4            So it's an offer, and it's an offer that we don't

5    think has been considered in this process.  And frankly,

6    given that there's two competing offers in regard to the

7    appeal, we believe the better approach in this case, and the

8    analysis that should be undertaken is more along the lines

9    of a 363 sale.

10           And -- but there should be at least a consideration

11   or procedures put in place so that a competing offer can be

12   made for this right to appeal the judgment by the debtor.

13   And we don't think that there's been sufficient

14   consideration of competing offers in this -- in regard to

15   this appeal.  And there's should be some procedure where the

16   other folks, like my client and the Kiyosakis, could

17   participate in a process that would maximize the value of

18   this appeal to the estate instead of just a one-sided

19   settlement process where none of the other participants get

20   to participate, and it's only up or down approval of a

21   settlement agreement.

22           So for the reasons set forth in our objection, we

23   think the better approach is for the trustee to consider

24   competing proposals for this right to appeal.  And also we

25   don't believe there is sufficient evidence before the Court

1    a this point to approve the settlement motion that's before

2    the Court.  So Rich Dad Operating Company would request that

3    this Court deny the motion at this time.

4              THE COURT:  Ms. Fujii, please.

5              MS. FUJII:  Thank you, Your Honor.  Much ado has

6    been made about whether or not the Kiyosakis have standing

7    to even object to the proposed settlement agreement in this

8    case.  And as Your Honor probably knows, based upon all the

9    documents and pleadings filed in this case, the Kiyosakis

10   are the owner of the creditor, Rich Dad Operating Company.

11   And as equity holders of a creditor in a case in which the

12   trustee is attempting to generate funds or surplus in

13   distributions to the estate, we believe the Kiyosakis do

14   have standing in order to maximize the value to the estate.

15             And I believe, Your Honor, what's evident from the

16   objections filed by Rich Dad Operating Company, is that the

17   trustee really hasn't looked very carefully or didn't appear

18   to have analyzed the merits of the appeal on a subjective

19   standard.  What she's done, as far as I can tell, is look at

20   the statistics.

21             Well, less than 10 percent of the appeals in the

22   Second Circuit have been overturned, and that might be true.

23   But the true analysis, Your Honor, I believe, is -- is that

24   the trustee has a duty to the estate to really analyze what

25   these claims are in the appeal and not just go by an

1    objective standard of what is the percentage of appeals that

2    are successful in this particular court.  I don't think

3    that's proper.  And I think really the trustee has not set

4    forth her true arguments as to why the $100,000 settlement

5    is sufficient and is the true fair market value of this

6    particular claim.

7            Now the Learning Annex also argues that this --

8    this is not property of the estate.  The trustee's interest

9    in the appeal is not something that can be sold.  Well, the

10   trustee herself, in her Motion for Sale, she refers to this

11   particular interest of the debtor as an interest -- she says

12   in paragraph 4 of her motion, that the trustee proposes to

13   blend in any interest that the bankruptcy estate may have in

14   certain litigation.  She also refers in paragraph 9 of her

15   motion that the estate has the right of an appeal.

16           So the trustee's own terminology of what, in fact,

17   she is settling, appears to be somewhat in terms of being an

18   asset of the estate.  I don't know if the Court has actually

19   determined whether or not this is an asset of the estate.  I

20   think what's most important here is that the Court needs to

21   look at whether or not all of the factors on whether the

22   settlement is reasonable or not, and whether all of factors

23   have been analyzed by the trustee.

24           Learning Annex argues that the settlement will be

25   great for the estate because it will eliminate any

1    administrative costs relating to the appeal.  Well, as

2    testified by Mr. Young, as stated by him just a few minutes

3    ago, the Rich Dad Operating Company was willing to cover the

4    reasonable costs of the appeal as set forth through a fee

5    application process in the Chapter 7 bankruptcy estate.

6          So really if the Court denies approval of the

7    settlement agreement, it doesn't -- it's not going to cost

8    the estate anything to pursue the appeal.  So I think that

9    that statement that the settlement agreement is going to

10   eliminate administrative costs really has no bearing in this

11   matter based upon the fact that the costs are going to be

12   covered by a third party.

13         The last thing I want to say, Your Honor, is that

14   based upon the trustee's duty to maximize recovery for all

15   creditors in this case, that the Court should either deny

16   approval of the settlement agreement outright and/or set

17   forth some kind of procedure to see what the maximum value

18   of this particular interest that the estate has in the

19   appeal is, and really generate the fair market value.  The

20   Court really shouldn't allow the trustee to sell this

21   particular interest of the estate at a lowball offer instead

22   of setting forth procedures to maximize the value.

23         And apparently there has been some issues with the

24   trustee, Ms. Zubrod, in setting forth auctioning procedures.

25   So if, in fact, Your Honor goes down that road of requiring

1    an auction, I think the parties could request the Court's

2    assistance in setting forth some of the standards in order

3    to actually facilitate the auction.

4           Based upon that, Your Honor, the Kiyosakis believe

5    that the settlement agreement should not be approved, first

6    off.  And second, if this Court believes that the claim has

7    any value and if Learning Annex believes that, you know,

8    this $100,000 is the best and most fair way to settle the

9    claims of the estate, then truly set it out for bidding

10   process and generate and see how much funds this particular

11   claim of the estate can generate for all the creditors.

12          Thank you.

13          THE COURT:  I'm kind of at a loss, Ms. Fujii, I

14   thought that's what we did.

15          MS. FUJII:  I'm sorry?

16          THE COURT:  Well, it's just a comment.

17          Let's go to Mr. Macy.  And I know that Mr. Macy's

18   position here is opposed by Mr. Belcher.  I'm going to

19   overrule Mr. Belcher's oral motion to not allow Mr. Macy's

20   input here, because I believe that we're in the beginning of

21   this situation.

22          It involves, apparently, a great deal of money and

23   a great deal of gnashing of teeth, et cetera.  And I believe

24   that the Court needs all the information it can get.  But I

25   would indicate to Mr. Macy that this is an exception, not a

1    rule.  Mr. Macy?

2         MR. MACY:  Thank you, Your Honor.  And I appreciate

3    the opportunity here, and I apologize for filing this late.

4    The -- it's one of those situations where you wake up in the

5    middle of the night and you find an argument that may make

6    sense in this and for the benefit of the parties here.

7         We didn't advance any new arguments that had not

8    already been made and I won't readdress those.  The only

9    argument that was new on our part is the issue of whether or

10   not the sale of an appeal is against public policy.

11        From our standpoint, Your Honor, and contrary to

12   the Learning Annex's claim, we do operate independently of

13   any other parties.  My contact has been solely with my

14   people at Rich Global.  And so our issue is that a sale of

15   an appeal really is against public policy.

16        There are -- I've cited some brief authority in

17   which -- the cases in which appeals or causes of actions

18   have been held to be against public policy.

19        And the basis of our argument here is that it takes

20   away Rich Global's ability to fight on the underlying

21   merits.  The sale of ability to -- to end the litigation

22   where on appeal it could be heard on the merits, and where

23   the judge has said that there is a viable and -- viable

24   action on appeal.

25        We think it should go forward on our part.  And the

1    reason why, of course, is because the appeal, if successful,

2    could end certainly a large amount of the debtor's liability

3    and that is significant.  And it's not every -- it's not

4    every day that cases on appeal aren't overturned.  There are

5    several.  And I think every attorney in this proceeding has

6    won a case on appeal.

7           So without advancing the -- and without reiterating

8    the other arguments, I would just point the Court to a

9    couple of situations where public policy, the facts on

10   public policy which we cited in our brief, is a situation in

11   which a debtor had a medical -- or had a legal malpractice

12   claim against -- against a certain attorney.  And the

13   insurance company for that attorney actually bought that

14   legal malpractice case.  And in that case, the court said

15   that that was against public policy and should be considered

16   that, because it's taking away the debtor's right to appeal

17   that or the -- taking that right away from him really is

18   gerrymandering the rights of the parties and shouldn't be

19   allowed.

20          So there are situations in which the Court should

21   consider whether or not the appeal should be sold at all.

22   And we just ask that the Court consider that in its final

23   determination on whether to approve this settlement.

24          That's all I have, Your Honor, thank you.

25          THE COURT:  All right.  Well, Ms. Zubrod, I'm going

1    to give you an opportunity to briefly reiterate your

2    thoughts after hearing what the parties have stated.

3              Ms. Zubrod, please?

4              MS. ZUBROD:  Yes, Your Honor.

5              Again, I think the Court made it very clear, it

6    came across to me loud and clear, that if folks were

7    interested in purchasing this asset or interest of the

8    estate, this litigation or appeal, then they needed to make

9    an offer.

10             And the estate received that offer from Learning

11   Annex.  And there were numerous discussions back and forth

12   about that number, and nobody else approached the estate,

13   except for Rich Dad, but they -- they didn't come forward

14   with an offer, per se.

15             If Learning Annex and the estate, we're talking in

16   terms of apples and apples, they came to the table with an

17   orange and it just, quite frankly, it just didn't make any

18   sense.

19             The estate is always happy to take as much as

20   possible to, as Ms. Fujii said, maximize recovery for the

21   creditors.  That's what the estate is in the business of

22   doing.  And Learning Annex came to the table to do that and

23   no one else did.

24             And so we're here to ask the Court to allow that

25   settlement to proceed so that we can get on with the

*In Re Rich Global, LLC*                                                                    23

1    administration of this case.

2            THE COURT:  Well, thank you all very much.  It's

3    been an interesting morning.  We will, of course, take now

4    what we've heard in the presentations and all of the things

5    that have been sent to us and make our decision.  And we'll

6    take it under advisement and we'll issue our order in due

7    course.

8            Thank you all very much, I appreciate it.  We'll be

9    at recess.

10                (Hearing adjourned at 11:10 a.m.)

11                    *    *    *    *    *

### CERTIFICATE

I certify that the foregoing is a correct partial

transcript from the electronically recorded **TELEPHONIC**

**HEARING RE: TRUSTEE'S MOTION TO APPROVE SETTLEMENT; AND**

**OBJECTIONS THERETO,** held on July 11, 2013, U.S. Bankruptcy

Court, 2120 Capitol Avenue, 6th Floor, Cheyenne, WY 82001,

in the above-entitled matter.


August 9, 2013                    _____
                                  Julie Lord
                                  Verbatim Digital Reporting, LLC
                                  3317 W. Layton Ave.
                                  Englewood, CO 80110
                                  (303) 915-1677