**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

Civil Action No. 13-cv-00167-ABJ

IN RE RICH GLOBAL, LLC,

     Debtor.

---

RICH DAD OPERATING COMPANY, LLC,

     Appellant,

v.

RICH GLOBAL, LLC, TRACY L. ZUBROD, Chapter 7 Trustee, LEARNING ANNEX
HOLDINGS, LLC, LEARNING ANNEX, LLC, LEARNING ANNEX, L.P., CASHFLOW
TECHNOLOGIES, INC., ROBERT KIYOSAKI, And KIM KIYOSAKI

     Appellees.

---

**OPENING BRIEF OF APPELLANT RICH DAD OPERATING COMPANY, LLC**

---

ORAL ARGUMENT IS REQUESTED

# I.    TABLE OF CONTENTS

**I.    TABLE OF CONTENTS** ................................................................................... ii

**II.   TABLE OF AUTHORITIES** .......................................................................... iv

**III.  STATEMENT OF BASIS FOR APPELLATE JURISDICTION** ............................ 1

**IV.   STATEMENT OF ISSUES PRESENTED** ...................................................... 1

    **A.**  **The Settlement Order is an inherent abuse of discretion because it is not an informed decision based upon an objective evaluation of developed facts** ............... 1

    **B.**  **The Settlement Order fails to describe a factual and legal foundation sufficient to satisfy Fed. R. Bankr. P. 7052** ..................................................................... 1

    **C.**  **The bankruptcy court errs in not applying 11 U.S.C. § 363 to Trustee's Motion to Approve Settlement.** ...................................................................................... 1

    **D.**  **The Settlement Order errs by failing to consider RDOC's offer to indemnify Trustee for the cost of litigating the Second Circuit Appeal** ...................................... 1

**V.    APPLICABLE STANDARD OF REVIEW** ....................................................... 1

**VI.   STATEMENT OF THE CASE** ...................................................................... 2

    **A.**  **Nature of the Case and Parties** ............................................................... 2

    **B.**  **Courses of Proceedings and Facts Relevant to Appeal** ............................. 3

        1.  Second Circuit Litigation Preceding Debtor's Bankruptcy Petition ..................... 3

           a.  *In the Second Circuit Litigation, summary judgment narrowed Learning Annex's claims against Debtor to quantum meruit and unjust enrichment* ..... 3

           b.  *After a jury awarded Learning Annex damages against Debtor for quantum meruit in 2011, the Southern District: dismissed Learning Annex's unjust enrichment claim against Debtor; dismissed all claims against Cashflow Technologies, Inc.; denied Debtor's motion to dismiss quantum meruit claims against Debtor; and ordered a new trial regarding quantum meruit damages against Debtor.* ............................................................................... 3

           c.  *After a second jury awarded Learning Annex similar damages against Debtor for quantum meruit in 2012, the Southern District again denied Debtor's motion to dismiss quantum meruit claims against it but noted Debtor's legal arguments were "strong" and "appropriate" for Second Circuit review.* ...................................................................................... 4

           d.  *After judgment entered against Debtor in the Southern District, Debtor noticed the Second Circuit Appeal; Learning Annex noticed the Cashflow Cross Appeal; and the Southern District agreed to stay execution on the judgment against Debtor due in part to the strength of Debtor's legal challenges to the applicability of quantum meruit.* ............................... 5

        2.  Initial Course of Proceedings in Debtor's Bankruptcy ............................. 6

        3.  Trustee's Notice of Intent to Abandon Property re: the Second Circuit Appeal .... 7

        4.  Trustee's Motion to Approve Settlement Agreement ............................. 7

        5.  Telephonic Hearing on Trustee's Motion to Approve Settlement ................. 9

        6.  The Settlement Order. .......................................................... 10

    **C.**  **Disposition of Court Below** ................................................................ 11

**VII.  SUMMARY OF THE ARGUMENT** ............................................................ 12

**VIII.    ARGUMENT** ........................................................................................................ 13

   **A.    The Settlement Order is an inherent abuse of discretion because it is not an
   informed decision based upon an objective evaluation of developed facts** ............ 13

      1.   Rule 9019 requires a bankruptcy court to decide whether a settlement agreement
           is "fair and equitable" based upon an objective evaluation of developed facts... 14

      2.   The Settlement Order is not an objective evaluation of developed facts because it
           fails to find, much less explain why, the Second Circuit Appeal is worth just
           $100,000. ................................................................................................................. 15

      3.   The error of failing to compare the value of the Second Circuit Appeal to the
           terms of the Settlement Agreement is compounded by the bankruptcy court's
           reluctance to consider relevant facts before it. ..................................................... 17

      4.   The Settlement Order is not an informed decision based upon an objective
           analysis of developed facts because it relies upon a patently erroneous estimation
           of the complexity and expense of litigating the Second Circuit Appeal. ............ 19

   **B.    The Settlement Order fails to describe a factual and legal foundation sufficient to
   satisfy Fed. R. Bankr. P. 7052.** ................................................................................. 20

   **C.    The bankruptcy court errs as a matter of law in not applying 11 U.S.C. § 363 to
   Trustee's Motion to Approve Settlement** ................................................................. 23

      1.   The bankruptcy court erred in deciding Rule 9019 and 11 U.S.C. § 363 are
           mutually exclusive. ................................................................................................. 23

      2.   Because Trustee admittedly "sold" the Second Circuit Appeal, 11 U.S.C. § 363
           should be applied. .................................................................................................... 24

   **D.    The Settlement Order errs by failing to consider RDOC's offer to indemnify
   Trustee for the cost of litigating the Second Circuit Appeal** ................................. 26

      1.   There is no possible legal justification for Trustee to decline RDOC's offer to
           indemnify the Estate for the expense of litigating the Second Circuit Appeal.... 26

      2.   The Settlement Order's decision to ignore RDOC's offer to pay for litigating the
           Second Circuit Appeal is material. ......................................................................... 27

**IX.    CONCLUSION** ......................................................................................................... 29

## II.    TABLE OF AUTHORITIES

**Cases**

*Adam v. Itech Oil Co. (In re Gibraltar Res., Inc.)*, 210 F.3d 573, 576 (5th Cir. 2000) .................. 1

*Ades-Berg Investors v. Breeden (In re The Bennett Funding Grp., Inc.)*, 439 F.3d 155 (2d Cir. 2006) ................................................................................................................................. 1

*Bank of Woodward v. Fox (In re Reiss)*, 881 F.2d 890 (10th Cir. 1989)..................................... 27

*Featherstone v. Barash*, 345 F.2d 246 (10th Cir. 1965) .............................................................. 21

*First Bank of Catoosa v. Reid (In re Reid)*, 757 F.2d 230 (10th Cir. 1985) ................................. 1

*Frates v. Weinshienk*, 882 F.2d 1165 (10th Cir. 1989)......................................................... 15, 27

*Goodwin v. Mickey Thompson Enter. Group, Inc. (In re Mickey Thompson Enter. Group, Inc.)*, 292 B.R. 415 (9th Cir. BAP (2003) .................................................................................. 25

*Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45 (1st Cir. 1998) .............. 24

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) ................................................ 29

*In re Agent Orange Prod. Liab. Litig.*, 804 F.2d 19, 20 (2d Cir. 1986) ...................................... 30

*In re Bakalis*, 220 B.R. 525 (Bankr. E.D.N.Y. 1998) .................................................................. 26

*In re Bell & Beckwith*, 93 B.R. 569 (Bankr. N.D. Ohio 1988) .................................................... 15

*In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349 (5th Cir.1997)............................................. 19

*In re Carla Leather, Inc.*, 44 B.R. 457 (Bankr. S.D.N.Y. 1984) ................................................. 15

*In re Dennett*, 449 B.R. 139 (Bankr. D. Utah. 2011).................................................................... 27

*In re Dow Corning Corp.*, 198 B.R. 214 (Bankr.E.D.Mich. 1996) ............................................. 24

*In re Gordon*, 484 B.R. 811 (Bankr. N.D. Okla. 2013) ............................................................... 14

*In re Heritage Org., L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007) .......................................... 19

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993)...................................................... 16

*In re Morales*, 403 B.R. 629 (Bankr. N.D. Iowa 2009) .............................................................. 25

*In re Nicole Energy Servs., Inc.*, 385 B.R. 201 (Bankr. S.D. Ohio 2008) ................................... 24

*In re Psychrometric Sys., Inc.*, 367 B.R. 670 (Bankr. D. Colo. 2007)......................................... 26

*In re Ramsey*, 356 B.R. 217 (Bankr. D. Kan. 2006) .................................................................... 24

*In re Savage & Associates, P.C.*, Case No. 05 CIV.2072, 2005 WL 488643 (S.D.N.Y. Feb. 28, 2005) .............................................................................................................................. 29

*In re The Hermitage Inn. Inc.*, 66 B.R. 71 (Bankr.D.Colo. 1986)......................................... 15, 16

*In re Tidewater Grp., Inc.*, 13 B.R. 764 (Bankr. N.D. Ga. 1981) ................................................ 29

*In re Vanguard Airlines, Inc.*, 302 B.R. 292 (Bankr. W.D. Mo. 2003) ....................................... 17

*In re Vazquez*, 325 B.R. 38 (Bankr.S.D.Fla. 2005)...................................................................... 27

*In re W. Pac. Airlines, Inc.*, 219 B.R. 575 (D. Colo. 1998)......................................... 14, 15, 16, 30

*Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971 (D.Colo. 1989).............. 15

*Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020 (10th Cir. BAP 1997) ....................................................................................................................... 1, 2, 21

*LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159 (7th Cir. 1987).. 14, 16, 17, 19

*Mozer v. Goldman (In re Mozer)*, 302 B.R. 892 (C.D. Cal. 2003).............................................. 25

*Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) ................................................. 24, 29

*Owry v. Croft (In re Croft)*, Bankr. Civ. A. No. A–12–CV–535–XR, 2012 WL 6115658 (W.D. Tex. Dec. 10, 2012)..................................................................................................... 25

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968)......................................................................................................................... 16, 19

*Reiss v. Hagmann*, 881 F.2d 890 (10th Cir. 1989) ......................................................... 14, 15, 27

*The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253 (5th Cir. 2010)..................................... 24, 26

*United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984) ................... 14

*Woods Constr. Co. v. Pool Constr. Co.*, 314 F.2d 405 (10th Cir. 1963) .................................... 21

**Statutes**

11 U.S.C. § 363 (2012) ........................................................................................... passim

28 U.S.C. § 158 (2012) ............................................................................................... 1

**Rules**

F.R.C.P. 52 (2013) ............................................................................................. 20, 21

Fed. R. Bankr. P. 6004 (2013) ......................................................................... 24

Fed. R. Bankr. P. 7052 (2013) .................................................................... passim

Fed. R. Bankr. P. 9019 (2013) .................................................................... passim

**Treatises**

10 *Collier on Bankruptcy* ¶ 6004.01 (15th ed. rev. 2009) .......................................... 26

### III.    STATEMENT OF BASIS FOR APPELLATE JURISDICTION

This Court has jurisdiction to consider the appeal of Rich Dad Operating Company, LLC ("RDOC") pursuant to 28 U.S.C. § 158(a)(1) and (c)(1)(B).  A Settlement Order is a final order for purposes of appeal under 28 U.S.C. § 158(a)(1).  *Ades-Berg Investors v. Breeden (In re The Bennett Funding Grp., Inc.)*, 439 F.3d 155, 160 (2d Cir. 2006); *Adam v. Itech Oil Co. (In re Gibraltar Res., Inc.)*, 210 F.3d 573, 576 (5th Cir. 2000).

### IV.    STATEMENT OF ISSUES PRESENTED[1]

**A. The Settlement Order is an inherent abuse of discretion because it is not an informed decision based upon an objective evaluation of developed facts.**

**B. The Settlement Order fails to describe a factual and legal foundation sufficient to satisfy Fed. R. Bankr. P. 7052**

**C. The bankruptcy court errs in not applying 11 U.S.C. § 363 to Trustee's Motion to Approve Settlement.**

**D. The Settlement Order errs by failing to consider RDOC's offer to indemnify Trustee for the cost of litigating the Second Circuit Appeal.**

### V.    APPLICABLE STANDARD OF REVIEW

Generally, "[t]he decision of a bankruptcy court approving a settlement 'may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion.'"  *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997).  Under an abuse of discretion standard a "bankruptcy court's findings should not be disturbed absent 'the most cogent reasons appearing in the record.'"  *First Bank of Catoosa v. Reid (In re Reid)*, 757 F.2d 230, 233-34 (10th Cir. 1985) (quoting *Kan. Fed. Credit Union v. Niemeier*, 227 F.2d 287, 291 (10th Cir.1955)).  The abuse of discretion standard of review is applicable to Issue A.  *See* discussion *infra* § VIII(A).

---

[1] The issues stated in this Opening Brief are reframed from RDOC's prior Statement of Issues on Appeal.  One issue has been eliminated – but no issue has been changed.

Other issues on appeal are the bankruptcy court's conclusions regarding the law to be applied and how to apply it.  These are issues of law subject to *de novo* review.  *In re Kopexa Realty Venture Co.*, 213 B.R. at 102 ("The clearly erroneous standard does not apply to the conclusions of law of the bankruptcy court.  Such conclusions are reviewed *de novo*.").  A *de novo* standard of review should be applied to Issues B-D.  *See* discussion *infra* § VIII(B)-(D).

## VI.  STATEMENT OF THE CASE

### A.  Nature of the Case and Parties

This is an appeal from an order and judgment (collectively the "Settlement Order") issued by United States Bankruptcy Court for the District of Wyoming (the "bankruptcy court") approving  a settlement agreement (the "Settlement Agreement") between Appellees Chapter 7 Trustee L. Zubrod ("Trustee") and unsecured creditor Learning Annex Holdings, LLC, Learning Annex, LLC, and Learning Annex L.P. (collectively "Learning Annex") under Fed. R. Bankr. P. 9019 ("Rule 9019").

The Settlement Agreement settles litigation currently stayed in the Second Circuit Court of Appeals ("Second Circuit Appeal") between Debtor Rich Global, LLC ("Debtor") and Learning Annex.  Debtor filed the Second Circuit Appeal to contest a large judgment (the "Judgment") entered in July of 2012 by the United States District Court for the Southern District of New York ("Southern District") in favor of Learning Annex.  Shortly thereafter, Debtor filed for chapter 7 bankruptcy protection in Wyoming and Learning Annex filed an unsecured claim against Debtor's bankruptcy estate (the "Estate") for the Judgment and interest totaling $23,690,999.41 ("Learning Annex Claim").

In the Settlement Agreement, Trustee agrees to dismiss the Second Circuit Appeal and allow the entire Learning Annex Claim.  In return, Learning Annex pays the Estate just

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

2

$100,000.

Appellant Rich Dad Operating Company, LLC ("RDOC") is, like Learning Annex, an unsecured creditor of Debtor's bankruptcy estate. RDOC is also a member of Debtor. RDOC's recovery from the Estate will be greatly diminished if the Learning Annex Claim is allowed at full value.

### B. Courses of Proceedings and Facts Relevant to Appeal

1. Second Circuit Litigation Preceding Debtor's Bankruptcy Petition

   a. *In the Second Circuit Litigation, summary judgment narrowed Learning Annex's claims against Debtor to quantum meruit and unjust enrichment.*

For two years prior to Debtor's Wyoming bankruptcy petition, Debtor and Learning Annex were involved in protracted litigation in the Southern District ("Southern District Litigation"). Learning Annex initiated the Southern District Litigation by suing Debtor and several related entities for misappropriation of business opportunity, breach of fiduciary duties, breach of the covenant to negotiate in good faith, breach of contract, promissory estoppel, equitable estoppel, unjust enrichment, *quantum meruit*, and fraud. (App. R. at 515, 519.) As Learning Annex summarizes its case: "Learning Annex [was] wrongfully cut out of a business deal conceived by Learning Annex that generated over $42 million in royalties for [Debtor] from 2007 to 2010." (App. R. at 356.)

In a 2011 summary judgment order ("Summary Judgment Order"), the Southern District dismissed most of Learning Annex's claims, but allowed Learning Annex's *quantum meruit* and unjust enrichment claims to proceed to trial. (App. R. at 343, 532, 539, 543, 544-45, 545-56, 547, 549, 554-55.)

   b. *After a jury awarded Learning Annex damages against Debtor for quantum meruit in 2011, the Southern District: dismissed Learning Annex's unjust enrichment claim against Debtor; dismissed all claims*

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

3

> *against Cashflow Technologies, Inc.; denied Debtor's motion to dismiss quantum meruit claims against Debtor; and ordered a new trial regarding quantum meruit damages against Debtor.*

Following trial in July of 2011, at which a jury awarded Learning Annex compensation for *quantum meruit*, the Southern District dismissed Learning Annex's unjust enrichment claim because "the Court need not, and should not, separately decide [the unjust enrichment] claim, which should have been 'analyze[d] . . . as a single quasi contract claim' alongside Plaintiffs' *quantum meruit* claim."   [App. R. at 555.  *See also* App. R. at 578-82 (affirming dismissal in response to motion for reconsideration).]

When Debtor filed a motion for judgment as a matter of law or, in the alternative, for a new trial, the Southern District decided the jury's damage award against Debtor for *quantum meruit* lacked a sufficient factual foundation and ordered a new trial limited to the issue of *quantum meruit* damages against Debtor.  (App. R. at 568-77.)   The Southern District also dismissed Learning Annex's claims against an entity related to Debtor, Cashflow Technologies, Inc. ("Cashflow"), because the jury had insufficient evidence to support any judgment against Cashflow, (App. R. at 577-78).   The Southern District, however, denied Debtor's request to dismiss the *quantum meruit* judgment against Debtor as a matter of law as follows:

> Rich Dad offers two arguments as to why the evidence presented at trial is legally insufficient to support the jury's finding that Learning Annex reasonably expected to be compensated for the services it provided. *First*, the parties expressly agreed not to be bound in the MOU. *Second*, Rich Dad contends that [Learning Annex] acted in the *hope* of reaching an agreement that would allow plaintiffs to share in Rich Dad's profits.

[App. R. at 563, 564-66 (emphasis in original).]

> *c.  After a second jury awarded Learning Annex similar damages against Debtor for quantum meruit in 2012, the Southern District again denied Debtor's motion to dismiss quantum meruit claims against it but noted Debtor's legal arguments were "strong" and "appropriate" for Second Circuit review.*

The second trial regarding *quantum meruit* damages ended in April of 2012 with a similar damages judgment against Debtor.   (App. R. at 588.)   Again, Debtor filed a motion for reconsideration and for a new trial, (App. R. at 586), and the Southern District disagreed with Debtor's assertion that *quantum meruit*, as a matter of law, was unavailable to Learning Annex because (1) Learning Annex and Debtor entered a memorandum of understanding disclaiming the existence of enforceable rights between them and (2) "as a matter of law, there is no reasonable expectation of compensation" when "a party acts in furtherance of its own desire to participate in a business opportunity."   (App. R. at 594-95.)   In this order, however, the Southern District noted that Debtor's legal arguments were "strong" and "appropriate" for Second Circuit review:

> While Rich Global makes a strong argument that Learning Annex could not have had a 'reasonable expectation' of compensation for the services it performed in the development of the free seminar business, I have repeatedly rejected this argument and again state that it is now appropriate to direct this argument to the Second Circuit.

(App. R. at 595-96.)

> d. *After judgment entered against Debtor in the Southern District, Debtor noticed the Second Circuit Appeal; Learning Annex noticed the Cashflow Cross Appeal; and the Southern District agreed to stay execution on the judgment against Debtor due in part to the strength of Debtor's legal challenges to the applicability of quantum meruit.*

On July 17, 2012, the Judgment entered against Debtor for "$15,863,696.00 with prejudgment interest of $7,824,261.21 through July 16, 2012" totaled to a "sum of $23,687,957.21."  (App. R. at 608.)  Three days later, Debtor noticed Second Circuit Appeal and filed a motion to stay execution on the Judgment during the Second Circuit Appeal.  (App. R. at 719.)

On August 1, 2012, the Southern District of New York granted Debtor's motion to stay

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

5

execution contingent upon Debtor filing a supersedeas bond for 10% of the Judgment ("Stay Order").  (App. R. at 719-24.)   In the Stay Order, the Southern District elaborated that even though it disagreed with Debtor's legal challenges to the applicability of *quantum meruit*, Debtor nonetheless had strong arguments with a substantial likelihood of success on appeal:

> *First*, I find that Rich Global has a substantial likelihood of success on appeal.  To find that this factor favors Rich Global I need not 'confess error and predict a reversal by the Second Circuit,' but rather it is sufficient to recognize that Rich Global can 'demonstrate a substantial case on the merits, even if ultimate success is not a mathematical probability.'  *As I have noted throughout these proceedings, there is little case law directly on point concerning the availability of quantum meruit in circumstances like those presented in this case, where the parties expressly stated an intent not to be bound in a memorandum of understanding contemplating a future business venture but subsequent written evidence could be construed to negate that understanding.  Accordingly, I find that the first factor strongly supports Rich Global's request*.

[App. R. at 720 (emphasis added).]

On August 8, 2012, in the Second Circuit Learning Annex filed a notice of cross-appeal to challenge the Southern District's post trial dismissal of its *quantum meruit* claim against Cashflow ("Cashflow Cross Appeal").  (App. R. at 495 ¶ 2.)

2.   Initial Course of Proceedings in Debtor's Bankruptcy

Debtor filed its voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 20, 2012.   Debtor's bankruptcy petition stayed the Second Circuit Appeal and the Cashflow Cross Appeal.  (App. R. at 495 ¶ 3.)

On August 21, 2013, Tracy L. Zubrod ("Trustee") was appointed as Debtor's chapter 7 trustee.  (App. R. at 40.)

Only two creditors, RDOC and Learning Annex, filed claims against Debtor's bankruptcy estate.  RDOC filed its amended claim for $2,205,217.43.  Learning Annex filed its claim for $23,690,999.41.  (App. R. at 478-79.)

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

6

3. Trustee's Notice of Intent to Abandon Property re: the Second Circuit Appeal

On February 22, 2013, Trustee filed her Notice of Intent to Abandon Property ("Intent to Abandon") including the Second Circuit Appeal. (App. R. at 338.) Learning Annex, Debtor, and RDOC objected to the Intent to Abandon. (App. R. at 354, 363, 368, 372.) Several of the objections to Trustee's Intent to Abandon questioned whether the Second Circuit Appeal, because it is the Debtor's appeal of a liability against Debtort, is "property" Trustee can abandon under 11 U.S.C. § 554. [App. R. at 358-59 (Learning Annex Objection), 365 ¶ 10 (RDOC Objection), 368-69 ¶ 3 (Kiyosaki Objection).] Trustee responded that the Second Circuit Appeal is "property" of the Estate pursuant to Wyoming state law. (App. R. at 375-76 ¶¶ 1-6.)

At a hearing held on the Intent to Abandon, (App. R. at 433), Trustee was instructed to auction rather than abandon the Second Circuit Appeal. (*See generally* Tr. of Tele. Hr'g Re: Mot. to Approve Settlement[2] at 5:23-6:4.)

According to Trustee, the auction "never occurred" because Learning Annex and RDOC could not agree on bidding procedures. (Tr. at 6:11-18.) Immediately thereafter, Learning Annex made and Trustee accepted a $100,000 offer to "settle" the Second Circuit Appeal. (App. R. at 434; Tr. at 6:22-24.)

4. Trustee's Motion to Approve Settlement Agreement

Approximately one-week after asking the bankruptcy court to defer ruling on her Intent to Abandon, Trustee filed her Motion to Approve Settlement Pursuant to Rule 9019 F.R.B.P. ("Motion to Approve Settlement"). (App. R. at 457.) Trustee recited the standard generally applicable to Rule 9019 motions, (App. R. at 459-60 ¶ 8), and dedicated just one paragraph to

_____

[2] Hereinafter, the transcript of the Telephonic Hearing Re: Trustee's Motion to Approve Settlement; and Objections thereto, designated as part of the Record on Appeal, will be abbreviated in citation as "Tr.". Page numbers refer to those provided in the Record on Appeal rather than the transcript itself.

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

7

her compliance therewith:

> The Trustee believes that the Appeal has a very low probability of success,
> particularly given that two juries have retuned similar verdicts in Learning
> Annex's favor and that the Second Circuit as an extremely low reversal rate.  (As
> noted in the Trustee's Response to Objections to Abandon Property, in 2001, only
> 8.8% of commercial civil appeals were reversed in the Second Circuit.)
> Furthermore, pursuit of the Appeal would be burdensome and costly to the Rich
> Global estate, and it would prolong indefinitely a definitive resolution of the
> Learning annex Parties' claim in this bankruptcy. . . .  Although Rich Global will
> give up its right to appeal from the Judgment, the estate will be saved the cost of
> pursuing the appeal which is unlikely to succeed on its merits, and will receive an
> infusion of $100,000, increasing funds available for the payment of administrative
> expenses and for distribution to creditors.

(App. R. at 460 ¶ 9.)

Trustee's Motion to Approve Settlement did not mention how the $100,000 number was
calculated, how much Trustee estimated litigating the Second Circuit Appeal would cost, or
whether Trustee had reviewed prevailing Second Circuit law regarding the precise issue on
appeal, *i.e.*, whether Learning Annex's *quantum meruit* claims should be dismissed as a matter of
law in the Second Circuit.  *See* discussion *supra* § VI(B)(1).  Several interested parties objected
to Trustee's Motion to Approve Settlement.  (App. R. at 475, 478, 849.)

In RDOC's Objection to the Motion to Approve Settlement, RDOC asserted several
arguments, including that as part of its effort to convince Trustee to litigate, rather than abandon,
the Second Circuit Appeal, RDOC had offered to indemnify Trustee for the expense of litigating
the Second Circuit Appeal.  Thus, the Second Circuit Appeal, even if lost, would not financially
harm the Estate.  If won, however, the Second Circuit Appeal would greatly benefit the Estate.
(App. R. at 479 ¶ 5, 481 ¶ 9.)

In its Objection, RDOC also asserted that Trustee failed to satisfy her burden of proof in
her Motion to Approve Compromise because she assumed the Second Circuit Appeal was
unlikely to succeed based solely upon the Second Circuit's default reversal rate, 8.8%, and

ignored the Southern District's conclusion that Debtor had a substantial case on the merits of the Second Circuit Appeal.  RDOC also asserted that the Settlement Agreement was, in reality, a sale agreement that should be analyzed under 11 U.S.C. § 363 for Trustee's duty to maximize the value obtained for the Second Circuit Appeal.  (App. R. at 480-81 ¶¶ 8-9, 481-83 ¶¶ 10-13.)

5.  Telephonic Hearing on Trustee's Motion to Approve Settlement

The bankruptcy court held a non-evidentiary telephonic hearing on Trustee's Motion to Approve Settlement on July 11, 2013 ("Settlement Hearing").  (App. R. at 854.)

In her opening remarks to the bankruptcy court, Trustee stated that she was "asking the Court to approve the sale" of the Second Circuit Appeal.  (Tr. at 5:17.)  She then elaborated:

The Court suggested at that hearing [regarding Trustee's Intent to Abandon] that the objecting parties try to purchase the interest, and I think the Court used some phrase such as, if you had skin in the game, then you need to pony up.  And that's what happened here.  The Learning Annex decided to make an offer and has since ponied up to purchase the estate's interest in this estate asset.

(Tr. at 5:23-6:4.)  Trustee claimed that she had attempted to auction the Second Circuit Appeal, but the auction "never occurred" because neither Learning Annex nor RDOC agreed with the bidding procedure Trustee wanted to use.  (Tr. at 6:11-14.)  Trustee concluded:

So we're here today, having followed the Court's advice.  Learning Annex has made an offer.  We're asking the Court to approve that settlement.  We think it's in the best interest of the estate to bring in money for the benefit of the creditors, even if there are only two creditors that have filed Proofs of Claim in this case. But that is what we're seeking to accomplish today.  Thank you.

(Tr. at 5:22-6:3.)

In response to Trustee's arguments, and Learning Annex's critique of RDOC's "facade" offer to pay the "reasonable costs of appeal", (Tr. at 12:24-25, 13:10-11), RDOC made the following points:

First, there was insufficient evidence before the bankruptcy court to approve the

Settlement Agreement because "[t]he parties and the Court is just left to guess as to how this $100,000 figure was arrived at and what, you know, what went into the determination of that figure," (Tr. at 14:22-15:2); there was no evidence or explanation "as to what the Trustee views as the costs and expense of pursuing the appeal," (Tr. at 15:3-7); and there was no evidence regarding why Trustee decided to settle the Second Circuit Appeal for $100,000 rather than litigate the Appeal at RDOC's expense, (Tr. at 15:8-17.)

RDOC also explained that its offer to indemnify Trustee for the "reasonable costs of appeal" was no facade.   Instead, it was a hard offer to pay whatever compensation the bankruptcy court approved as reasonable pursuant to a standard fee application filed by counsel in the Second Circuit.  (Tr. at 15:18-16:3.)

Third, RDOC reiterated that, especially considering the fact that there were two "offers" before Trustee to deal with the Second Circuit Appeal – either settling for $100,000 or litigating at RDOC's expense – Trustee's Motion to Approve Settlement should be considered under the standards applicable to a motion to sell an estate asset under 11 U.S.C. § 363.  (Tr. at 16:4-21.)

In rebuttal, Trustee noted that she accepted the $100,000 offer from Learning Annex simply because "nobody else approached the estate".   Trustee also stated that she did not consider RDOC's offer to pay for litigating the Second Circuit Appeal because it was not an offer "per se" to take the Second Circuit Appeal off her hands.  (Tr. at 23:10-18.)

In closing, Trustee asked the bankruptcy court to approve the Settlement Agreement "so that we can get on with the administration of this case."  (Tr. at 23:24-24:1.)

### 6.  The Settlement Order.

On July 16, 2013, the bankruptcy court entered the Settlement Order approving the Settlement Agreement.  (App. R. at 862.)  The Settlement Order concluded that it was fair and

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

10

reasonable for Trustee to settle the Second Circuit Appeal for less than .5% of its potential value to the Estate based upon the following considerations:

1. The Southern District's statement regarding the merits of Second Circuit Appeal in its Stay Order were taken "out of context" and were not applicable the court's determination of the Second Circuit Appeal's probable success for the purposes of calculating a reasonable amount for its settlement, (App. R. at 859);

2. The complexity and expense of the Second Circuit Appeal would be high because, even if successful on appeal, Debtor would have to go through a third trial on remand in order to truly win the Southern District litigation, (App. R. at 860-61); and

3. The bankruptcy court was "concerned" RDOC's offer to indemnity Trustee for the cost of litigating the Second Circuit Appeal would put "Trustee in the position of working for a creditor and equity shareholder of the estate, against the only other creditor." (App. R. at 861.)

The bankruptcy court then concluded that it had "canvassed the issues"; the Settlement Agreement did "not fall below the lowest point in the range of reasonableness"; and the Trustee "using her best judgment, has carried her burden of persuading the court that this settlement is in the estate's best interest and should be approved." (App. R. at 862.)

## C. Disposition of Court Below

After the bankruptcy court entered the Settlement Order on July 16, 2013, (App. R. at 862), RDOC moved the bankruptcy court to stay the Settlement Order in light of the present appeal, (App. R. at  947, 1029).  After RDOC designated items to be included in the record on appeal, the bankruptcy court granted RDOC a stay of execution during the present appeal and stayed Debtor's entire bankruptcy case pending the current appeal.  (*See* Order Granting Motion

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

11

for Stay Pending Appeal, entered Aug. 8, 2013, *attached hereto as **Exhibit A**.*)

## VII.    SUMMARY OF THE ARGUMENT

In several respects, the bankruptcy court abused its discretion, and erred as a matter of law, in the Settlement Order.

The bankruptcy court abused its discretion by allowing Trustee to settle the Second Circuit Appeal for .422% of its potential value to the Estate without developing facts or applying the legal analysis necessary to approve such an unusually low settlement.  Although the unfound facts and missing legal analyses are multiple and material, the Settlement Order and Trustee's failure to determine the value of the Second Circuit Appeal and its relation to Learning Annex's $100,000 payment is of primary concern.   It is impossible to determine that the Settlement Agreement does not fall below the lowest point in the range of reasonableness without first determining, even generally, what the range of reasonableness actually is.

The Settlement Order's findings of fact and conclusions of law are also, as a matter of law, too sparse to satisfy Fed. R. Bankr. P. 7052.  The Settlement Order reaches, and relies solely upon, two general conclusions:  1) the Second Circuit Appeal is unlikely to succeed because Southern District "litigated this case well" and (2) the Second Circuit Appeal will be long and costly to litigate because it will require, if successful, a third trial on remand. From these facts alone, it is impossible to determine why the bankruptcy court allowed Trustee to settle the Second Circuit Appeal for $100,000 as opposed to a different number.

The Settlement Order also contains two material misinterpretations of controlling law. First, the Settlement Order decided to apply Rule 9019, applicable to a Trustee's decision to settle litigation, rather than 11 U.S.C. § 363, which is applicable to a trustee's decision to sell property of the estate.  Because bankruptcy law allows the simultaneous application of both 11

U.S.C. § 363 and Rule 9019, there was no reason for the bankruptcy court to choose between them. Moreover, the Trustee herself characterized the Settlement Order as a sale – so it is truly the victory of form over function for the "sale" of the Second Circuit Appeal to be conducted with absolutely no 11 U.S.C. § 363 safeguards designed to ensure the Estate receives the best possible price for the asset being sold. Rule 9019 is not so inflexible that it cannot require a Trustee to maximize the value received in settlement when her "settlement" bears the hallmarks of a "sale".

Finally, the Settlement Order erred when it declined to consider RDOC's offer to indemnity the Estate for the expense of litigating the Second Circuit Appeal. Not only does the law clearly allow, if not encourage, the acceptance of such offers, the bankruptcy court's concern for Trustee's position between creditors of the Estate appears misguided. If accepting RDOC's offer to fund the Second Circuit Appeal places "Trustee in the position of working for a creditor and equity shareholder of the estate against the only other creditor," approving the Settlement Agreement is no better: the Settlement Agreement allows Trustee to engage in closed door negotiations with Learning Annex to settle litigation in a manner that is manifestly unfair to RDOC. So long as there are rational and objective reasons for the Estate to pursue the Second Circuit Appeal, there is no reason RDOC should not be allowed t pay for its litigation.

## VIII.   ARGUMENT

### A. The Settlement Order is an inherent abuse of discretion because it is not an informed decision based upon an objective evaluation of developed facts.

The Settlement Order allows Trustee to settle the Second Circuit Appeal for just 0.422% of its potential value to the Estate without any of the factual findings necessary to support such an unusually low settlement because the Settlement Order concludes the Settlement Agreement falls above "the lowest point in the range of reasonableness" without describing, *even generally*,

where the "range of reasonableness" lies.  As such, the Settlement Order is not "an informed one based upon an objective evaluation of developed facts."  *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).  In the Tenth Circuit, "'[a]n approval of a compromise, absent a sufficient factual foundation, inherently constitutes an abuse of discretion.'"  *Id.* (quoting and altering *United States v. AWECO, Inc. (In re AWECO, Inc.),* 725 F.2d 293, 299 (5th Cir. 1984)).

1. Rule 9019 requires a bankruptcy court to decide whether a settlement agreement is "fair and equitable" based upon an objective evaluation of developed facts.

Pursuant to Rule 9019(a):  "On motion by the trustee after notice and a hearing, the court may approve a compromise or settlement."  (2013).

RDOC does not deny that this broad rule gives bankruptcy trustees significant discretion to settle a debtor's litigation.  *In re Gordon*, 484 B.R. 811, 817 (Bankr. N.D. Okla. 2013).  However, a bankruptcy court must do more than "rubber stamp" a trustee's proposed settlement.  *In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 580 (D. Colo. 1998) (quoting *LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.),* 841 F.2d 159, 162 (7th Cir. 1987)).  Instead, a bankruptcy court "canvasses" the following four factors in order to decide whether the trustee has proposed a settlement agreement that is "fair and equitable and in the best interests of the estate":

(1) the probable success of the litigation on the merits; (2) any potential difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views.

*Id.* at 579-80 (quoting *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 105 B.R. 971, 976 (D.Colo. 1989)).

"Canvassing" the four factors above does not require a bankruptcy court to conduct a mini-trial to evaluate the litigation a trustee wishes to settle.  However, a "bankruptcy court's decision to approve the settlement . . . must be an informed one based upon an objective

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

14

evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).   A

bankruptcy "court need not resolve all of [the four] issues, but must only identify them 'so that

the reasonableness of the settlement may be evaluated.'" *In re W. Pac. Airlines, Inc.*, 219 B.R. at

579 (quoting *In re The Hermitage Inn. Inc.,* 66 B.R. 71, 72 (Bankr.D.Colo. 1986)).   "What is

being sought is not the resolution of issues, but rather the identification and clarification of the

litigation issues so that the Court can make an informed decision on the reasonableness of the

settlement."   *In re Bell & Beckwith*, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988) (internal

citation omitted) (citing *In re Carla Leather, Inc.*, 44 B.R. 457, 470 (Bankr. S.D.N.Y. 1984); *In*

*re The Hermitage Inn. Inc.,* 66 B.R. at 72)).

      2.   <u>The Settlement Order is not an objective evaluation of developed facts because it</u>
<u>fails to find, much less explain why, the Second Circuit Appeal is worth just</u>
<u>$100,000.</u>

The Settlement Order fails to satisfy Rule 9019 primarily because it fails to explain why

the Second Circuit Appeal is worth only $100,000 to the Estate.   In all cases, a Trustee should

not settle litigation for less than the litigation's reasonable value to the estate.

The ultimate purpose of evaluating the four factors stated above – probability of success,

difficulty of collection, complexity and expense of litigation to be settled, and the interests of

creditors – is to compare the price offered to settle litigation to the risk-adjusted value of

continuing litigation: "Basic to this process in every instance, of course, is the need to compare

the terms of the compromise with the likely rewards of litigation."   *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).   *Accord In re*

*Am. Reserve Corp.*, 841 F.2d at 161 ("Central to the bankruptcy judge's determination is a

comparison of the settlement's terms with the litigation's probable costs and probable benefits.").

"The overall purpose is to weigh 'carefully ... the value of the settled claim against the value to

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

15

the estate by the settlement.'" *In re W. Pac. Airlines, Inc.*, 219 B.R. at 579 (quoting *In re The Hermitage*, 66 B.R. at 72).

Thus, the Settlement Order's primary error is that settles the Second Circuit Appeal for $100,000 without finding that the risk-adjusted value of the Second Circuit Appeal could reasonably be as low as $100,000.

First, there is no finding that the $100,000 number represents the approximate, or even ballpark, value of the Second Circuit Appeal adjusted for its probability of failure, *i.e.*, no finding that the Second Circuit Appeal  has only a .422% probability of success.  As stated by the Supreme Court, settling the Second Circuit Appeal for .422% of its potential value to the Estate without finding the Second Circuit Appeal is .422% or less likely to succeed is a fundamental error:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.  *See also, e.g.*, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993) ("The amount settled for is within the range estimated for the worth of the claims by the Examiner and by the Assignees.") *aff'd,* 17 F.3d 600 (2d Cir. 1994).  Moreover, the Settlement Agreement does not comport with Trustee's reliance upon the Second Circuit's default 8.8% rate of reversal.  [App. R. at 859 ("The Trustee and Learning Annex assert that the probability of success on the appeal is minimal, based partially upon the statistical information for success of appeals in the Second Circuit; the history of the litigation and the District Court's full assertions.").]  To the extent the Settlement Order approves Trustee's judgment in settling the Second Circuit Appeal for $100,000, it should explain why it was reasonable for Trustee to settle the Second Circuit Appeal as if it had a less

than .5% chance of success when she herself estimated it had an 8.8% chance of success.

It is also possible that the $100,000 payment represents the expense of litigating the Second Circuit Appeal.   However, if this is the case, the Settlement Order lacks a sufficient factual foundation to settle the Second Circuit Appeal for $100,000 because there is no finding that the Second Circuit Appeal is so unlikely to succeed that it should be settled for nuisance value or analysis of how much it will cost to litigate the Second Circuit Appeal even if a nuisance settlement is appropriate.  *See, e.g.*, *LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.),* 841 F.2d 159, 162 (7th Cir. 1987) ("The bankruptcy judge did mention that litigation expenses would exceed the settlement amount.   However, it appears that the bankruptcy judge merely took the trustee's word on litigation costs.   The record does not contain any evidence of what the expected litigation costs were.").  *Cf. In re Vanguard Airlines, Inc.*, 302 B.R. 292, 298-99 (Bankr. W.D. Mo. 2003) ("Further, pursuit of the claims on the Bridge Loan alone would likely cost the Debtor $100,000.00 in legal fees plus any expert witness fees. Moreover, if the Debtor should litigate and not prevail on the merits, the Debtor would be contractually obligated to pay the legal fees of Pegasus and Hambrecht in defending litigation concerning the Bridge Loan.").

3. The error of failing to compare the value of the Second Circuit Appeal to the terms of the Settlement Agreement is compounded by the bankruptcy court's reluctance to consider relevant facts before it.

The Settlement Order's fundamental error of failing to clarify, even generally, the range of reasonable settlements into which the Settlement Agreement must fall is compounded by the Settlement Order's reluctance to find or consider highly relevant information:  RDOC's offer to pay for the cost of litigating the Second Circuit Appeal and Southern District's analysis of its own Judgment's vulnerability to reversal on appeal.

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

17

First, the bankruptcy court noted, but decided to ignore, RDOC's offer to pay for litigating the Second Circuit Appeal.  (App. R. at 861.)  Not only is this a reversible legal error, *see* discussion *infra* § VIII(D), is a finding of fact with no factual foundation.  The Settlement Order does not find that RDOC's offer to indemnify actually will place Trustee in an untenable position between the Estate's only two creditors.  It simply state a "concern" that accepting RDOC's offer *might* place Trustee in an untenable position between the Estate's only two creditors.  *See* F.R.B.P. 2057 discussion *infra* § VIII(B).  The Settlement Order also fails to recite any law, or provide any legal analysis, as to why Trustee is permitted to engage in closed door settlement negotiations with Learning Annex to settle the Second Circuit Appeal in a manner that is manifestly unfair to RDOC, but cannot be expected to litigate the Second Circuit Appeal against Learning Annex at RDOC's expense.  Thus, the bankruptcy court should have considered – or at least better explained its reluctance to consider – RDOC's offer to indemnity Trustee for the expense of litigating the Second Circuit Appeal.

Second, the Settlement Order fails to mention, much less analyze, the legal issues on appeal in the Second Circuit.   It is well accepted that a bankruptcy court should analyze, at least superficially, the status of the facts and law disputed in the litigation to be settled.  While "it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement" a bankruptcy judge must "apprise himself of the relevant facts *and law* so that he can make an informed and intelligent decision....'."  *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 356 (5th Cir.1997) (emphasis added) (quoting *In re Am. Reserve Corp.,* 841 F.2d at 163): *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259-60 (Bankr. N.D. Tex. 2007).  *See also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 440 ("The record before us leaves us completely uninformed as to whether the trial court ever evaluated the

18

merits of the causes of actions held by the debtor, the prospects and problems of litigating those claims, or the fairness of the terms of compromise.").

This error is particularly irredeemable in light of the bankruptcy court's decision to ignore the Southern District's analysis of its own Judgment's vulnerability in light of the legal issues on appeal and the state of Second Circuit law.  It makes no sense to completely disregard the Southern District's analysis of its own Judgment – based upon the Southern District's familiarity with the totality of litigation before it and legal issues that it considered on no less than three separate occasions – in lieu of the bankruptcy court's general observation that the Southern District Litigation is of "obvious" complexity but will likely withstand appeal because it was "tried well".  (App. R. at 860.)

Finally, the bankruptcy court's justification for disregarding the Stay Order's analysis of Debtor's probability of success in the Second Circuit Appeal – that the Stay Order granted a stay conditional upon the payment of a supersedeas bond – was itself manifestly unreasonable because the Southern District observed the merits of Debtor's issues on appeal in other pleadings that concerned neither a stay of execution or a supersedes bond.  (App. R. at 595-96.)

4. <u>The Settlement Order is not an informed decision based upon an objective analysis of developed facts because it relies upon a patently erroneous estimation of the complexity and expense of litigating the Second Circuit Appeal.</u>

It should also be noted that one of the bankruptcy court's assumptions regarding the length and complication of the Second Circuit Appeal is incorrect.

The Settlement Order assumes that, even if the Second Circuit Appeal reverses the Judgment, a third trial on remand will be necessary to fully resolve the Southern District Litigation.  (App. R. at 860-61.)  A review of Southern District pleadings before the bankruptcy court reveals that this assumption is inaccurate.  The Second Circuit Appeal's primary issues are

whether, *as a matter of law*, Learning Annex may assert a claim for *quantum meruit*.  (App. R. at

563-66, 594-96.)   If Debtor wins on either of these issues, there will be no trial on remand

because all of Learning Annex's other claims against Debtor were dismissed in 2011 and 2012.

(App. R. at 343, 532, 539, 543, 544-45, 547, 554-55, 578-82.)   Therefore, the bankruptcy court

abused its discretion when it approved the Settlement Agreement based upon its false assumption

that the Southern District Litigation will necessarily take both trial and appeal proceedings to

fully conclude.  (ROA at 860-61.)

## B. The Settlement Order fails to describe a factual and legal foundation sufficient to satisfy Fed. R. Bankr. P. 7052.

In addition to abusing its discretion by failing to provide a sufficient factual foundation to

satisfy Rule 9019, as a matter of law the Settlement Order provides insufficient factual and legal

analysis to allow for meaningful appellate review.  In other words, the Settlement Order fails to

satisfy Fed. R. Bankr. P. 7052 ("Rule 7052").

Rule 7052 incorporates F.R.C.P. 52 into certain bankruptcy proceedings.  According to

F.R.C.P. 52:

> In an action tried on the facts without a jury or with an advisory jury, the court
> must find the facts specially and state its conclusions of law separately. The
> findings and conclusions may be stated on the record after the close of the
> evidence or may appear in an opinion or a memorandum of decision filed by the
> court. Judgment must be entered under Rule 58.

F.R.C.P. 52(a)(1) (2013).   In addition to adversary proceedings, Rule 7052 applies to orders

approving settlement agreements under Rule 9019.  *In re Kopexa Realty Venture Co.*, 213 B.R.

at 1023.

The purpose of F.R.C.P. 52, and by extension Rule 7052, is "to aid the appellate court by

affording it a clear understanding of the ground or basis of the decision of the trial court, to make

definite what is decided in order to apply the doctrines of estoppel and *res judicata* to future

cases, and to evoke care on the part of the trial judge in considering and adjudicating the facts in dispute." *Featherstone v. Barash*, 345 F.2d 246, 249 (10th Cir. 1965).  Under Rule 7052, a bankruptcy court's "[f]indings may be sufficient if they permit a clear understanding of the basis of decision of the trial court, irrespective of their mere form or arrangement."   *Id.* at 250. Ultimately, the point of Rule 7052 is that "[i]t is not the function of the appellate court to read the transcript of the evidence in order to determine the essential facts before applying the law of the case." *In re Kopexa Realty Venture Co.*, 213 B.R. at 1023 (citing *Woods Constr. Co. v. Pool Constr. Co*., 314 F.2d 405, 407 (10th Cir. 1963)).

The Settlement Order falls below the standard of Rule 7052 because it relies upon just two undeveloped conclusions:  (1) the Second Circuit Appeal is unlikely to succeed because Southern District "litigated this case well" and (2) the Second Circuit Appeal will be long and costly to litigate because it will require, if successful, a third trial on remand.  (App. R. at 859-62.)  Outside of declining to consider other evidence, the Settlement Order finds no "facts" other than these.  [*See* App. R. at 859-60, 861 (deciding to ignore the Southern District's statements regarding the merits of the Second Circuit Appeal and RDOC's offer to defray the cost of litigating the Second Circuit Appeal).]  Yet, from just these two findings, the Settlement Order claims to have "canvassed the issues" sufficiently to conclude that settling the Second Circuit Appeal for .422% of its potential value to the Estate falls above "the lowest point in the range of reasonableness."  (App. R. at 862.)  In reality, it is impossible to figure out why the bankruptcy court allowed Trustee to settle the Second Circuit Appeal for just $100,000 without filling in large analytical gaps with unsupported assumptions.

Moreover, when it comes to considerations the bankruptcy court declined to entertain, the Settlement Order insufficiently explains or supports it declinations.  The Settlement Order

neglects to make any actual findings regarding the nature of RDOC's offer to pay for the Second Circuit Appeal or the potential consequences of accepting RDOC's offer.  Instead, the Settlement Order refuses to consider RDOC's offer merely because the bankruptcy court is "concerned" RDOC's offer *might* place Trustee in an untenable position between creditors.  (App. R. at 861.) The Settlement Order does not explain exactly how likely accepting RDOC's offer is to cause Trustee problems or whether those problems will legally prohibitive, generally annoying, or somewhere between these two extremes.  In other words, there is not enough information in the Settlement Order to decide whether the Settlement Order's concern is well founded or relevant to Rule 9019.

The Settlement Order's reluctance to make any findings regarding the nature or ramifications of RDOC's offer further cannot be excused given the record presented to the bankruptcy court.  At the Settlement Hearing, counsel for RDOC explained, on the record, exactly how RDOC intended to and would fund the Second Circuit Appeal sufficiently for the bankruptcy court to at least consider the actual ramifications of allowing RDOC to pay for the Second Circuit Appeal.  But since the Settlement Order does not actually make such findings or conduct such analysis, it is impossible to review whether or not the bankruptcy court's "concerns" about the RDOC offer were sufficient to approve Trustee's settlement of the Second Circuit Appeal with Learning Annex for .422% of its potential value to the Estate.

Finally, it is also material that the Settlement Order, in spite of arguments presented at the Settlement Hearing, makes no factual findings regarding the Trustee's aborted attempt to auction, rather than settle, the Second Circuit Appeal.  [App. R. at 856 (The auction "appears to have been unsuccessful due to the demands of objecting parties.").]  Should the Court decide it was error for the Settlement Order not to treat the Settlement Agreement as both a settlement and

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

22

a sale of the Second Circuit Appeal pursuant to 11 U.S.C. § 363, further findings and analysis of this issue will be required.  *See* discussion *infra* § VIII(C).

**C. The bankruptcy court errs as a matter of law in not applying 11 U.S.C. § 363 to Trustee's Motion to Approve Settlement.**

The Settlement Order's declination to analyze the Settlement Agreement as a sale, rather than or in addition to a compromise, is reversible legal error.   Because Trustee herself characterized her decision to settle the Second Circuit Appeal as a sale of the Appeal to Learning Annex, the bankruptcy court should have ensured that Trustee received the highest possible price for the Second Circuit Appeal before allowing its sale.   Moreover, the bankruptcy court was incorrect to assume that a motion to settle under Rule 9019 and a motion to sell under 11 U.S.C. § 363 are mutually exclusive.   In this, as in many cases, the Settlement Agreement should be analyzed as both a compromise and a sale.

1.   The bankruptcy court erred in deciding Rule 9019 and 11 U.S.C. § 363 are mutually exclusive.

As a matter of law, the bankruptcy court erred when it decided the Settlement Agreement should be analyzed solely under Rule 9019 because "compromise" and a "sale" are mutually exclusive terms.   (App. R. at 858-59.)   This reasoning places the Settlement Order on the wrong side of a circuit split.   As noted by the Fifth Circuit in 2010, there is presently a circuit split heavily weighted *against* treating compromises subject to Rule 9019 as mutually exclusive from sale agreements subject to 11 U.S.C. § 363:

> The First Circuit has held, without analysis, that a settlement is not a sale.  That decision represents the less defensible side of the circuit split. Courts in the Third, Sixth, and Seventh Circuits, in addition to the *Mickey Thompson* court, have taken the position that a settlement may trigger § 363 requirements.

*The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 264 (5th Cir. 2010) (citing *Hicks, Muse &*

*Co. v. Brandt (In re Healthco Int'l, Inc.),* 136 F.3d 45 (1st Cir. 1998); *Myers v. Martin (In re*

*Martin),* 91 F.3d 389, 394-95 (3d Cir. 1996); *In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 230

(Bankr. S.D. Ohio 2008) (holding that a settlement is also an asset sale and applying § 363); *In*

*re Dow Corning Corp.,* 198 B.R. 214, 247 (Bankr.E.D.Mich. 1996); *In re Telesphere Commc'ns,*

179 B.R. 544, 552 (Bankr.N.D.Ill.1994)).   At least two cases from the Tenth Circuit agree with

the majority view.   *In re Donohue*, 410 B.R. 311, 315 (Bankr. D. Kan. 2009) ("When the

compromise of a claim amounts to the sale of an estate asset, both the sale provisions under 11

U.S.C. § 363 and Rule 6004 and the compromise provisions of Rule 9019(a) are implicated."); *In*

*re Ramsey*, 356 B.R. 217, 226 (Bankr. D. Kan. 2006) ("Such compromise of a claim disposing of

an estate asset implicates both the sale provisions under 11 U.S.C. § 363 and Rule 6004 and the

compromise provisions of Rule 9019(a).").

> 2.   Because Trustee admittedly "sold" the Second Circuit Appeal, 11 U.S.C. § 363 should be applied.

The bankruptcy court not only could have applied 11 U.S.C. § 363 to the Settlement

Agreement, it should have applied 11 U.S.C. § 363, or the standards associated with 11 U.S.C. §

363, to the Settlement Agreement because the Settlement Agreement bears the hallmarks of a

sale.

Although it appears there is some dispute regarding whether defensive appellate rights

are "property of the estate" that can officially be sold under 11 U.S.C. § 363(b), *compare Mozer*

*v. Goldman (In re Mozer)*, 302 B.R. 892, 896 (C.D. Cal. 2003) (applying California law defining

"property" to find that defensive appellate rights are "property of the estate" that can be sold

under 11 U.S.C. § 363(b)), *and Owry v. Croft (In re Croft)*, Bankr. Civ. A. No. A–12–CV–535–

XR, 2012 WL 6115658, *4 (W.D. Tex. Dec. 10, 2012) (applying Texas law to find the same),

*with In re Morales*, 403 B.R. 629, 633-34 (Bankr. N.D. Iowa 2009) (applying Iowa law to find

that defensive appellate rights are not "property of the estate" that can be sold), deciding the

meaning of "property" in 11 U.S.C. § 363(b) is not necessarily determinative of whether standards generally applied under 11 U.S.C. § 363(b) should be applied in this instance.  It is vitally important to not elevate form over substance.

At the Settlement Hearing, Trustee characterized her "settlement" of the Second Circuit Appeal as a "sale" and stated that she accepted Learning Annex's offer to "settle" the Second Circuit Appeal only when establishing auction protocols for the Second Circuit Appeal proved difficult.  (Tr. at 6:11-14.)  Rule 9019 is not so inflexible that, in cases like the present,  it precludes considering whether or not a Trustee's proposed settlement "maximizes the value obtained" for the settled claim in circumstances where the "settlement" has the characteristics of a "sale".  *See Goodwin v. Mickey Thompson Enter. Group, Inc. (In re Mickey Thompson Enter. Group, Inc.)*, 292 B.R. 415, 422 n.7 (9th Cir. BAP (2003) ("We are not suggesting that every compromise of a bona fide controversy presented to a bankruptcy court under Rule 9019 must pass muster as a sale under section 363.  We are sensitive to the different considerations that come into play.  But the inescapable fact in this case is that the label 'compromise' does not accurately characterize the transaction.  Functionally, there was no compromise at all. Trustee simply attempted to sell to prospective defendants for $40,000 his cause of action against them."); *In re Moore*, 608 F.3d 253, 264-65 (5th Cir. 2010) ("A compromise of a claim of the estate is in essence the sale of that claim to the defendant.") (quoting 10 *Collier on Bankruptcy* ¶ 6004.01 (15th ed. rev.2009)).

In this case, the Settlement Agreement bears the hallmarks of a "sale" primarily because, at the Settlement Hearing, Trustee admitted that she tried to auction the Second Circuit Appeal but, failing to convince RDOC and Learning Annex that rules for the auction were fair, the auction did not occur.  As a result, Trustee stated she sold the Second Circuit Appeal to Learning

Annex simply because Learning Annex called her and made an offer.  (Tr. 5:23-6:4.)  Therefore, it was not disputed by any party that *regardless of whether Trustee technically could "sell" the Second Circuit Appeal as "property" of the Estate, that is actually what Trustee did.*  As a result, the Settlement Agreement should not be approved until the bankruptcy court analyzes and scrutinizes "whether the trustee has fulfilled [her] duty to 'maximize the value obtained from a sale'."  *In re Psychrometric Sys., Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)).

Under this standard, the Settlement Agreement must fail.  Normally, when a trustee proposes selling estate assets outside the ordinary course of business, without considering competing bids, and without marketing the asset to be sold, she is unlikely to articulate a business justification that satisfies 11 U.S.C. § 363(b).  *Id.* at  674-77 (denying Trustee leave to sell estate claims without considering competing offer or marketing the claims).  Yet, in spite of the fact that Trustee basically admitted that this is exactly how she sold the Second Circuit Appeal, the bankruptcy court failed to consider whether "settling" the Second Circuit Appeal for $100,000 was fair without considering competing offers – or even allowing competing offers to be made.

**D.  The Settlement Order errs by failing to consider RDOC's offer to indemnify Trustee for the cost of litigating the Second Circuit Appeal.**

Finally, the bankruptcy court reversibly erred when it concluded that allowing RDOC to fund the Second Circuit Appeal would be somehow improper.

   1.  There is no possible legal justification for Trustee to decline RDOC's offer to
        indemnify the Estate for the expense of litigating the Second Circuit Appeal.

RDOC's legal research has uncovered only cases in which courts approve of and encourage trustees to accept offers similar to RDOC's and/or consider such offers material to a

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

26

trustee's decision to litigate, rather than settle, pending litigation. *See, e.g.*, *Reiss v. Hagmann*, 881 F.2d 890, 893 (10th Cir. 1989) (finding that Trustee should not have settled litigation for which one creditor offered to pay); *Frates v. Weinshienk*, 882 F.2d 1502, 1505 (10th Cir. 1989) ("We see nothing ominous in the approval of the loan from PBGC to fund the litigation. PBGC is a twenty-eight percent shareholder in the reorganized company. It is both a secured and unsecured creditor. It is not unusual for a creditor to loan a bankruptcy estate money to pursue litigation claims; indeed, in particular circumstances we recently held it to be an abuse of discretion for a district court not to allow a creditor to fund litigation to recover assets for a bankruptcy estate.") (citing *Bank of Woodward v. Fox (In re Reiss),* 881 F.2d 890, 892–893 (10th Cir. 1989)); *In re Vazquez*, 325 B.R. 38 (Bankr.S.D.Fla. 2005) ("The Court agrees that a creditor's willingness to fund litigation is an appropriate consideration when weighing the reasonableness of a proposed settlement."). *Cf. In re Dennett*, 449 B.R. 139, 134 (Bankr. D. Utah. 2011) (noting absence of party willing to fund further litigation as part of Rule 9019 analysis approving settlement).

Thus, even if the bankruptcy court had explained the basis of its "concern" regarding RDOC indemnifying Trustee for the cost of litigating the Second Circuit Appeal, its basis would be incorrect. No such basis exists.

2. The Settlement Order's decision to ignore RDOC's offer to pay for litigating the Second Circuit Appeal is material.

The bankruptcy court's decision to ignore RDOC's offer is, by itself, reversible error because, when the cost of litigating the Second Circuit Appeal is removed from Rule 9019's calculus, the only reason to settle the Second Circuit Appeal is to save time. As a matter of law, expediency is insufficient reason to settle the Second Circuit Appeal for just $100,000.

Even without considering RDOC's offer to indemnify Trustee for the expense of

C:\Users\jtokuoka\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\A6RNXAK6\13-09-05 Opening Brief FINAL.docx

27

litigating the Second Circuit Appeal, this is not a case in which Learning Annex's offer is particularly attractive.  First, this is not a case in which the Estate will have no assets if Learning Annex's $100,000 is not accepted.  To the contrary, according to Debtor's schedules, Debtor has personal property worth $1,794,405.29.  (App. R. 14.)  This is also not a case in which the Settlement Agreement will benefit the Estate by decreasing claims against it.  To the contrary, the Settlement Agreement allows the Learning Annex Claim at full value.  Finally, this is not a case in which accepting Learning Annex's $100,000 will be of great benefit to any creditor of the estate.  To the contrary, Trustee admitted at the Settlement Hearing that the Estate's only two creditors are the creditor paying $100,000 into the Estate, Learning Annex, and the creditor opposing the Settlement Agreement, RDOC, (Tr. at 5:24-6:3).  Moreover, because the Learning Annex Claim, if allowed at full value, represents 91.48% of the claims against the Estate, 91.48% of the $100,000 will be returned to Learning Annex after the payment of administrative expenses.

Thus, even when RDOC's offer to indemnify Trustee for the cost of litigating the Second Circuit Appeal is ignored, the only advantages of the Settlement Agreement that it:  (1) provides an immediate infusion of cash that is probably not necessary to pay administrative expenses and will, by and large, be returned to the creditor infusing the cash and (2) saves the expenditure of time and expense necessary to actually litigate the Second Circuit Appeal.   When RDOC's offer to pay for the Second Circuit Appeal is properly factored into Rule 9019 calculus, however, the equities turn overwhelmingly against approving the Settlement Agreement.  When the expense of litigating the Second Circuit Appeal is removed from reasons to approve the Settlement Agreement, the Estate has nothing to lose in the Appeal except the time it takes to conclude. Either the Judgment will be affirmed and Debtor will owe as much as it does right now or the

Judgment will be reversed and Debtor will owe nothing at all.

The bankruptcy court and Trustee's desire to "get on with the administration of this case", (Tr. at 5:22-6:3, 23:24-24:1), and "expeditiously administer the estate's assets and close the case", (App. R. at 861, 862), are by themselves insufficient reason to settle the Second Circuit Appeal for .422% of its potential value to the Estate.  As a matter of law, trustees are encouraged to settle debtors' disputes – but not merely to save time and effort.  *In re Tidewater Grp., Inc.*, 13 B.R. 764, 766 (Bankr. N.D. Ga. 1981) ("While the litigation involved in the instant case is complex, the only risk to the debtor is the incurring of legal expenses.  The delay which would result from litigation is not, standing alone, a reason to approve the compromise agreement which is the subject of this Order.").  Moreover, promoting the expedient resolution of litigation *via* settlement cannot outweigh the importance of providing appellate review.  *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 349-50 (S.D.N.Y. 2007) (stating importance of right to appellate review of adverse judgments) (quoting *In re Savage & Associates, P.C.*, Case No. 05 CIV.2072, 2005 WL 488643, *2 (S.D.N.Y. Feb. 28, 2005); *In re Martin*, 91 F.3d at 393; *In re Agent Orange Prod. Liab. Litig.*, 804 F.2d 19, 20 (2d Cir. 1986)).

Thus, when RDOC's offer to indemnify the Estate for the expense of litigating the Second Circuit Appeal is properly considered, Rule 9019 calculus is undeniable against approving the Settlement Agreement.  In fact, the Settlement Agreement specifically fails Rule 9019's fourth factor:  a bankruptcy court must consider the interests of all creditors in deference to their reasonable views.  *In re W. Pac. Airlines, Inc.*, 219 B.R. at 579-80.

## IX.    CONCLUSION

For the reasons stated herein, Creditor Appellant Rich Dad Operating Company, LLC, respectfully requests the Court REVERSE the Settlement Order entered on July 16, 2013.

Respectfully submitted this 5[h] day of September, 2013.

MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC

By: */s/*_____

Gregory L. Williams (Wyoming Bar No. 52363)
John F. Young (Pro Hac Vice)
Devi C. Yorty (Pro Hac Vice)
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Attorneys for Appellant Rich Dad Operating
Company, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 5th day of

September, 2013, via CM/ECF and by placing a copy in the U.S. mail, first class postage prepaid

upon the following:

**James R. Belcher**
Belcher & Boomgaarden LLP
237 Storey Boulevard, Suite 110
Cheyenne, WY 82009
Attorneys for **The Learning Annex**

**Ethan J. Birnberg**
Lindquist & Vennum P.L.L.P.
600 17th Street Suite 1800 South
Denver, CO 80202
Attorneys for **Cashflow Technologies, Inc.**

**Jenny M.F. Fujii**
Kutner Miller Brinen. P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Attorney for **Robert and Kim Kiyosaki**

**Jonathan Harris**
111 Broadway, Suite 402
New York, NY 10006
Attorneys for **Learning Annex Holdings, LLC;**
**Learning Annex, LLC; Learning Annex L.P.**

**Paul Hunter**
2616 Central Avenue
Cheyenne, WY 82001
Attorneys for **Robert and Kim Kiyosaki**

**Lee M. Kutner**
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Attorneys for **Robert and Kim Kiyosaki**

**Mark E. Macy**
Macy Law Office, P.C.
217 West 18th Street
Cheyenne, WY  82001
Attorney for **Rich Global, LLC**

**Edwin G. Schallert**
Debevoise & Plimpton, LLP
919 Third Avenue
New York, NY 10022
Attorneys for **Learning Annex Holdings, LLC;**
**Learning Annex, LLC; Learning Annex L.P.**

**Tracy Zubrod, Trustee**
1907 House Avenue
Cheyenne, WY  82001

*/s/  Jenny F. Tokuoka*
Jenny F. Tokuoka