# UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

IN RE RICH GLOBAL, LLC, )  Civil Docket No. 13-cv-00167-ABJ
 )
  Debtor. )
 )
 )
 )
RICH DAD OPERATING COMPANY, )  Bankr. No. 12-20834
LLC, )   Chapter 7
 )
  Appellant, )
 )
  v. )
 )
RICH GLOBAL, LLC, TRACY L. )
ZUBROD, Chapter 7 Trustee, LEARNING )
ANNEX HOLDINGS, LLC, LEARNING )
ANNEX, LLC, LEARNING ANNEX, L.P., )
CASHFLOW TECHNOLOGIES, INC., )
ROBERT KIYOSAKI, and KIM )
KIYOSAKI, )
 )
  Appellees. )
 )

## BRIEF OF APPELLEE TRACY L. ZUBROD, CHAPTER 7 TRUSTEE

Tracy L. Zubrod
Wyo. Bar Reg. No. 6-2796
Chapter 7 Bankrutpcy Trustee
Zubrod Law Office, P.C.
1907 House Avenue
Cheyenne, WY 82009
(307)778-2557
zubrod@aol.com

## **TABLE OF CONTENTS**

Table of Authorities Cited ...................................................................................... iii

Standard of Review ................................................................................................ 1

Statement of the Facts ........................................................................................... 1

Argument ............................................................................................................... 3

I.     THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION
       BECAUSE IT MADE AN INFORMED DECISION BASED UPON AN
       OBJECTIVE EVALUATION OF DEVELOPED FACTS ............................... 3

       A.     The Bankruptcy Court properly evaluated the potential success of
              litigation and properly found that the receipt of $100,000 as a term
              of the proposed settlement was within the reasonable range of outcomes
              of litigation ....................................................................................... 5

       B.     The Bankruptcy Court made an informed and objective analysis of the
              developed facts of the case before it to determine that pursuit of the
              Appeal would be complex and expensive for the bankruptcy estate and
              contrary to the trustee's duty to expeditiously administer the estate ................... 12

II.    THE BANKRUPTCY COURT SATISFIED FEDERAL RULE OF
       BANKRUPTCY PROCEDURE 7052 BY STATING THE FACTS
       SPECIALLY AND SEPARATELY STATING ITS CONCLUSIONS
       OF LAW IN AN OPINION OF DECISION ................................................ 14

III.   THE BANKRUPTCY COURT PROPERLY APPROVED THE
       SETTLEMENT EVEN IF BOTH FEDERAL RULE OF BANKRUPTCY
       PROCEDURE 9019 AND 11 U.S.C. § 363 APPLIED BECAUSE HER
       DECISION TO FOREGO AN AUCTION WAS FAIR AND EQUITABLE
       AND IN THE BEST INTERESTS OF THE ESTATE .................................... 18

IV.    THE BANKRUPTCY COURT DID NOT ERR BY REJECTING
       RDOC'S OFFER TO INDEMNIFY THE TRUSTEE FOR THE COST
       OF LITIGATING THE APPEAL BECAUSE AN OFFER OF

i

INDEMNIFICATION IS CONSIDERED ONLY WHEN LITIGATION
COULD BE SUCCESSFUL AND WHEN THE BANKRUPTCY COURT
HAS NO FUNDS TO PAY CREDITORS......................................................................20

Conclusion...........................................................................................................................25

## TABLE OF AUTHORITIES CITED

**Federal Cases:**

*The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253 (5th Cir. 2010)............................................18

*Featherstone v. Barash*, 345 F.2d 246 (10th Cir. 1965)..........................................15, 18

*Frates v. Weinshienk*, 882 F. 2d 1502 (10th Cir. 1989)................................................21

*In re AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984)...............................................4

*In re Christie*, 2013 Bankr. LEXIS 2016 (Bankr. D. Kansas 2013)...........................15

*In re Dennet*, 449 B.R. 139 (Bankr. D. Utah 2011)...............................................4, 11

*In re Donohue*, 410 B.R. 311 (Bankr. D. Kan. 2009)..........................................18, 19

*In re Final Analysis, Inc.*, 417 B.R. 332 (Bankr. D. Md. 2009)..................7, 9, 10, 16

*In re Foundation for New Era Philanthropy*, 1996 Bankr. LEXIS 1891*

    (D. Penn. 1996)..................................................................................11, 13

*In re Heissinger Resources, Ltd.*, 67 B.R. 378 (C.D. Ill. 1986)...................................12

*In re Ionosphere Clubs*, 156 B.R. 414 (S.D.N.Y. 1993)..............................................6

*In re Mickey Thompson Entertainment Group, Inc.*,

    292 B.R. 415, 422 (B.A.P. 9th Cir. 2003)............................................19

*In re Ontos, Inc.*, 478 F.3d 427 (1st Cir. 2007)..........................................................19

*In re Penn Central Transportation Company*, 596 F.2d 1102

    (3rd Cir. 1979).................................................................................6

*In re Tidewater Grp. Inc.*, 13 B.R. 764 (Bankr. N.D. Ga. 1981)................................25

*In re Vazquez*, 325 B.R. 30 (Bankr. S.D. Fla. 2005).............................................22, 23

*In re Western Pacific Airlines, Inc.*, 219 B.R. 575 (D. Colo. 1989)......................4, 5, 6

*Kaiser Steel Corp v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971

    (D. Colo. 1989)........................................................................................4, 6

*Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*,

    213 B.R. 1020 (10th Cir. B.A.P. 1997).................................................15

*LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.)*,

    841 F.2d 159 (7th Cir. 1987)................................................................5

*Matter of Carla Leather, Inc.*, 44 B.R. 457, 470 (Bankr. S.D.N.Y. 1984)....................................9

*Matter of Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980)....................................................4

*Protective Committee for Independent Stockholders of TMT Trailer ferry, Inc.*

    *v. Anderson, Trustee in Bankruptcy, et* al., 390 U.S. 414 (1968)...................4, 5, 6, 16, 25

*Reiss v. Hagmann Bank of Woodward*, 881 F.2d 890, 892

    (B.A.P. 10th Cir. 1989)........................................................1, 4, 15, 21, 22, 24, 25

**Statutes:**

Federal Rule of Bankruptcy Procedure 7052 .......................................14, 15, 17, 18, 25

Federal Rule of Bankruptcy Procedure 9019...............................4, 5, 15, 17, 18, 19, 25

Rule 52 of the Federal Rules of Civil Procedure...........................................................15

11 U.S.C. §363...........................................................................................17, 18, 19

11 U.S.C. §704.....................................................................................................12

**Pleadings:**

*Judgment on Trustee's Motion to Approve Settlement*................................................3, 14

*Opening Brief of Appellant Rich Dad Operating Company, LLC*................................................23

*Opinion on Trustee's Motion to Approve Settlement*...............................3, 9, 13, 14, 15, 16, 20, 23

*Order on Stay of Judgment* (U.S. Dis. Ct. S.D.N.Y.)...........................................7, 8, 9

*Trustee's Motion to Approve Settlement*...................................................................3, 7

**Secondary Sources:**

Black's Law Dictionary (9th ed. 2010)......................................................................5

Honorable Thomas F. Hogan, *2010 Annual Report of the Director: Jud. Bus. of the U.S. Courts*,

2010, Table B-5.....................................................................................................7

Honorable Thomas F. Hogan, *2011 Annual Report of the Director: Jud. Bus. of the U.S. Courts*,

2011, Table B-5.....................................................................................................7

Honorable Thomas F. Hogan, *2012 Annual Report of the Director: Jud. Bus. of the U.S. Courts*,

2012, Table B-5.....................................................................................................8

## STANDARD OF REVIEW

The standard of review for the approval of a settlement by the bankruptcy court is abuse of discretion. "A bankruptcy court's approval of a compromise may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion." *Reiss v. Hagmann Bank of Woodward*, 881 F.2d 890, at 891 (B.A.P. 10th Cir. 1989).

## STATEMENT OF FACTS

On July 17, 2012, the United States District Court of the Southern District of New York entered judgment in the amount of $23,687,957.21 (the "Judgment"), against Rich Global, LLC ("Rich Global") and in favor of Learning Annex Holdings, LLC, Learning Annex, LLC and Learning Annex, L.P. (collectively, "Learning Annex"). The Judgment was entered in an action captioned *Learning Annex Holdings, LLC and Learning Annex, LLC, and Learning Annex, L.P. v. Rich Global, LLC and Cashflow Technologies, Inc.*, Index No. 09-CV-4432 (SAS/GWG)(the "Learning Annex litigation"). The cause of action was based on a business relationship established in 2001, when Learning Annex was to receive a percentage of royalties from Rich Global, specifically from Robert Kiyosaki speaking at seminars for Learning Annex.

Rich Global filed a notice of appeal from the Judgment on July 20, 2012 (the "Appeal"). On August 8, 2012, Learning Annex filed a notice of cross-appeal from the trial court's dismissal of its unjust enrichment claim and grant of judgment as a matter of law in favor of co-defendant Cashflow Technologies (the "Cross-Appeal").

Rich Global filed a voluntary petition for Chapter 7 bankruptcy in the District of

1

Wyoming on August 20, 2012, just one month after the Judgment was entered in favor of Learning Annex. The Appeal and the Cross-Appeal were stayed upon filing of the bankruptcy petition, pursuant to 11 U.S.C. § 362. Tracy L. Zubrod was appointed as Trustee in the bankruptcy case. The estate assets currently consist of bank accounts, promissory notes held by Robert and Kim Kiyosaki worth approximately $1.7 million, a preferential payment and the price offered through settlement. The estate's total value is estimated to be approximately $2.2 million. On December 11, 2012, the Trustee was ordered by the United States Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court") to hold a telephone hearing for all interested parties to allow competitive bids to take place for the promissory notes. The Trustee attempted to hold the auction, but Learning Annex and the Kiyosakis disagreed on auction procedures and made it clear that both of their positions were non-negotiable. The Trustee had agreed to use release forms in the auction process, however the Kiyosakis failed to provide these forms even though they had requested their use. After many attempts to pursue competitive bidding, the Trustee decided to collect the promissory notes when they mature in 2014.

On February 22, 2013, the Trustee filed a *Notice of Intention to Abandon Property* in which the Trustee proposed to abandon any interest the bankruptcy estate may have in certain litigation involving Rich Global, including the Learning Annex litigation and the Appeal as identified in the Statement of Financial Affairs. Learning Annex objected and the Bankruptcy Court held a hearing on May 2, 2013.

Following the hearing on May 2, 2013 and at the suggestion of the Bankruptcy Court, the Trustee and Learning Annex negotiated a settlement of the Learning Annex litigation. The key terms embodied in the Settlement Agreement (the "Settlement") are: Learning Annex will pay

2

the estate $100,000; the Trustee will dismiss the Appeal with prejudice; and a single claim will

be allowed as a general unsecured claim in favor of Learning Annex in the amount of

$23,690,999.41, which represents the amount of the Judgment plus post-judgment interest. The

Settlement was subject to Court approval.

On May 21, 2013, the Trustee filed a *Motion to Approve Settlement Pursuant to Rule*

*9019 F.R.B.P.* and *Notice Pursuant to Local Bankruptcy Rule 2002.* On June 14, 2013, Rich

Dad Operating Company, LLC ("RDOC") and the Kiyosakis each filed objections to the

Settlement. A hearing on the Trustee's Motion was held on July 11, 2012.  On July 16, 2013,

the Bankruptcy Court entered its *Opinion on Trustee's Motion to Approve Settlement* and its

*Judgment on Trustee's Motion to Approve Settlement.* The Bankruptcy Court analyzed the case

before it in detail in the *Opinion* by considering whether the Settlement was a

settlement/compromise or sale, whether the Appeal would be successful on the merits, the

possible difficulty in collection of a judgment, the complexity and expense of the litigation and

the interests of the creditors in deference to their reasonable views. On July 16, 2013, the

Bankruptcy Court approval of the Settlement was separately entered in the court's *Judgment on*

*Trustee's Motion to Approve Settlement.*

## ARGUMENT

I.   THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BECAUSE IT
MADE AN INFORMED DECISION BASED UPON AN OBJECTIVE EVALUATION OF
DEVELOPED FACTS.

The first issue before this Court is whether the Bankruptcy Court abused its discretion in

approving the *Trustee's Motion to Approve Settlement* by failing to make an informed decision

based on an objective evaluation of developed facts. This is the required standard that a

3

bankruptcy court must use to determine whether or not to approve a settlement or compromise. *Reiss v. Hagmann Bank of Woodward*, 881 F.2d 890, 892 (B.A.P. 10th Cir. 1989). "The duty of a bankruptcy judge to reach an 'intelligent, objective and educated evaluation' of settlements cannot be carried out absent a sufficient factual background." *In re AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984)(quoting *Matter of Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980)).

The standard for approving settlements involving litigation is derived from Federal Rule of Bankruptcy Procedure 9019(a), which states, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." The Rule itself does not include the requirement that a settlement agreement be "fair and equitable", nor does the Rule outline a list of factors required for a bankruptcy court to review as argued by Appellant. *Id.*; *In re Dennet*, 449 B.R. 139, 144 (Bankr. D. Utah 2011).

However, case law has established that in order to comply with Fed. R. Bankr. P. 9019 a "fair and equitable"standard must be met, and a bankruptcy court must review four key factors relevant to the settlement. *See, e.g. Protective Committee for Independent Stockholders of TMT Trailer ferry, Inc. v. Anderson, Trustee in Bankruptcy, et* al., 390 U.S. 414 (1968). In the case *In re Western Pacific Airlines, Inc.*, 219 B.R. 575, 579 (D. Colo. 1989), U.S. Senior District Court Judge John L. Kane, Jr. stated:

> In the *Kaiser*[1] case, I stated that a court's general charge is 'to determine whether the settlement is fair and equitable and in the best interests of the estate'. . . . This charge includes consideration of (1) the probable success of the litigation on the merits; (2)

---

[1]*Kaiser Steel Corp v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971 (D. Colo. 1989).

any potential difficulty in collection of a judgement; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views.

A bankruptcy court considers these factors comprehensively in order to make a determination and not just simply "rubber stamp" a proposed settlement. *In re W. Pac. Airlines, Inc.*, 219 B.R. 575. These factors require consideration, rather than resolution by a bankruptcy court. *Id.* Resolution is a more thorough and final investigation on specific legal issues. *Id.* Unlike an Article III judge, who has a duty to resolve legal issues, a bankruptcy court judge acts as an "effectuator of equity over time" ensuring that proposed settlements are fair and equitable. *Id.* at 580.

A. The Bankruptcy Court properly evaluated the potential success of litigation and properly found that the receipt of $100,000 as a term of the proposed settlement was within the reasonable range of outcomes of litigation.

The purpose of these four factors is to evaluate a proposed settlement. The method of evaluating these factors compares the proposed settlement's terms with the outcome of litigation. *Anderson*, 390 U.S. at 424. Appellant attempts to mold "term" to fit its needs, but takes it out of context. "Term", defined as, "a contractual stipulation", is not equivalent to "price", which is defined as "[t]he amount of money or other consideration asked for or given in exchange for something else; the cost at which something is bought or sold." Black's Law Dictionary at 1265, 1026 (9th ed. 2010). Fed. R. Bankr. P. 9019 does not require an explanation of the reasonableness of the price of settlement; and, the purpose of the four factors outlined above is to evaluate the terms of a proposed settlement not to solely compare the settlement price offered with the risk-adjusted value of litigation.

The Appellant cites *Anderson*, 390 U.S. 414 and *LaSalle Nat'l Bank v. Holland (In re*

5

*American Reserve Corp).*, 841 F.2d 159 (7th Cir. 1987) as precedent that the purpose of the four-factor consideration is to compare the settlement price offered with the risk-adjusted value of litigation.  However, both cases compare the settlement terms with the potential outcome of the litigation. *Id.*; *Anderson*, 390 U.S. at 424-25. In support of Appellant's desire that the settlement amount be exactly computed to comport with the Trustee's reliance on the "default" 8.8% rate of reversal, Appellant cites *In re Ionosphere Clubs*, 156 B.R. 414 (S.D.N.Y. 1993). Contrary to that desire, the court in that case plainly states "[t]he weighing of a claim against compensation cannot be . . . exact.  Nor should it be, since an exact judicial determination of values in issue would defeat the purpose of compromising the claim." *Id.*(quoting *In re Penn Central Transportation Company*, 596 F.2d 1102, 1114 (3rd Cr. 1979)).  The Appellant's contention that the price offered for settlement must represent the approximate value of the Second Circuit Appeal adjusted for its probability of failure does not have precedential support. Precedent makes it clear that a compromise/settlement is an agreed upon amount - not an exact calculation.  The Appellant argues that the settlement price should somehow be adjusted for the Appeal's probability of failure, and in support thereof, quotes *Anderson* to state a bankruptcy judge must make an intelligent and objective opinion regarding the success of the claim if it were litigated. The Appellant defines reasonableness in this instance as the settlement price being equal to the percentage chance of success.  This definition of success has not been discussed in relevant case law, and seems to be contradictory to the bankruptcy judge's charge of considering relevant facts to make an informed objective decision. *See, e.g. Kaiser Steel Corp v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971 (D. Colo. 1989).

A bankruptcy court must consider both what the range of reasonable outcomes of the

claims in litigation may be (for determination of the appropriate settlement price), and the ultimate success of the litigation in question. *In re Final Analysis, Inc.*, 417 B.R. 332 (Bankr. D. Md. 2009). In that case, the court found that the pending litigation would likely be a success. *Id.* The court also delved into calculations to create a reasonable range of monetary outcomes that could occur because of litigation. *Id.*

Unlike *In re Final Analysis, Inc.*, the chances of success of the Judgment being eliminated or changed due to reversal on Appeal are slim to none. The Bankruptcy Court was presented with several sources of evidence to determine the Appeal's potential success.  The Trustee and Learning Annex presented the procedural history of the Appeal, as well as the historical success rate of appeals in the Second Circuit to support the Trustee's *Motion to Approve Settlement.*  The Appellant presented a statement made by the United States District Court for the Southern District of New York in its *Order* regarding Rich Global's motion for stay of enforcement of the judgment pending appeal.  As both the Trustee and Learning Annex have discussed in various pleadings, the success rate of an appeal in the Second Circuit is low and this rate has only continued to decrease over the last few years. Appellant misstates that this is a default reversal rate; on the contrary, the percentage is calculated each year in the *Annual Report of the Director: Judicial Business of the United States Courts.*  In 2010, the success rate for private civil claims, including commercial claims, on their merits was 12.4% in the Second Circuit.[2] This figure dropped to 8.8% in 2011.[3] The trend only continues in 2012, as the success

---

[2]Honorable Thomas F. Hogan, *2010 Annual Report of the Director: Jud. Bus. of the U.S. Courts*, 2010, Table B-5.

[3]Honorable Thomas F. Hogan, *2011 Annual Report of the Director: Jud. Bus. of the U.S. Courts*, 2011, Table B-5.

rate dropped to 6.7%.[4]  As the Trustee and Learning Annex pointed out, and as the Bankruptcy

Court relied on, the chance of success of a reversal on appeal in the Second Circuit for a private

civil claim is drastically low.  The Bankruptcy Court's decision that the Appeal would not be

successful based solely on the historical success rate of appeals in the Second Circuit would not

be an abuse of discretion.

Additionally, the Bankruptcy Court considered the procedural history of the Appeal. The

Appeal arrived in the bankruptcy estate after the Learning Annex Litigation was presented to two

separate juries. Judgment was entered for Learning Annex after both jury verdicts were entered

in its favor. Two different juries were presented with the facts, and both juries found that the

facts favored Learning Annex. It logically follows that the Bankruptcy Court would evaluate the

facts as the juries did and find that Rich Global would not be successful.

The Appellant argues that the Bankruptcy Court abused its discretion by not mentioning

and not analyzing the statement made by the U.S. District Court for the Southern District of New

York in its *Order* regarding Rich Global's motion for stay of enforcement of the judgment

pending appeal. However, the allegation that the Bankruptcy Court did not mention, let alone

analyze that statement in its *Opinion on Trustee's Motion to Approve Settlement*, is inaccurate.

(The Appellant also argues that the bankruptcy court abused its discretion by ignoring RDOC's

offer to indemnify the trustee for the costs of pursuing the Appeal. *See infra* Argument IV.[5]) The

final consideration that the Bankruptcy Court took into account to determine the success of the

---

[4]Honorable Thomas F. Hogan, *2012 Annual Report of the Director: Jud. Bus. of the U.S. Courts*, 2012, Table B-5.

[5] RDOC's offer to indemnify the trustee for litigation expenses and related arguments will be addressed in Argument IV to provide a more organized and fluid response.

Appeal was this particular statement made by the Second Circuit District Court in its *Order* which addressed Rich Global's request for stay pending appeal and not require it to post a bond in the full amount of the judgment. The Appellant argues that the Appeal has a sufficient probability of success. However, this belief is pulled from a quote that has been taken out of context.

> First, I find that Rich Global has a substantial likelihood of success on appeal.  To find that this fact favors Rich Global I need not confess error and predict a reversal by the Second Circuit,' but rather it is sufficient to recognize that Rich Global can 'demonstrate a substantial case on the merits, even if ultimate success is not a mathematical probability.'

The  U.S. District Court for the Southern District of New York made this statement concerning the likely success of the debtor on appeal to determine whether to grant Rich Global's request for a stay pending appeal, and also whether to require a bond or not. This determination was only a factor to be weighed in making the overall decision on the request for stay. Instead of giving this statement the appropriate weight for a single factor out of many to decide on a common motion, the Appellant gives this statement the weight of a jury verdict. If the statement is given proper weight, the Second Circuit Appeal's actual chances of success are undoubtedly low.

The Bankruptcy Court found, "[the] statements regarding the likelihood of success on appeal were taken out of context by Rich Dad and the Kiyosakis in an attempt to make the statements applicable to the circumstances before this court."Op. Trst.'s Mot. Appr. Sttlm., pg 6.

A bankruptcy court is not required to resolve the issues before it on the merits. *In re Final Analysis, Inc.*, 417 B.R. at 343.  On the other hand a bankruptcy court need only sufficiently consider the issues within the bounds of reasonableness. *Id.* At 342, *see Matter of Carla Leather, Inc.*, 44 B.R. 457, 470 (Bankr. S.D.N.Y. 1984)(assessing a settlement does not require resolution

9

of the issues on the merits; the issues need only be sufficiently considered 'so that the bounds of

reasonableness can be seen with some clarity'). The Bankruptcy Court evaluated the situation

before it reasonably. The Bankruptcy Court is not required to look at the specific legal question

that Rich Global has presented in the Appeal and the litigation preceding it, as the Appellant

desires. The Bankruptcy Court properly considered the facts before it, and gave proper weight to

the conflicting evidence, to find that the Appeal would not be successful.

Beyond determining the ultimate success of the litigation, a bankruptcy court must

determine the reasonable range of outcomes of litigation in order to judge if the price offered for

settlement is appropriate. Similar to *In re Final Analysis, Inc.*, the litigation in this case involves

a claim against the estate rather than recovery by the estate.

> Here, the Trustee is seeking approval of a compromise of claims against the
> estate. The proper formulation of the [range of reasonableness] in this context is
> that the compromise must not be above the **highest** point in the range of
> reasonableness. . . . Stated otherwise, the Trustee's compromise must fall within
> the range of reasonable outcomes of the Settling Claimants' claims.
> *Id.* at 342 (emphasis added).

In this case, the receipt of $100,000 as a term of the Settlement is within the reasonable

range of outcomes of the relevant claims. Since there is little to no assurance that the litigation

will be successful, it is very unlikely that the either creditors' claim will change.[6] This is unlike

*In re Final Analysis, Inc.*, where the litigation was likely to be successful - and thus the claims

could actually change, making it necessary to determine the range claims could fall within. The

Appeal in the present case is more than likely going to be unsuccessful and therefore determining

the range that claims could reasonable fall within is not necessary. Even if it were necessary to

---

[6]Only two creditors filed a proof of claim, Learning Annex and RDOC.

determine the reasonable range for the claim, the highest value of the Learning Annex claim is approximately $23 million, and this would establish the highest point in the range of reasonableness. The settlement price of $100,000 is far below that highest point of reasonableness.

Further, the trustee has a burden to establish that fair value has been secured by way of the settlement. *In re Foundation for New Era Philanthropy*, 1996 Bankr. LEXIS 1891* (D. Penn. 1996). The outcome of the Appeal in this case would not bring any value into the estate. The Trustee could pursue the Appeal or the Trustee could dismiss the Appeal. Neither outcome would cause the estate to recover any value. The price term in the settlement of $100,000 would be added to the value of the estate. This amount far exceeds the amount the Trustee would have secured with the Appeal alone - which would be nothing.

Similarly, the court in *In re Dennet*, 449 B.R. 139, was presented with a fund of $25,000 in exchange for settling millions of dollars of potentially unsuccessful claims. That court found that the settlement price was appropriate, even though far less than the total claims in litigation because $25,000 in hand was worth more than complex, expensive and uncertain litigation. *Id.* at 146. That court used the phrase "a bird in the hand is worth two in the bush" to describe the situation, which is the very situation that was before the Bankruptcy Court in the present case. The settlement price of $100,000 is worth more to the bankruptcy estate than the complex, expensive and likely unsuccessful Appeal, and this benefits the creditors.

The Bankruptcy Court's current consideration of the steadily declining chance of success of the Appeal, which results in no recovery by the estate and the immediate infusion of $100,000 to the bankruptcy estate by settlement to conclude that the settlement is appropriate is not an

11

abuse of discretion.

**B.    The Bankruptcy Court made an informed and objective analysis of the developed facts of the case before it to determine that pursuit of the Appeal would be complex and expensive for the bankruptcy estate and contrary to the trustee's duty to expeditiously administer the estate.**

The Appellant argues that the Bankruptcy Court made the incorrect assumption that the

Appeal would be complicated to litigate.  The Appellant argues that because Learning Annex's

only claim against Rich Global on Appeal would be *quantum meriut*, if Rich Global were to win

no third trial would be necessary. Based on this alone, the Appellant concludes that the

Bankruptcy Court abused its discretion finding that the litigation would be complex and

expensive to pursue. Whether this statement is accurate or not, it does not reflect the only

consideration the Bankruptcy Court made to determine the complexity and expense of litigation

in approving the Settlement.

It is an underlying policy in bankruptcy law to favor settlements and compromises. *In re*

*Heissinger Resources, Ltd.*, 67 B.R. 378 (C.D. Ill. 1986).  This longstanding policy exits to avoid

the costs and time associated with litigation and to provide for judicial efficiency.  No less is true

in the realm of bankruptcy.  Expeditious administration of a bankruptcy estate ensures that there

is a maximized value for the bankruptcy estate, which in turn is distributed to creditors. By

favoring settlements, a bankruptcy court can avoid litigation that could deplete or exhaust the

value of the bankruptcy estate and diminish funds available for disbursement to creditors.

It is a core duty of a trustee to administer a bankruptcy estate as efficiently as possible.

"The trustee shall collect and reduce to money the property of the estate for which such trustee

serves, and close such estate as **expeditiously** as is compatible with the best interest of parties in

interest." 11 U.S.C. § 704 (emphasis added).  This expeditious administration includes settlement

12

of litigation, because the longer a trustee has to pursue litigation, the longer the case remains open. It follows that as long as the case remains open, the estate will lose funds - from banking fees to the cost of continuing litigation. Years of litigation, with no assurance of success and with absolutely no recovery by the estate, does not comport with the fundamental concept of expeditious administration. The Bankruptcy Court took this into account when it approved the settlement in this case. The Bankruptcy Court stated:

> [The Appeal] could potentially take years to litigate at a substantial cost to the bankruptcy estate without any assurances that the bankruptcy estate would ultimately prevail. This is not a benefit to the estate, as the purpose of a chapter 7 bankruptcy case is to expeditiously administer the estate's assets and close the case.
> Op. Trst.'s Mot. Appr. Sttlm., pg. 7.

This is not an abuse of discretion, but rather the Bankruptcy Court following the Bankruptcy Code.

In addition to expeditious administration, it is important to note that a trustee must ensure that at least some creditors support a settlement in order for it to be approved. *In re Foundation for New Era Philanthropy*, 1996 Bankr. LEXIS at *20-21. A trustee cannot seek approval of a settlement if no creditors support it; if only some creditors disagree with the settlement though, it can still be approved. *Id.* Weight is also given to creditors with larger claims. *Id.* "[T]his significant support from creditors may also be considered when a court determines whether the trustee is acting within the scope of his fiduciary duties." *Id.* at *21-22. The Trustee in this case acted pursuant to her duty to expeditiously administer the case. Her settlement was also significantly supported by one of the two creditors. Two creditors have filed proofs of claims in this case. Learning Annex has an unsecured general claim of approximately $23,690,999.41. RDOC has an unsecured general claim of approximately $2,205,217.43.

13

Learning Annex, with the substantially greater claim, supports the Trustee's settlement.

Besides potentially taking years, the convoluted relationships and avarice of RDOC, Rich Global and the Kiyosakis make it impossible to determine that the litigation is anything but complex. Not only is RDOC one of Rich Global's creditors, but RDOC is also Rich Global's sole member. To further complicate this intertwined relationship, Robert and Kim Kiyosaki, the owners of RDOC, and in turn the owners of Rich Global, have actively participated in the various motions and objections before the Bankruptcy Court.

The Bankruptcy Court discussed the interests of RDOC, the Kiyosakis, and Rich Global to determine whether to approve the settlement proposed by the Trustee. As the Bankruptcy Court points out in its *Opinion*, pg. 7, the Kiyosakis are owners of RDOC, which in turn owns Rich Global. The Kiyosakis benefit two-fold from the bankruptcy case; first, the Judgment and other debt created through Rich Global is discharged, but second, they will receive a pay out from the estate through the claim they filed with RDOC. Based on the potential years of litigation, the complexity of the relationships between RDOC, Rich Global and the Kiyosakis, the decision that the Appeal would be too complex and expensive to litigate was an informed and objective decision.


## II.   THE BANKRUPTCY COURT SATISFIED FEDERAL RULE OF BANKRUPTCY PROCEDURE 7052 BY STATING THE FACTS SPECIALLY AND SEPARATELY STATING ITS CONCLUSIONS OF LAW IN AN OPINION OF DECISION.

The Appellant presents the issue that the Bankruptcy Court's *Opinion* and *Judgment* (referred to by Appellant as "Settlement Order") did not satisfy Federal Rule of Bankruptcy Procedure 7052. It is argued that the Bankruptcy Court did not have a sufficient factual and legal

14

analysis to allow for meaningful appellate review, nor did it have a sufficient factual and legal

basis to satisfy Federal Rule of Bankruptcy Procedure 9019.  The Appellant relies on *Kopp v. All*

*Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020 (10th Cir. B.A.P. 1997). In

that case, the court found that Fed. R. Bankr. P. 9019 incorporated Fed. R. Bankr. P. 7052 and in

turn, Rule 52 of the Federal Rules of Civil Procedure. *Id.* The court quoted the Tenth Circuit

Court of Appeals in *Featherstone v. Barash*, 345 F.2d 246 (10th Cir. 1965) and its finding that

the trial court's role, when no jury is present, is to provide the appellate court with a "clear

understanding of the ground or basis of the decision". *In re Kopexa Realty Venture Co.*, 213 B.R.

at 1023.  "The sufficiency of findings must be measured by the requirements of the rules in light

of these purposes." *Featherstone*, 345 F. 2d at 249.

    In application to a bankruptcy context[7], the rule against which findings must be measured

in light of the purposes of compromise approval and appellate review is Fed. R. Bankr. P. 9019.

As discussed in Argument I, a bankruptcy court must consider four factors to determine whether

or not to approve a settlement pursuant to Fed. R. Bankr. P. 9019. The Bankruptcy Court

discussed each factor in detail in its *Opinion on Trustee's Motion to Approve Settlement*,

beginning by citing *In re Christie*, 2013 Bankr. LEXIS 2016 (Bankr. D. Kansas 2013). That case

follows *Reiss*, 881 F.2d 890, regarding the four-factor test that a bankruptcy court is to apply in

evaluating the trustee's proposed settlement. *Id.*

    The four factors that the court must consider pursuant to Fed. R. Bankr. P. 9019, and in

turn Fed. R. Bankr. 7052 and Rule 52 of the Federal Rules of Civil Procedure are: 1) the probable

---

[7]The legal context of *Featherstone* outside of the Rule 52 issue was an attorney seeking
additional legal fees from a client - not bankruptcy.

success of the litigation on the merits; 2) any potential difficulty in collection of a judgment; 3) the complexity and expense of the litigation; and 4) the interests of creditors in deference to their reasonable views. *In re Western Pacific Airlines, Inc.*, 219 B.R. at 579. For the first factor, the Bankruptcy Court weighed the statistical history of the Second Circuit, the procedural history of the litigation and the full assertions of the Second Circuit District Court. The Bankruptcy Court included its basis for finding that the Appeal would not be successful. *See supra* Argument I(A). In summary, the Bankruptcy Court stated "the District Court, through jury trials and numerous motions, litigated this case well." Op. Trst.'s Mot. Appr. Sttlm., pg 6.

The Bankruptcy Court's analysis of the second factor of the test succinctly states, "[t]he ability to collect on a judgment is not applicable as the current judgment is a liability against the bankruptcy estate and greatly exceeds the estate's assets."*Id.* Collection of the judgment is not necessary in this case since the litigation will not add value to the estate nor will it change a creditors claim substantially. *See In re Final Analysis, Inc.*, 417 B.R. at 353 (finding that difficulty of collection is not a factor to determine when claims being settled will result in payment from the estate not recovery to the estate).

The Bankruptcy Court weighed the potential years of complex litigation with the expeditious administration of the bankruptcy estate and the potential amount of time to conclude the litigation. *See supra* Argument I(B). The Bankruptcy Court also exceeded the analysis of the fourth factor, or the interests of creditors, by individually discussing the interests of not only the creditors, but the Debtor and the Kiyosakis. *See supra* Argument I(B).

The Bankruptcy Court found sufficient facts pursuant to the four-factor test required by *Anderson*, 390 U.S. 414. The court (1) found that the Appeal had a remarkably low chance of

success upon appeal; (2) determined the difficulty of collecting judgment was not applicable; (3) determined the complexity and expense of pursuing litigation far outweighed the benefit the litigation would bring to the estate; and (4) determined pursuit of the litigation would benefit the interests of only one creditor to the detriment of the other. The Bankruptcy Court established these findings with a sufficient fact foundation and pursuant to the required standards, and it made an informed decision based on an objective evaluation of the case before it.

The Appellant also argues that the court failed to satisfy Fed. R. Bankr. P. 7052 because the Bankruptcy Court failed to find sufficient facts to support its decision that $100,000 was an appropriate amount for the settlement. However, the Bankruptcy Court appropriately identified that the immediate infusion of $100,000 to the bankruptcy estate via settlement was far more than the bankruptcy estate would receive from pursuing litigation - which would be nothing. Despite the abysmal chances of success of the Appeal, the Bankruptcy Court also appropriately found the $100,000 to be within the range of reasonableness. *See supra* Argument I.

The Appellant argues that the Bankruptcy Court failed to satisfy Fed. R. Bankr. P. 7052 by not discussing RDOC's offer to indemnify the Trustee for the cost of litigation. Based on applicable case law, this discussion was not necessary. *See infra* Argument IV.

Finally, the Appellant contends that the Bankruptcy Court made no findings that the Trustee attempted to auction the appeal; and that this was necessary since the Settlement should be treated as both a settlement under Fed. R. Bankr. P. 9019 and a sale under 11 U.S.C. § 363. The Bankruptcy Court did not mention an attempt to auction the Appeal because there has never been an attempt to auction the appeal. The Appellant misstates the facts. The Trustee had attempted to auction promissory notes that the Kiyosakis held. *See infra* Argument III.

17

As the Tenth Circuit Court of Appeals found in *Featherstone*, the trial court must have a sufficient factual basis for review by the appellate court, pursuant to Fed. R. Bankr. P. 7052, and this is done by measuring the factual findings against the requirements of the relevant rule. In this case that rule was Fed. R. Bankr. P. 9019, which the Bankruptcy Court followed by considering the four factors as discussed herein.

III.   THE BANKRUPTCY COURT PROPERLY APPROVED THE SETTLEMENT EVEN IF BOTH FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND 11 U.S.C. § 363 APPLIED BECAUSE HER DECISION TO FOREGO AN AUCTION WAS FAIR AND EQUITABLE AND IN THE BEST INTERESTS OF THE ESTATE.

The Appellant asserts the Bankruptcy Court made a reversible legal error when it categorized the Settlement as a settlement invoking solely Fed. R. Bankr. P. 9019 rather than a sale invoking 11 U.S.C. §363.  The Appellant also contends that the terms are not mutually exclusive, and that the Settlement should implicate both Fed. R. Bankr. P. 9019 and 11 U.S.C. §363. Appellant cites a line of cases from various Circuit Courts of Appeal holding that settlements and sales of estate assets are not mutually exclusive. *See, e.g. The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253 (5th Cir. 2010).

Appellant correctly asserts that the Tenth Circuit has also found that settlements and sales of estate assets are not mutually exclusive. *In re Donohue*, 410 B.R. 311 (Bankr. D. Kan. 2009). When a settlement amounts to a sale, not only are the provisions of Fed. R. Bankr. P. 9019 implicated, but also the provisions of sales under 11 U.S.C. §363. However, the Appellant failed to identify the correct resolution of the application of both compromise provisions and sale provisions.

"When confronted with a motion to approve a compromise, the Court may consider whether the property of the estate being disposed of in the settlement may draw a higher price

18

through a competitive process. . . ." *In re Donohue*, 410 B.R. at 315. The court in *Donohue*

quoted the United States Bankruptcy Appellate Panel for the Ninth Circuit which stated,

"Whether to impose formal sale procedures is ultimately a matter of [the Trustee's][8] discretion

that depends upon the dynamics of the particular situation." *In re Mickey Thompson*

*Entertainment Group, Inc.*, 292 B.R. 415, 422 (B.A.P. 9th Cir. 2003).

Here, the Bankruptcy Court was confronted with a proposed settlement that not only

implicated the provisions of Fed. R. Bankr. P. 9019, but also implicated the provisions of 11

U.S.C. §363. As such, it is first in a trustee's discretion, then in a bankruptcy court's discretion

to impose formal sale procedures or to approve the compromise. "[T]he Court may consider

whether the property of the estate being disposed of in the settlement might draw a higher price

through competitive process and be the proper subject of a §363 sale." *In re Donohue*, 410 B.R.

at 315.

In this case, both the Trustee and the Bankruptcy Court appropriately chose to approve

the compromise rather than seek a higher price for the Appeal through a competitive bidding

process. Prior to this particular settlement negotiations, the estate attempted to auction the

promissory notes that will mature on various dates in 2014. Neither party would participate in

the auction unless all of their requirements were met. Both sides made it clear that their positions

were non-negotiable. The Kiyosakis additionally wanted the Trustee to agree to use a release of

claims for the auction of the promissory notes. The Trustee agreed to use releases, as upheld by

*In re Ontos, Inc.*, 478 F.3d 427 (1st Cir. 2007). However, when the Trustee asked the Kiyosakis

---

[8]The court in *Donohue* initially looked to the Trustee's discretion in pursuing the
settlement or competitive bidding. *Id.* at 315.

to provide the desired releases, they refused to do so.  Since neither party would participate, the auction was not held.  The Bankruptcy Court acknowledged the Trustee's attempts to proceed with the auction of the promissory notes by stating, "[The auction] appears to have been unsuccessful due to the demands of the objecting parties." Op. Trst.'s Mot. Appr. Sttlm., pg. 2.

Due to prior experience in this case with attempts to auction, the Trustee decided to forego seeking competitive bids for the Appeal.  The dynamics of the situation were not conducive to effective competitive bidding.

The Trustee also has estimated the different distribution to creditors if a higher price was accepted for the auction of the Appeal.  After the Trustee's administrative fees, the breakdown of the distributions would be: for a settlement price of $100,000, Learning Annex would receive $1,938,787.74 and RDOC would receive $180,467.21; for a settlement price of $1 million, Learning Annex would receive $2,736,792.57 and RDOC would receive $254,747.49.  Even if competitive bidding yielded a $1 million settlement price, RDOC's pro rata proportion of the bankruptcy estate's assets would increase by approximately $74,000.  A ten-fold increase in settlement price would reflect a less than a ten percent change in RDOC's share of the bankruptcy estate.  This small increase demonstrates further that a competitive auction would not be in the best interests of the estate because the changes in the distribution proportions to the two creditors would be so minimal.

IV.  THE BANKRUPTCY COURT DID NOT ERR BY REJECTING RDOC'S OFFER TO INDEMNIFY THE TRUSTEE FOR THE COST OF LITIGATING THE APPEAL BECAUSE AN OFFER OF INDEMNIFICATION IS CONSIDERED ONLY WHEN LITIGATION COULD BE SUCCESSFUL AND WHEN THE BANKRUPTCY COURT HAS NO FUNDS TO PAY CREDITORS.

The Appellant argues that there is no legal justification for the Trustee and the Bankruptcy Court to decline RDOC's offer to indemnify the estate for the expense of litigating the Appeal. The Appellant relies on a line of cases to support the argument that when indemnity has been offered, a settlement agreement cannot be approved. However, each cited case is distinguishable from the present situation and each case reiterates the legal justifications for rejecting an offer to indemnify.

In *Reiss*, 881 F.2d 890, the United States Court of Appeals for the Tenth Circuit found that the bankruptcy court had not made an informed and objective decision in approving the settlement. In that case, the bankruptcy estate had nominal assets to pay a single creditor. *Id.* That creditor offered to indemnify the estate to proceed with litigation to remove a piece of property from a trust, which would add significant value to the estate. *Id.* The court in this case found that the litigation's chance of success was at "nearly one hundred percent" because state law almost guaranteed recovery of the trust property. *Id.* at 892. The court also found that even if the litigation would not be successful, the bankruptcy estate needed to pursue the litigation to recover enough assets to pay the creditor. *Id.* at all; *Frates v. Weinshienk*, 882 F. 2d 1502 (10th Cir. 1989)(finding approval of a settlement to be an abuse of discretion when pursuing the litigation would be recovery by the estate and provide for payment to creditors, which would not be possible without such pursuit).

The opposite situation exists here. The Bankruptcy Court properly determined that the Appeal had a drastically low chance of success; not the contemplated "nearly one hundred percent." Two New York District Court juries reached the same verdict finding against Appellant. Further, the bankruptcy estate already has value to pay creditors, and as mentioned

21

before, the Appeal concerns claims against the estate rather than recovery by it. In *Reiss*, the

Tenth Circuit found indemnification to be appropriate because the litigation was likely to be

successful, it was necessary to pay creditors, and it would result in recovery to the estate. *Id.*

Indemnification is not appropriate here because the Appeal is almost guaranteed to be

unsuccessful, it is not necessary to pay creditors and it would result in a change in a claim against

the estate.

The Appellant also cites *In re Vazquez*, 325 B.R. 30 (Bankr. S.D. Fla. 2005) as precedent

for an offer to indemnify as appropriate consideration when weighing a proposed settlement.

However, the court in *Vazquez* also outlines the two important legal justifications for accepting

or rejecting an offer to indemnify the estate for pursing litigation, (1) potential success of the

litigation and, (2) value to pay out to creditors.

> The court agrees that a creditor's willingness to fund litigation is an appropriate
> consideration when weighing the reasonableness of a proposed settlement. However,
> the fact that the creditor is willing to fund additional litigation should not itself be
> controlling. Again, it seems contrary to the intent of the code that the trustee's role
> could be subverted from an independent, fiduciary capacity to one in which the
> trustee is compelled to pursue a course of litigation which she does not believe will
> prove fruitful. Once upon a time, bankruptcy relief was envisioned as simply an
> extension of a creditor's other collection efforts, but that is not the intent of the
> present bankruptcy code. The purpose of the bankruptcy code is to afford for the fair
> and orderly liquidation of a debtor's assets, not for the creditors to pursue litigation
> which is speculative at best. In *Reiss*, the court suggested that the chance of
> successful recovery in the underlying litigation was properly evaluated at 'nearly one
> hundred percent'.[9] The trustee in the present case has no such certainty of success.
> *Id.* at 38.

Not only is an offer to indemnify only relevant when the litigation at issue has a potential for

success and when there are no assets to liquidate to pay to creditors, but an offer of

---

[9]*Reiss*, 881 F.2d at 892.

indemnification is not controlling. All of these concepts are the legal justifications that the Trustee and the Bankruptcy Court had for rejecting RDOC's offer to indemnify the estate for the costs to pursue litigation.

The Bankruptcy Court did not ignore RDOC's offer in its *Opinion on Trustee's Motion to Approve Settlement*. Contrary to ignoring, the Bankruptcy Court simply had no need to include RDOC's offer to indemnify the estate in its *Opinion*. As stated above, this case is likely to be unsuccessful and assets already exist to be liquidated and creditors paid. The Appellant admits this in their brief stating, "First, this is not a case in which the Estate will have no assets . . . . according to Debtor's schedules, Debtor has personal property worth $1,794.405.29." Opening Brief of Appellant Rich Dad Operating Company, LLC, pg. 28.

The only benefit that comes from the estate pursuing this litigation is that RDOC's claim may change. Just as the Bankruptcy Court pointed out in its *Opinion*, "[t]he court is concerned that this proposition puts the Trustee in the position of working for a creditor and equity shareholder of the estate, against the only other creditor." Op. Trst.'s Mot. Appr. Sttlm., pg. 7. The effect of the litigation will not add value to the estate in any form, on the contrary, any outcome would change the amount of a claim against the estate. If a claim against the estate changes, the only effect on the estate itself is that the pro rata distribution will shift. By pursuing litigation, the Trustee would be using estate funds (which all creditors are entitled to) to help one creditor obtain a higher proportion of the distribution, to the detriment of the only other creditor. As the court in *Vazquez* found, the purpose of a bankruptcy estate is not to allow creditors to litigate potentially unsuccessful claims, but to provide a fair liquidation of the debtor's assets. Neither is the purpose to place a trustee in any other position than acting in the best interests of

23

the estate. *Id.* ". . .[The trustee's collection of assets] is assumed as a fiduciary relationship to the estate itself and not as some sort of 'hired gun'. The trustee is not the employee or agent of the creditors; [creditors] do not have the right to direct how the trustee chooses to perform the statutory duties of the position." *Id.* at 39. It is simply not a trustee's role to litigate a case for one creditor over another.

The Settlement allows the Learning Annex Judgment against Rich Global to remain at approximately $23 million as a general unsecured claim. However, as a general review of bankruptcy, Learning Annex will not receive $23 million. As in every bankruptcy, unless there are surplus funds, Learning Annex will receive only a percentage of their claimed amount. That percentage is based on the total amount of claims against the estate, and Learning Annex's claim amount relative to RDOC's claim amount. Learning Annex will receive a percentage of the $100,000 as part of its payment from the estate, however RDOC will also receive a portion of that amount. RDOC will receive a much smaller portion of the $100,000 because RDOC's claim against the estate is drastically smaller than that of Learning Annex.

Appellant argues that one of the only other advantages of the Settlement is that it saves time and expense to litigate the Appeal. Appellant argues that RDOC's offer to indemnify takes care of the expense of litigation. This is true, however, the litigation would not be successful and there is no benefit or recovery to the estate by pursuing the litigation; nor is RDOC's offer controlling. *Id.* at all; *See, e.g. Reiss*, 881 F.2d 890. The estate would lose a large amount of time by pursuing the Appeal, but ultimately, the estate would gain nothing from pursuing the Appeal. Even if an offer to indemnify the estate for costs of litigation was an additional factor in approving a settlement, the Bankruptcy Court's consideration of the original four factors would

24

not change. The analysis is not overwhelmingly swayed against approving the Settlement

because the Appeal is still likely to be unsuccessful, and there are assets in the estate to pay

creditors already.

The Appellant continues by arguing that the expeditious administration of the bankruptcy

estate is not the only consideration that should be made when approving a settlement, and that

cannot outweigh appellate review. (*See supra* Argument II). The Appellant cites *In re Tidewater*

*Grp. Inc.*, 13 B.R. 764 (Bankr. N.D. Ga. 1981) to support this argument that delay in time cannot

be considered alone when approving a settlement. The Bankruptcy Court in this case has

considered many factors contemporaneously with the delay in time that pursuing the Appeal

would cause, including the chance of success of the Appeal, etc. (*See supra* Argument I, II and

III).

The Bankruptcy Court properly rejected RDOC's offer to indemnify the estate for the

costs to pursue litigation. Even if the Bankruptcy Court had included RDOC's offer in its

consideration of the factors necessary to evaluate a settlement offer, the Bankruptcy Court

properly approved the settlement.


## CONCLUSION

For the reasons stated above, the Bankruptcy Court's approval of the settlement was not

an abuse of discretion.  The approval was an informed opinion based upon an objective

evaluation of developed facts as required by *Reiss*, 881 F.2d 890. The Bankruptcy Court

considered the four factors required by *Anderson*, 390 U.S. 414, and presented its findings

pursuant to Fed. R. Bankr. P. 9019 and 7052. The judgment of the Bankruptcy Court should be

affirmed.

Respectfully submitted this 19th day of September, 2013.

By:  /s/ Tracy L. Zubrod
Tracy L. Zubrod,
Wyo. Bar Reg. No. 6-279
Chapter 7 Bankruptcy Trustee
Zubrod Law Office, P.C
1907 House Avenue
Cheyenne, WY 82009
(307)778-2557
zubrod@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2013, I served the foregoing by mailing a true and correct copy United States Mail, postage prepaid, addressed as follows, unless otherwise noted:

Gregory L. Williams
John F. Young
Devi C. Yorty
1700 Lincoln Street, Ste 4000
Denver, CO 80203
Attorneys for Rich Dad Operating Company, LLC

Mark E. Macy
MACY LAW OFFICE, P.C.
217 West 18th Street
Cheyenne, WY 82001
Attorney for Rich Global, LLC

James R. Belcher
BELCHER & BOOMGAARDEN, LLP
237 Storey Boulevard, Ste 110
Cheyenne, WY 82009
Attorneys for Learning Annex

Ethan J. Birnberg
LINDQUIST & VENNUM, P.L.L.P.
600 17th Street, Ste 1800 South
Denver, CO 80202
Attorney for Cashflow Technologies, Inc.

Lee M. Kutner
Jenny M. Fujii
KUTNER MILLER BRINEN, P.C.
303 East 17th Avenue, Ste 500
Denver, CO 80203
Attorneys for Robert and Kim Kiyosaki

Jonathan Harris
11 Broadway, Ste 402
New York, NY 10006
Attorney for Learning Annex

26

Paul Hunter
2616 Central Avenue
Cheyenne, WY 82001
Attorney for Robert and Kim Kiyosaki

Edwin G. Schallert
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, NY 10022
Attorney for Learning Annex

/s/ Tracy L. Zubrod
Tracy L. Zubrod

27