## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

Civil Action No. 13-cv-00167-ABJ

IN RE RICH GLOBAL, LLC,

      Debtor.

---

RICH DAD OPERATING COMPANY, LLC, and RICH GLOBAL, LLC

      Appellants,

v.

TRACY L. ZUBROD, Chapter 7 Trustee, LEARNING ANNEX
HOLDINGS, LLC, LEARNING ANNEX, LLC, and LEARNING ANNEX, L.P.

      Appellees.

---

### BRIEF ON APPEAL OF APPELLEES LEARNING ANNEX HOLDINGS, LLC, LEARNING ANNEX, LLC, AND LEARNING ANNEX, L.P.

---

James R. Belcher
Wyoming Bar # 5-2556
CROWLEY FLECK PLLP
237 Storey Boulevard, Suite 110
Cheyenne, Wyoming 82009
Telephone:  (307) 426-4105
Facsimile:  (307) 426-4009
Attorneys for Appellees Learning Annex
Holdings, LLC, Learning Annex, LLC,
and Learning Annex L.P.

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................... 1

II.   STATEMENT OF THE CASE.................................................................. 3

      A.  The SDNY Litigation...................................................................... 3

      B.  Rich Global's Stay Motion ............................................................ 6

      C.  The Bankruptcy Case..................................................................... 7

      D.  The Kiyosakis' Attempt to Bar Fraudulent Transfers Claims ............................ 8

      E.  The Settlement Agreement ............................................................. 9

      F.  The Bankruptcy Court's Opinion .................................................... 13

III.  STANDARD OF REVIEW ................................................................... 15

IV.   ARGUMENT .................................................................................. 16

      A.  The Bankruptcy Court Acted Correctly By Approving the Settlement............. 16

            1.  The Bankruptcy Court Had Ample Information To Support The Conclusion
                That The SDNY Appeal Has A Low Probability Of Success ..................... 17

            2.  The Bankruptcy Court Reasonably Concluded That The SDNY Appeal Is
                Complex And That Pursuing The Appeal Could Be Expensive And Time-
                Consuming ................................................................................. 20

            3.  The Record Supported The Conclusion That The Settlement Is In The Best
                Interests Of The Estate And Its Legitimate Creditors.................................. 20

      B.  RDOC's Challenges To The Sufficiency Of The Bankruptcy Court's Findings
          And Conclusions Are Without Merit................................................... 21

      C.  The Trustee Acted Reasonably In Declining The RDOC "Offer to Indemnify"
          The Estate, And The Bankruptcy Court Did Not Abuse Its Discretion In
          Upholding That Decision.................................................................. 24

      D.  The Bankruptcy Court Properly Treated The Agreement As A Settlement And
          Not As A Sale ............................................................................... 26

            1.  The Settlement Does Not Constitute a Sale................................................ 26

            2.  Even Under a Section 363 Analysis, the Settlement Agreement Warranted
                Approval ..................................................................................... 29

V.     The Settlement Does Not Violate Public Policy ....................................................... 31

VI.    CONCLUSION ........................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Allen v. Loveridge (In re Log Furniture, Inc.)*, 257 Fed. Appx. 101 (10th Cir. 2007) .................15

*Andrews Davis Law Firm v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 258 (B.A.P. 10th Cir. 2006) ..........................................................................................................................15, 17

*Austin Assocs. v. Howison (in Re Murphy)*, 288 B.R. 1 (D. Me. 2002)........................................29

*Cousins v. Pereira (In re Cousins)*, Case No. 09 Civ. 1190 (RJS), 2010 U.S. Dist. LEXIS 136139 (S.D.N.Y. Dec. 22, 2010)...................................................................................2, 16

*Featherstone v. Barash*, 345 F.2d 246 (10th Cir. 1965) ..............................................................21

*Gibson v. Speier (In re Gibson)*, 2011 Bankr. LEXIS 4341 (B.A.P. 9th Cir. Aug. 3, 2011) ........24

*Gillman v. Scientific Research Prods. (In re Mama D'Angelo)*, 55 F.3d 552 (10th Cir. 1995) ...................................................................................................................16, 17

*Griffin v. Novastar Mortg. (In re Ramsey)*, 356 B.R. 217 (Bankr. D. Kan. 2006) ......................17

*Hicks, Muse & Co. v. Brandt (In re Healthco, Inc.)* 136 F.3d 45 (1st Cir. 1998) ........................27

*In re Apex Oil Co.,* 92 B.R. 847 (Bankr. E.D. Mo. 1998) .............................................................16

*In re Brown*, 21 B.R. 701 (B.A.P. 1st Cir. 1982)..........................................................................23

*In re Bugaighis*, Case No. 03-12112 HRT, 2004 Bankr. LEXIS 2243 (Bankr. D. Colo. Nov. 5, 2004) ...............................................................................................................16

*In re C. W. Mining Co*., 2010 Bankr. LEXIS 407 (Bankr. D. Utah Feb. 10, 2010) ...............29, 30

*In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349 (5th Cir. 1997)........................................2, 21

*In re Curlew Valley Associates*, 14 B.R. 506 (Bankr. D. Utah 1981)...........................................29

*In re Fidelity Am. Fin. Corp.*, 43 B.R. 74 (Bankr. E.D. Penn. 1984) ...........................................27

*In re Hefel*, Case No. 10-02787, 2011 Bankr. LEXIS 3570 (Bankr. N.D. Iowa Sept. 19, 2011) ...........................................................................................................................16

*In re Heissinger Resources, Ltd.*, 67 B.R. 378 (C.D. Ill. 1986)..............................................22, 24

*In re Kaiser Steel Corp.*, 105 B.R. 971 (D. Colo. 1989) ...............................................15, 16, 31

*In re Key3Media Group, Inc.*, 336 B.R. 87 (Bankr. D. Del. 2005) ..............................................16

*In re Martin*, 212 B.R. 316 (B.A.P. 8th Cir. 1997)........................................................16

*In re Mozer*, 302 B.R. 892 (C.D. Cal. 2003)................................................................27

*In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798 (E.D. Pa. 1986)...........................27

*In re Novak*, 383 B.R. 660 (Bankr. W.D. Mich. 2008).................................................26

*Korngold v. Loyd (In re S. Med. Arts Cos.)*, 2006 Bankr. LEXIS 1771 (B.A.P. 10th Cir. June 5, 2006)..........................................................................................................15, 31

*Learning Annex Holdings, LLC and Learning Annex, LLC, and Learning Annex, L.P. v. Rich Global, LLC and Cashflow Technologies, Inc.,* Index No. 09-CV-4432 (the "SDNY Litigation").............................................................3, 4, 5, 6, 7, 14, 20, 21, 22, 25

*Mann v. United States*, 204 F.3d 1012 (10th Cir. 2000)................................................23

*Morgan Guar. Trust Co. v. Republic of Palau*, 702 F. Supp. 60 (S.D.N.Y. 1988) ......19

*Network Enters. v. APBA Offshore Prods., Inc.*, No. 01 Civ 11765, 2007 WL 398276 (S.D.N.Y. Feb. 5, 2007)...............................................................................................19

*Owry v. Croft (In re Croft)*, Bankr. Civ. A. No. A-12-CV-535-XR, 2012 WL 6115658 (W.D. Tex. Dec. 10, 2012)..........................................................................................27

*Rademacher v. Colorado Ass'n of Soil Conservation Dists. Medical Benefit Plan*, 11 F.3d 1567 (10th Cir. 1993)................................................................................................23

*Reiss v. Hagmann*, 881 F.2d 890 (10th Cir. 1989) ......................................................15

*Security Nat'l Bank v. Turner (In re Ocobock)*, 608 F.2d 1358 (10th Cir. 1979) ........15

*Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986) ...........................30

*United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 23, 2003) ........................................................30

*United States v. Nicholson*, 721 F.3d 1236 (10th Cir. 2013).......................................23

## STATUTES

11 U.S.C. § 362.............................................................................................................7

11 U.S.C. § 363................................................................................................26, 29, 30

11 U.S.C. § 704.............................................................................................................7

11 U.S.C. § 704(a) .......................................................................................................1

11 U.S.C. § 541................................................................................................................26

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 7052.........................................................21, 22

Federal Rule of Bankruptcy Procedure 9019.......................9, 10, 11, 13, 14, 15, 16, 22, 25, 26, 29

Appellees Learning Annex, L.P., Learning Annex Holdings, LLC and Learning Annex, LLC (together, "Learning Annex") respectfully submit this brief in opposition to the appeal by Rich Dad Operating Company, LLC ("RDOC") and Rich Global LLC ("Rich Global") (together, the "Rich Dad Companies") from the July 16, 2013 Order of the Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court"), which approved a settlement agreement between Learning Annex and the Trustee in Rich Global's chapter 7 bankruptcy case (the "Trustee").

## I.       PRELIMINARY STATEMENT

Learning Annex holds a judgment (the "Judgment") in the amount of $23,687,957.20 against Rich Global that was entered on July 17, 2012 by the United States District Court for the Southern District of New York (the "SDNY Court").   Rich Global filed an appeal from the Judgment in August 2012 (the "SDNY Appeal"), but a few weeks thereafter it filed a voluntary chapter 7 bankruptcy petition, which stayed the appeal.   The bankruptcy filing had the effect of transferring control of Rich Global's assets, and of decisions regarding claims against Rich Global, to the Trustee.   *See* 11 U.S.C. § 704(a).

In early 2013 the Trustee notified the parties that she saw no value to the chapter 7 estate in pursuing the SDNY Appeal.   In May 2013 the Trustee reached a settlement with Learning Annex, under which the Trustee agreed to dismiss the SDNY Appeal and Learning Annex agreed to make a $100,000 payment to the Rich Global estate.   The Bankruptcy Court approved the settlement in an Opinion dated July 16, 2013 and in a separate order issued that same date. Rich Global (the debtor) and RDOC (Rich Global's parent company) then filed the appeals that are pending before this Court.

The Bankruptcy Court's Order should be affirmed.   The Court applied the correct legal standards and acted well within its discretion in approving the settlement.   The Bankruptcy Court

reviewed all of the materials submitted by the parties, including opinions issued by the SDNY Court that discussed the underlying legal and factual issues in great detail.  The Bankruptcy Court addressed Rich Dad Companies' contention that the SDNY Court allegedly had ruled that the SDNY Appeal was likely to succeed.  The Bankruptcy Court reviewed the opinion cited by the Rich Dad Companies and rejected their argument, correctly holding that the SDNY Court's "statements regarding the likelihood of success on appeal were taken out of context" by the Rich Dad Companies.  *See* ECF 93, at 6; App. R., at 860

On appeal, the Rich Dad Companies criticize the Bankruptcy Court for not entering detailed factual findings and legal conclusions on other points.  They argue, for example, that the Bankruptcy Court should have made its own independent factual findings and legal conclusions as to the claims that resulted in the Judgment.  However, it is well-settled that it is neither necessary nor appropriate for a Bankruptcy Court to hold a "mini-trial" on the underlying issues in order to approve a settlement.  *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 356 (5th Cir. 1997).  Instead, the Bankruptcy Court's task is "to canvass the issues" to determine if the settlement is a reasonable one.  *Cousins v. Pereira (In re Cousins)*, Case No. 09 Civ. 1190 (RJS), 2010 U.S. Dist. LEXIS 136139, at *10 (S.D.N.Y. Dec. 22, 2010).  The Bankruptcy Court did so here; it cannot be faulted on appeal for failing to re-try the issues that had already been litigated in the SDNY Court.

The Rich Dad Companies also argue that as a matter of law the Trustee should have accepted a counter-proposal that RDOC made, under which RDOC would "indemnify" the Trustee against any expenses she ultimately incurred in connection with the Appeal.  However, the RDOC counter-proposal (a) did not provide for an advance of funds to the estate (leaving the Trustee instead with a promised indemnity right of uncertain collectability), (b) did not resolve

the SDNY Appeal, (c) did not even provide for relief from the automatic stay so that the SDNY Appeal could proceed, and (d) did not offer the additional $100,000 benefit to the estate that the Learning Annex settlement provided.  In short, the RDOC counter-proposal was not remotely comparable to the settlement.  The Trustee acted reasonably in rejecting RDOC's proposal, and the Bankruptcy Court acted properly in upholding the Trustee's decision.

Finally, the Rich Dad Companies contend that the transaction with Learning Annex should have been treated as a sale rather than a settlement.  However, the Rich Dad Companies argued to the Bankruptcy Court that the Trustee's right of appeal was not an asset that could be sold.  The Bankruptcy Court correctly held that this particular transaction involved only a settlement and not a sale.  In any event, applying a different name to the transaction would not change the outcome.  The Bankruptcy Court's task in reviewing a proposed sale, like its task in reviewing a settlement, is to determine whether the Trustee has acted reasonably.   The Bankruptcy Court did so here.

Other points raised by the Rich Dad Companies are without merit, as explained below. The settlement was approved by an experienced bankruptcy judge who applied the correct legal standards and acted well within his discretion, and his Order should be affirmed.

## II.    STATEMENT OF THE CASE

### A.    The SDNY Litigation

Learning Annex is in the business of promoting and conducting educational seminars.  In December 2008, Learning Annex filed a complaint against Rich Global and related entities in the SDNY Court.  The action is captioned *Learning Annex Holdings, LLC and Learning Annex, LLC, and Learning Annex, L.P. v. Rich Global, LLC and Cashflow Technologies, Inc.,* Index No. 09-CV-4432 (SAS/GWG) (the "SDNY Litigation").  Learning Annex contended that it had been

wrongfully excluded from an enormously successful business involving Rich Dad educational seminars that Learning Annex had conceived and put together.   Learning Annex sought compensation for the services it performed under various theories, including claims of *quantum meruit* and unjust enrichment.

The defendants in the SDNY Litigation included Rich Global.  Rich Global was formed in 2006 specifically for the purpose of receiving the profits from the seminar business that was the subject of the SDNY Litigation.  That seminar business produced cash sales totaling nearly $500 million as of March 2012, from which Rich Global received at least $42 million in royalties.  However, Learning Annex received no compensation.

In September 2010, Rich Global and the other defendants moved for summary judgment. The SDNY Court dismissed some claims, but held that it was appropriate for the *quantum meruit* and unjust enrichment claims to proceed to trial.  The summary judgment decision was submitted to the Bankruptcy Court and is part of the record on this appeal.  *See* ECF 89-1; App. R. at 513-551.

On July 13, 2011, following seven days of trial, a jury rendered a verdict against Rich Global and its affiliated co-defendant, Cashflow Technologies ("Cashflow"), awarding damages in favor of Learning Annex in the amount of $14,688,194, plus interest.  Rich Global and Cashflow asked that the jury's verdict be set aside, contending (among other things) that Learning Annex had no reasonable expectation of compensation because the parties had agreed that a preliminary memorandum of understanding (the "MOU") would not itself be legally binding.  On January 11, 2012, the SDNY Court issued an opinion that rejected Rich Global's and Cashflow's arguments; this decision was also submitted to the Bankruptcy Court.  *See* ECF 89-2; App. R., at 552-84.  The SDNY Court held (among other things) that "the fact that

Learning Annex and Rich Dad had not yet entered into a reasonably binding contract, and did not intend for the MOU to have legal effect, does not preclude Learning Annex from having a reasonable expectation of compensation for work performed after communications suggesting a contrary understanding." *See* ECF 89-2, at 13; App. R., at 565.   The SDNY Court also cited evidence of post-MOU events that were sufficient to support a factual finding that Learning Annex had a reasonable expectation of compensation.   *Id.* at 11-13; App. R. at 563-565. Notwithstanding these holdings on liability issues, however, the SDNY Court ordered a new trial on damages. *Id.* at 30; App. R., at 582.   It also held that the evidence was insufficient to sustain the verdict against Cashflow and granted judgment as a matter of law to Cashflow.   Learning Annex has filed a cross-appeal from the order dismissing claims against Cashflow (the "Cross-Appeal").

A new trial on the issue of damages was held for five days in April 2012.   A transcript of the parties' closing arguments, and of comments made by the SDNY Court after the verdict was reported, was submitted to the Bankruptcy Court. *See* ECF 89-5; App. R., at 614-717.   On April 30, 2012, the second jury returned a verdict in favor of Learning Annex in the amount of $15,863,696, plus interest.   *Id.* at p. 864; App. R., at 713.   After the verdict was entered, the SDNY Court made the following observations about the quality of the evidence:

> I can tell you that there is no way I would set aside this verdict for the same reason I set aside the first verdict. There I thought that   the   evidence   was insufficient to support it and couldn't support  it  on  that  record.   There has been different and more evidence at this trial and remarkably, I think the jury came up with again a verdict virtually identical.

*Id.* at p. 865; App. R., at 714.

Rich Global again made post-trial motions that challenged the *quantum meruit* claims, and the SDNY Court again rejected Rich Global's arguments.   A copy of the SDNY Court's decision was submitted to the Bankruptcy Court. *See* ECF 89-3; App. R., at 585-606.   The

SDNY Court emphasized that "Rich Global relies predominantly on unjust enrichment cases, which are inapposite because if the business venture never comes to fruition or is never profitable, then there is no enrichment.  I am not inclined to reconsider my prior rulings at this juncture, when Rich Global has pointed to no binding precedent holding that a business party cut out of a successful business venture may not recover in *quantum meruit*."  *See* ECF 89-3, at 11; App. R., at 596.

On July 17, 2012, the SDNY Court entered the Judgment against Rich Global in the amount of $23,687,957.20, representing the jury's award and prejudgment interest.  ECF 89-4; App. R., at 607-613.  On July 20, 2013, Rich Global filed the SDNY Appeal.

**B.      Rich Global's Stay Motion**

Following the notice of appeal, Rich Global moved to stay enforcement of the Judgment pending the outcome of the SDNY Appeal.  Rich Global asked the SDNY Court to approve a stay without requiring the posting of a supersedeas bond in the full amount of the Judgment.  In its motion, Rich Global represented to the Court Jthat it had $4 million in total assets.  Learning Annex opposed this motion and requested, in the event that a stay was granted, that the SDNY Court also authorize discovery and an audit of Rich Global's finances, to ensure that the Judgment could be collected.[1]

The SDNY Court issued an opinion on the stay motion on August 1, 2012; the opinion was submitted to the Bankruptcy Court.  *See* ECF 89-6; App. R., at 718-725.  Following established law, the SDNY Court considered four factors in determining whether the stay was

---

[1]      Learning Annex believes that the ultimate owners of Rich Global fraudulently transferred assets out of Rich Global during the pendency of the SDNY Litigation, including Rich Global's contract rights and substantially all of the $42 million of royalties that Rich Global had received – all in an effort to prevent collection of a potential judgment.

warranted:  whether the appeal was likely to succeed on the merits; whether Rich Global would be irreparably injured absent a stay; whether a stay would substantially injure Learning Annex; and the public interest.  In addressing whether the appeal was likely to succeed, the SDNY Court explained that "I need not 'confess error and predict a reversal by the Second Circuit,' but rather it is sufficient to recognize that Rich Global can 'demonstrate a substantial case on the merits, even if ultimate success is not a mathematical probability.'"  *Id*. at 2; App. R., at 720.  The SDNY Court then stayed enforcement of the Judgment, on the condition that Rich Global post a supersedeas bond in the amount of $2.3 million.  The SDNY Court also granted Learning Annex the right to audit the books and records of Rich Global.  *Id.* at 5; App. R. 723.

Rather than post the required $2.3 million bond and submit to the court-ordered audit, Rich Global filed for bankruptcy in the District of Wyoming on August 20, 2012.  The Appeal and the Cross-Appeal were stayed upon filing of the bankruptcy petition.  *See* 11 U.S.C. § 362.

## C.     The Bankruptcy Case

On the same day that it filed its bankruptcy case, Rich Global submitted a statement of assets and liabilities, which listed only $1,794,405 in total assets as of June 30, 2012, including promissory notes (the "Notes") payable by Robert and Kim Kiyosaki, who are the ultimate owners of the Rich Dad Companies.  The promissory notes total $1,783,358, or 99.4% of Rich Global's listed assets.  Rich Global has offered no explanation as to the disposition of the $42 million that it received from the free seminar business, or of the difference between the listed assets ($1,794,405) and the amount of assets that Rich Global had reported to the SDNY Court just one month earlier (nearly $4 million).

As is standard in chapter 7 bankruptcy cases, a trustee – Tracy L. Zubrod – was automatically appointed to exercise control over Rich Global and its affairs.  Among other roles,

the Trustee has responsibility for collection of assets belonging to the estate and, if a purpose would be served, objecting to proofs of claim that are improper.  11 U.S.C. § 704.

The Bankruptcy Court set a bar date for the filing of claims against Rich Global. Learning Annex was the only independent creditor to file a claim against the estate.  Learning Annex's claim is in the amount of $23.6 million, based on the Judgment.

RDOC is the only other entity that filed a claim against Rich Global's estate.  Corporate documents list RDOC as the sole member of Rich Global and Robert and Kim Kiyosaki as the sole members of RDOC.  The RDOC claim totals $2,205,217.43 and is based on alleged intercompany transactions between Rich Global and RDOC.  Both the Trustee and Learning Annex have objected to the RDOC claim on the grounds that the documentation submitted in support of the claim was deficient.  Learning Annex, in addition, has objected to the claim on the grounds that many of the debts that purportedly give rise to the claim are payments that wrongfully stripped Rich Global of its assets and left it unable to pay the Judgment.

### D.    The Kiyosakis' Attempt to Bar Fraudulent Transfers Claims

Some of the earliest proceedings in the bankruptcy case related to an effort by the Kiyosakis to insulate their entities from claims that the Trustee might assert.  The Rich Dad Companies have referred to these proceedings in their papers, but they have not correctly described them.

On November 1, 2012, the Trustee filed a motion seeking approval of a proposed settlement between the estate and the Kiyosakis relating to the Notes.  The proposed settlement sought to extinguish claims on the Kiyosaki Notes in exchange for the payment of $1.4 million, a discount of approximately 25%.  The proposed settlement also included a broad release for the Kiyosakis and 19 of their owned entities, including RDOC.  The release would have applied to

"any claim that the Debtor or the Debtor's Estate could assert or could have asserted against Kiyosaki or the Kiyosaki Entities arising out of or related to any claim that Kiyosaki or the Kiyosaki Entities used the company or business form of the Debtor for fraudulent or improper purposes and that Kiyosaki or the Kiyosaki Entities are liable for the obligations of the Debtor on any 'alter ego,' 'piercing the corporate veil,' or similar theory."  ECF 14; App. R., at 42-49.

Although the proposed release did not refer explicitly to fraudulent transfer claims, by its terms it encompassed those claims.  Thus, the proposed settlement not only would have provided the Kiyosakis a steep discount on the value of the Notes owed to Debtor, but would have effectively barred the estate from recovering any fraudulent transfers of Rich Global's assets.

Learning Annex objected to the proposed settlement.  Learning Annex also submitted a counter-offer to the Trustee to purchase the Notes from the estate at a price higher than the price offered by the Kiyosakis.  At a hearing on whether to approve the proposed settlement between the Kiyosakis and the estate under Rule 9019, the Bankruptcy Court requested that the Trustee conduct an auction for the purchase of the Notes.  The Trustee attempted to auction the Notes in December 2012.  However, the Kiyosakis refused to bid on the Notes without the inclusion of the broad releases.  ECF 49, at ¶ 8 ("Kiyosaki insisted that it obtain the Release as a precondition of any bid.  Since the Release was not guaranteed by the Trustee[,] Kiyosaki would not bid."); App. R., at 370.  The Trustee, as a result, cancelled the sale of the Notes, which remain in possession of the estate.

**E.      The Settlement Agreement**

On February 22, 2013, the Trustee filed a Notice of Intention to Abandon Property in which the Trustee proposed to abandon any interest that the bankruptcy estate may have in the Appeal.  The notice stated that there was "no equity" in the Appeal for the benefit of the

unsecured creditors and stated that the Appeal is "burdensome to the estate or is of inconsequential value to the estate."  *See* ECF 43; App. R., at 338-340.

The Kiyosakis, RDOC, Rich Global and Learning Annex all objected to the procedure that the Trustee proposed to follow.  They each pointed out that the Appeal did not involve an affirmative right of recovery and that it was not "property" of the estate or an "asset" to be disposed of.  Rich Global argued that "[t]he litigation that the Trustee proposes to abandon are actions filed *against* the Debtor.  In the litigation, the Debtor has not filed any counterclaims which could be construed as potential assets." ECF 50, ¶ 1; App. R., at 372.  The Kiyosakis also objected on the basis that "it is premature to make any decision" regarding the abandonment of the litigation, urging that it remain on hold "[u]ntil the Chapter 7 case is concluded and the Trustee has been able to collect and liquidate assets…." ECF 71, ¶ 9; App. R., at 431.

While the Trustee's motion was pending, the Trustee and Learning Annex negotiated a settlement of the Appeal, the terms of which are embodied in an agreement (the "Settlement Agreement") that was submitted to the Bankruptcy Court.  *See* ECF 84; App. R., at 457-474. The key terms of the Settlement Agreement are:

- Learning Annex agreed to pay the amount of $100,000.00 to the Trustee;

- The Trustee agreed to dismiss the Appeal, with prejudice; and

- A single claim will be allowed as a general unsecured claim in favor of the Learning Annex Parties in the amount of $23,690,999.41, representing the amount of the Judgment plus post-judgment interest that accrued from the date of entry of the Judgment until the filing of the Chapter 7 petition.

On May 21, 2013, the Trustee filed the motion to approve the Settlement pursuant to Federal Rule of Bankruptcy 9019.  On June 14, 2013, RDOC and the Kiyosakis each filed objections. The Kiyosakis have not filed an appeal, so their objection is not at issue before this Court.

RDOC contended that the settlement should be denied because the Trustee's statements that the appeal has a low probability of success "directly contradict the District Court Judge's findings and conclusions that the Appeal has a high probability of success." ECF 86, ¶ 8 (citing SDNY Court Order); App. R., at 480.  It further argued that the Trustee failed to provide "any evidence or analysis regarding the cost of pursuing the Appeal." *Id.*  RDOC argued that pursuit of the SDNY Appeal might "inure to the benefit of the other stakeholders herein, namely the equity holder Rich Global and its related parties." *Id.* at ¶ 9; App. R. at 481.  It also argued (contrary to its earlier contentions) that the proposed Settlement was actually a sale and that an auction should be conducted. *Id.* at ¶¶ 10-13; App. R. at 481-83.  Finally, RDOC contended that the Settlement should be denied because the Trustee failed to "provide the Court with RDOC's agreement to indemnify the estate for the costs and fees incurred in pursing the Appeal." *Id*. at ¶ 8; App. R. at 480.

RDOC's indemnity proposal was set forth in an attachment to RDOC's objection. *Id.,* Ex. A; App. R. 485-86.  RDOC stated that it "is willing to indemnify the estate for all reasonable fees and costs incurred in pursuing the appeal of the Learning Annex judgment." *Id*.; Ex. A; App. R. 485.  However, RDOC did not propose to advance such costs.  Furthermore, RDOC's proposal did not provide for the resolution of the SDNY Appeal, and it did not even provide for a lifting of the stay to allow the SDNY Appeal to proceed.

On July 1, 2013, Learning Annex filed papers in support of the motion and in reply to the objections.  Learning Annex argued that the settlement was on reasonable terms, and it provided

the Bankruptcy Court with the following documents regarding the Judgment and the SDNY

Appeal:

- Statistical information demonstrating the low probability of success of appeals in the Second Circuit, showing that only 8.8% of civil appeals result in a reversal. *See* ECF 89 at ¶ 12; App. R., at 498.

- The SDNY Court's Summary Judgment Opinion and Order, Dated January 26, 2011. *See* ECF 89-1; App. R., at 513-551.

- The SDNY Court's Opinion and Order denying, in part, RDOC's motion for judgment as a matter of law, or in the alternative for a new trial, dated July 13, 2012. *See* ECF 89-2; App. R., at 552-84.

- The SDNY Court's Opinion and Order denying Rich Global's motion for judgment as a matter of law or, in the alternative, for a new trial, dated July 13, 2012. *See* ECF 89-3; App. R., at 585-606.

- The SDNY Court Judgment. *See* ECF 89-4; App. R., at 607-613.

- Excerpts of the SDNY Court trial transcript. *See* ECF 89-5; App. R., at 614-717.

- The SDNY Court Order granting the Stay, dated August 1, 2013. *See* ECF 89-6; App. R., at 718-725.

Learning Annex contended that the auction proposed by RDOC made no sense because

the right of appeal was not an asset to be sold, and also because the parties would not be bidding

on the same things. Learning Annex explained:

> To begin with, the Settlement Agreement relieves the estate of the substantial expense associated with pursuing the Appeal. In contrast, the Objectors require the estate to first fund those fees and costs even though the estate has no available cash. (Only after these costs are "incurred" would the estate be able to seek indemnification under RDOC's proposal, and even then it would be subject to a limitation based on what RDOC may view as "reasonable" fees and expenses. RDOC Objection, Ex. A.) In addition, the settlement brings an immediate end to the Appeal and a quick resolution of the largest claim in the bankruptcy. By contrast, the Objectors want to pursue an appeal that would take years of effort and keep the estate in suspense during the entire period. Moreover, RDOC and the Kiyosakis would be bidding to keep in place the stay of litigation, while the settlement would end the stay. The settlement would also permit Learning Annex's Cross-Appeal against a non-debtor to proceed, while the Objectors are trying to shield their affiliate from the Cross-Appeal. Permitting Learning

Annex's Cross-Appeal would benefit the estate, since Learning Annex's claims against Rich Global would potentially be reduced if Learning Annex succeeds in its Cross-Appeal and obtains recoveries from Cashflow Technologies. It is obvious that neither party would be willing to bid on what the other party is seeking, thus making any auction a sale of apples and oranges.

*See* ECF 89, ¶ 20; App. R., at 503-04.

On July 10, 2013, the evening before the hearing, Rich Global filed an objection arguing that pursuit of the SDNY Appeal was in the best interests of the estate because of "the probable success of the underlying litigation on the merits," although it did not provide an analysis of the probable success. *See* ECF 90, ¶ 11; App. R., at 851.  It also argued that the Bankruptcy Court should establish an auction to sell the Appeal, while at the same time arguing that it would be contrary to public policy to allow such a sale. *Id*. at ¶¶ 4-6, 14; App. R., at 850-52.

The Bankruptcy Court held oral arguments on July 11, 2013, and issued an opinion five days later.

**F.       The Bankruptcy Court's Opinion**

On July 16, 2013, the Bankruptcy Court issued an eight-page opinion approving the Settlement.  The Bankruptcy Court first set out the standard under which Courts must evaluate proposed settlement agreements.  It noted that "The court does not substitute its judgment for that of the trustee, but rather, should 'without conducting a trial or deciding the numerous questions of law and fact, canvass the issues and see whether the settlement fall(s) below the lowest point in the range of reasonableness.'"  ECF 93, at 3 (citing *In re Christie*, Chapter 11, Case No. 11-40764, 2013 Bankr. LEXIS 2016 (Bankr. D. Kan. May 17, 2013)); App. R., at 857. The Bankruptcy Court then reiterated the factors which it must canvass in performing this evaluation – the probable success of the underlying litigation on the merits, the possible

13

difficulty in collection of a judgment, the complexity and expenses of the litigation, and the interests of creditors in deference to their reasonable views.

Prior to performing the Rule 9019 analysis, the Court noted the objections of all parties, including the existence of RDOC's offer to indemnify the Trustee for the costs of the appeal. It further found that the Learning Annex transaction was "a settlement or compromise, not a sale," noting that compromise and settlement are defined as "an agreement between two or more persons to settle matters in dispute between them." *Id*. at 4-5; App. R., at 858-59.

The Bankruptcy Court then went on to perform the Rule 9019 analysis. First, the Bankruptcy Court noted that it had reviewed the materials from the SDNY Litigation that had been submitted to it and found that the appeal did not have a high likelihood of success, given that (1) the same issues on appeal had been extensively litigated and rejected in the SDNY Court and (2) statistically, there is a very low success rate for appeals in the Second Circuit. The Court also observed that the objectors' actions belied their statements of confidence in the merits of the SDNY Appeal, since at the time of the bankruptcy filing Rich Global had enough assets to post the $2.3 million supersedeas bond required by the SDNY Court, yet chose to file for bankruptcy rather than pursue the SDNY Appeal.

The Bankruptcy Court also discussed the specific issue raised by the Rich Dad Companies regarding the prospects of success on appeal – namely, their contention that the SDNY Court had allegedly already ruled that the SDNY Appeal was likely to succeed. The Bankruptcy Court reviewed the SDNY Court's orders and correctly held that the SDNY Court's "statements regarding the likelihood of success on appeal were taken out of context" by the Rich Dad Companies. *Id*. at 6; App. R., at 860.

14

Second, the court found that the appeal presented complex issues that could take years to litigate at a substantial cost to the estate with no assurances that the appeal would prevail.  Third, the Bankruptcy Court considered whether the Settlement was in the best interests of the creditors and the Debtor and found that it was.  The Bankruptcy Court declined to determine to evaluate the possible difficulty in collection of a judgment, noting that factor was not applicable because "the current judgment is a liability against the bankruptcy state and greatly exceeds the estate's assets."  *Id.* at 6; App. R., at 860.

The Bankruptcy Court also acknowledged that RDOC had recently offered a proposal to fund the cost of the Appeal in lieu of the Settlement, but rejected this proposal.  Among other things, the Bankruptcy Court noted that the proposal would require the Trustee to work for one creditor (RDOC) against the interests of another creditor (Learning Annex), and was not in the best interests of the estate.

In sum, the Bankruptcy Court stated that it had "canvassed" all of the issues and did not find the settlement agreement to "fall below the lowest point of reasonableness."  *Id.* at 8; App. R., at 862.  It further stated:  "The Trustee, using her best judgment, has carried her burden of persuading the court that this settlement is in the estate's best interests and should be approved." *Id.*; App. R., at 862

### III.    STANDARD OF REVIEW

The Bankruptcy Court's "approval of a settlement agreement is reviewable only for an abuse of discretion."  *See e.g., In re Kaiser Steel Corp.*, 105 B.R. 971, 976 (D. Colo. 1989) (citing *Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989); *Security Nat'l Bank v. Turner (In re Ocobock)*, 608 F.2d 1358, 1360 (10th Cir. 1979)).  "Under the abuse of discretion standard, the appellate court will not disturb the trial court's decision unless it has a definite and

firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice." *Andrews Davis Law Firm v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 258, 261 (B.A.P. 10th Cir. 2006); *Allen v. Loveridge (In re Log Furniture, Inc.)*, 257 Fed. Appx. 101, 104 (10th Cir. 2007); *Korngold v. Loyd (In re S. Med. Arts Cos.)*, 2006 Bankr. LEXIS 1771 at *11 (B.A.P. 10th Cir. June 5, 2006) ("We must accept the bankruptcy court's determination 'unless that determination either (1) is completely devoid of minimum evidentiary support displaying some cue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo)*, 55 F.3d 552, 555 (10th Cir. 1995)).

The Rich Dad Companies have argued that a different standard of review should be applied to portions of their appeals. As discussed below, those arguments are without merit.

## IV.   ARGUMENT

### A.   The Bankruptcy Court Acted Correctly By Approving the Settlement

Under Federal Rule of Bankruptcy 9019, a trustee has broad discretion to enter into settlements on behalf of the estate, subject to court approval following notice and a hearing, and the bankruptcy court has broad discretion to approve the settlements. Fed. R. Bankr. P. 9019. The bankruptcy court must determine whether the agreement is fair and equitable by "canvass[ing] the issues and see whether the settlement falls below the *lowest point in the range of reasonableness*." *Cousins v. Pereira (In re Cousins)*,  Case No. 09 Civ. 1190 (RJS), 2010 U.S. Dist. LEXIS 136139, at *10 (emphasis added)(quotations omitted); s*ee also In re Hefel*, Case No. 10-02787, 2011 Bankr. LEXIS 3570, at *5 (Bankr. N.D. Iowa Sept. 19, 2011); *In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005); *In re Apex Oil Co.,* 92 BR 847, 867 (Bankr. E.D. Mo. 1998).  In

evaluating a settlement, the bankruptcy court canvasses four factors: (a) probability of success of the litigation on the merits, (b) any potential difficulty in collection of a judgment, (c) the complexity and expense of the litigation, and (d) the interests of creditors in deference to their reasonable views. *In re Bugaighis*, Case No. 03-12112 HRT, 2004 Bankr. LEXIS 2243, at *14 (Bankr. D. Colo. Nov. 5, 2004); *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976-77 (D. Colo. 1989); *Griffin v. Novastar Mortg.* (*In re Ramsey*), 356 B.R. 217, 226 (Bankr. D. Kan. 2006).

The Bankruptcy Court correctly identified the foregoing factors and performed the relevant analysis. It concluded that the Settlement did not "fall below the lowest point in the range of reasonableness" and that the settlement "is in estate's best interests and should be approved." ECF 93, at 8; App. R., at 862. The Bankruptcy Court had ample information before it that justified these conclusions. Its conclusions are not subject to reversal on appeal unless they were "completely devoid of minimum evidentiary support," or were without any "rational relationship to the supportive evidentiary data," or exceeded "the bounds of permissible choice," and it is absurd to suggest that the Bankruptcy Court's decision is subject to reversal under those governing standards. *In re Mama D'Angelo*, 55 F.3d at 555; *In re S. Med. Arts Cos.*, 343 B.R. at 261.

### 1. The Bankruptcy Court Had Ample Information To Support The Conclusion That The SDNY Appeal Has A Low Probability Of Success

The Bankruptcy Court made its decision after reviewing hundreds of pages of exhibits comprising the key legal and factual rulings by the SDNY Court. There is ample support in that record, and in other materials submitted to the Bankruptcy Court, to support the conclusion that that the SDNY Appeal would likely fail. In fact, the Rich Dad Companies by their own conduct have shown that the odds of a successful appeal are remote.

*First*, the Bankruptcy Court had before it statistics demonstrating that a civil appeal to the Second Circuit Court of Appeals is unlikely to be successful.  In 2011, over 90% of civil appeals in the Second Circuit failed to overturn district court judgments.  *See* ECF 84, ¶ 9 (stating "in 2011, only 8.8% of commercial civil appeals were reversed in the Second Circuit"); App. R., at 460.  Such statistics alone point to the reasonableness of an agreement that allows the estate to forego years of litigation in the Second Circuit.

*Second*, as described above, the SDNY Court repeatedly denied the factual and legal arguments that form the basis for the Appeal, both at the pre-trial phase and following two separate trials.  To the extent that the District Court accepted any of Rich Global's arguments, it ordered a new trial on the issue of damages and retried the case in April 2012; a second jury then returned an essentially identical verdict on damages.  As the SDNY Court stated at the conclusion of the second trial, Rich Global had raised its legal arguments prior to both trials, the Court had disposed of those issues, and the rulings would not be changed.  ECF 89-5 at 864-66; App. R., at 713-15.  The SDNY Court's reasoning was compelling.  "When two juries have reached substantially the same result, the possibility of miscarriage of justice is very slight.  Thus, the practice of the courts seems to follow a Supreme Court dictum that 'courts rarely grant a new trial after two verdicts upon the facts in favor of the same party.'"  11 Charles Alan Wright & Arthur R. Miller, Fed. Pract. & Proc. Civ. § 2803 (case citations omitted).

The Bankruptcy Court reviewed each of the key rulings by the SDNY Court and found that the issues had been well-litigated and decided.  The very fact that Rich Global had lost two separate jury trials, and had lost its post-trial motions, was itself sufficient to show the "reasonableness" of the view that the SDNY Appeal was not likely to succeed.

*Third,* the only argument made by the Rich Dad Companies to the Bankruptcy Court – namely, their assertions that the "District Court Judge's findings and conclusions" demonstrate "that the Appeal has a high probability of success" – were misleading.  ECF 86, at ¶ 8; App. R., at 480.  After the SDNY Court rejected all of Rich Global's legal challenges to the Judgment, it addressed a separate motion seeking a stay of enforcement of the judgment.  One factor relevant to a stay is whether an application is likely to succeed on the merits.  In addressing this factor, the District Court explained that "it is sufficient to recognize that Rich Global can demonstrate a substantial case on the merits, even if ultimate success is not a mathematical probability."  ECF 89-6 at 2 (citing *Network Enters. V. APBA Offshore Prods., Inc., No. 01 Civ 11765, 2007 WL 398276, at \*2* (S.D.N.Y. Feb. 5, 2007); *Morgan Guar. Trust Co. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988)); App. R., at 719.  Even if Rich Global had a "substantial case on the merits" under this interpretation, that hardly translates into a "high probability of success," particularly in light of the two jury trials that were conducted and the small rate of reversals in the Second Circuit.

*Fourth*, the actions of the Rich Dad Companies speak louder than their words and belie any suggestion that they have confidence in the SDNY Appeal.  The SDNY Court permitted Rich Global to post a bond equal to only ten percent of the judgment ($2.3 million) after Rich Global represented to the Court that it had $4 million in total assets.  Yet, instead of posting a modest bond and pursuing its supposedly strong appeal, Rich Global promptly filed for bankruptcy and sought refuge by invoking a stay.  Similarly, while RDOC now claims that it will indemnify the estate for "reasonable" fees and costs of an appeal, it did not assist Rich Global in pursuing the appeal after the District Court's ruling despite its purported belief that there is a substantial likelihood of success.  Rather than demonstrating any eagerness to pursue the

allegedly meritorious SDNY Appeal, the Rich Dad Companies and their owners have made clear that they want to stay the appeal until the bankruptcy case is concluded and all the assets have been collected, which would essentially keep the stay in place indefinitely and delay any Second Circuit ruling for several years.  *See* ECF 71, ¶¶ 8-9; App. R., at 431.

Taken together, all of these facts demonstrate that RDOC had a very low probability of success on appeal.  The Bankruptcy Court objectively evaluated the probability of success and did not abuse its discretion in approving the Settlement.

    **2.**      **The Bankruptcy Court Reasonably Concluded That The SDNY Appeal Is Complex And That Pursuing The Appeal Could Be Expensive And Time-Consuming**

The Bankruptcy Court also concluded that the history of the litigation demonstrates that this is a complex case that could potentially take years to litigate, at a substantial cost.  This ruling evokes common sense.  The SDNY Litigation has been ongoing since 2008 and the trial record includes hundreds of pages of briefing and two separate jury trial transcripts.  There is no support for the contention that the Bankruptcy Court abused its discretion in holding that the SDNY Appeal was complex and expensive.  As the Bankruptcy Court noted, the complexity is "obvious" and waiting years to administer the estate at a potentially substantial cost was "not a benefit of the estate, as the purpose of chapter 7 bankruptcy case is to expeditiously administer the estate's assets and close the case."  ECF 93, at 6-7; App. R. at 860-61.

    **3.**      **The Record Supported The Conclusion That The Settlement Is In The Best Interests Of The Estate And Its Legitimate Creditors**

The SDNY Litigation and the SDNY Appeal involve claims against the Rich Global estate; there is no prospect, in pursuing the SDNY Appeal, that Rich Global will obtain any affirmative recovery.  By entering into the settlement, however, the Rich Global estate obtained a

payment of $100,000, which is available to pay administrative expenses of the estate and, if sums are left over, for distribution to creditors (including RDOC if the objections to its claims are overruled). The settlement also allows Learning Annex to proceed with its Cross-Appeal against Cashflow, and if that Cross-Appeal is successful (and if Learning Annex recovers any portion of its Judgment from Cashflow), then the amount owed by Rich Global will be reduced.

The Rich Dad Companies argued that it might benefit them (as opposed to benefiting the estate) if the SDNY Appeal were pursued, but they had the opportunity to pursue the SDNY Appeal at their own expense, and they elected instead to put Rich Global in bankruptcy. The Trustee reasonably concluded that the settlement was in the best interests of the estate and its creditors, and the Bankruptcy Court reasonably upheld that determination. The Rich Dad Companies may wish that the matter had been decided differently, but the fact that they have different opinions does not show that the Trustee acted unreasonably or that the Bankruptcy Court abused its discretion.

## B.    RDOC's Challenges To The Sufficiency Of The Bankruptcy Court's Findings And Conclusions Are Without Merit

There is no merit to RDOC's argument that Rule 7052 required the Bankruptcy Court to enter more detailed findings of fact and conclusions of law regarding the issues relevant to the SDNY Appeal.

Rule 7052 directs a court to "find the facts," in order to "permit a clear understanding of the basis of [its] decision." *Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir. 1965). However, this does not mean that the Bankruptcy Court must enter the same types of findings of fact and conclusions of law that it would have entered if it had conducted its own trial of the SDNY Litigation on the merits, or if it had been charged with the responsibility of deciding the SDNY Appeal on its merits. To the contrary: it is well-settled that in considering a proposed

settlement it is neither necessary nor appropriate for a bankruptcy court to conduct a "mini-trial" of the underlying issues. *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 356 (5th Cir. 1997). The job of the Bankruptcy Court was to "canvass" the issues to the extent necessary to decide whether or not the proposed settlement fell outside the range of reasonableness, and all that was required in the Bankruptcy Court's opinion was "an indication that the Court fairly considered the merits of the compromise, and did not abuse his discretion in approving it." *In re Heissinger Resources, Ltd.*, 67 B.R. 378, 382 (C.D. Ill. 1986).

The Bankruptcy Court's Opinion identifies the legal standards that he applied; describes the materials he reviewed; identifies the conclusions he reached as to each of the relevant factors; and addresses each of the arguments that the Rich Dad Companies made in their objections. Rule 7052 did not require the Bankruptcy Court to do any more than that.

The gist of RDOC's contrary argument on appeal is that the Bankruptcy Court should have written a detailed opinion that independently analyzed and discussed each of the factual and legal issues underlying the SDNY Appeal. However, Rule 9019 did not require the Bankruptcy Court to re-analyze all of the decisions that the SDNY Court made, or to re-try the issues that had been tried in the SDNY Litigation. Nor did it require the Bankruptcy Court to make its own judgments about the SDNY Appeal and to substitute its views for those of the Trustee. The Bankruptcy Court was only called upon to decide whether the settlement fell within a range of reasonableness. The very fact that a highly respected district judge in the New York had already considered (and rejected) the Rich Dad Companies' arguments, in a series of well-reasoned opinions, is by itself ample evidence that the Trustee acted "reasonably" in concluding that the SDNY Appeal should not be pursued.

Furthermore, RDOC's submissions to the Bankruptcy Court did not identify any particular factual findings that the two juries had made and that RDOC thought were suspect, or any particular legal rulings that the SDNY Court had made and that RDOC thought were vulnerable on appeal.  The only "evidence" offered by RDOC in support of its challenge to the settlement was its contention that the SDNY Court had allegedly found the appeal to have merit. The Bankruptcy Court explicitly addressed that contention and reasonably (and correctly) rejected it.  RDOC cannot complain on appeal that the Bankruptcy Court did not address, in its Opinion, other specific points that RDOC itself did not raise.  *See, e.g., United States v. Nicholson*, 721 F.3d 1236, 1246 (10th Cir. 2013); *Mann v. United States*, 204 F.3d 1012, 1017 (10th Cir. 2000) ("Issues and arguments which are not raised below will not ordinarily be considered on appeal."); *Rademacher v. Colorado Ass'n of Soil Conservation Dists. Medical Benefit Plan*, 11 F.3d 1567, 1571 (10th Cir. 1993).

There similarly is no merit in RDOC's suggestion that the Bankruptcy Court should have made its own calculation of the "risk-adjusted value" of the SDNY Appeal and how that "value" compares to the $100,000 payment that the estate will receive under the settlement with Learning Annex.  RDOC Br. at 13-19.  RDOC's argument makes no sense: the SDNY Appeal involved no affirmative claims and had no prospect of generating an affirmative recovery, so there was no affirmative "value" to be assessed and to be compared to the $100,000 benefit that the estate derived from the settlement.  In any event, there is no support in the case law for the proposition that the Bankruptcy Court should have substituted its own judgment, in place of the Trustee's, in deciding whether the SDNY Appeal should be pursued.  The relevant inquiry was whether the settlement was in the range of reasonableness, and the Bankruptcy Court acted correctly in concluding that it was.

Where "facts which will support the judgment can be inferred from the facts specifically found, an appellate court will deem that such inferences were drawn." *In re Brown*, 21 B.R. 701, 703 (B.A.P. 1st Cir. 1982). As discussed above, the Bankruptcy Court did exactly what it was supposed to do – analyze the reasonableness of the Trustee's decision. RDOC's contentions that the Bankruptcy Court did not make sufficient legal or factual findings are completely unfounded. Courts have regularly approved settlements based on opinions that were far less detailed than the Opinion in this case. *See e.g., In re Heissinger Resources Ltd.,* 67 B.R. 378; *Gibson v. Speier (In re Gibson)*, 2011 Bankr. LEXIS 4341 (B.A.P. 9th Cir. Aug. 3, 2011).

**C.     The Trustee Acted Reasonably In Declining The RDOC "Offer to Indemnify" The Estate, And The Bankruptcy Court Did Not Abuse Its Discretion In Upholding That Decision**

Contrary to RDOC's contentions, the Bankruptcy Court also considered RDOC's offer to indemnify the estate for the costs of the Appeal. Despite RDOC's contentions, this "offer" was not meant to allow the SDNY Appeal to be litigated. In fact, as RDOC had previously stated, its position was that the stay of the SDNY Appeal should remain in place during the pendency of the bankruptcy. This was one of the grounds on which Learning Annex criticized the reasonableness of RDOC's proposal. *See* ECF 89; App. R., at 494-512.

RDOC's counter-proposal was plainly not comparable to the settlement that the Trustee negotiated with Learning Annex. Among other things:

- The Learning Annex settlement resolved the SDNY Appeal, while the RDOC counterproposal offered only the prospect of further delay.

- RDOC did not offer to advance the costs of litigation. It offered only an "indemnity" against "reasonable" expenses, putting the estate in the position of potentially having to incur costs in reliance on an indemnity promise of uncertain collectability.

- RDOC never offered to match the $100,000 payment that Learning Annex made, despite being invited to do so.  *See* ECF 89; App. R., at 494-512.

- The Learning Annex settlement permits Learning Annex to proceed with its Cross-Appeal against Rich Global's affiliate.  If that Cross-Appeal is successful, and if it results in a recovery, then the amount owed by Rich Global would be reduced.

The Bankruptcy Court also noted in its opinion that it was "concerned that this proposition puts the Trustee in the position of working for a creditor and equity shareholder of the estate, against the only other creditor."  ECF 93, at 7; App. R. 861.  The Bankruptcy Court had good reason to be concerned about RDOC's proposal given the prior conduct of the Rich Dad Companies.  The Rich Dad Companies and their owners caused Rich Global to transfer its valuable assets (including contract rights) while the SDNY Litigation was pending, thereby rendering Rich Global unable to pay the Judgment.  They elected to file the bankruptcy petition to forestall an audit of Rich Global's finances and to impose a freeze on the collection of the Judgment, and they have attempted to use the bankruptcy process to protect their own interests rather than to serve the interests of the estate and its legitimate creditors.  *See* Brief of Appellee Tracy L. Zubrod, Chapter 7 Trustee at 14 (noting the "convoluted relationships and avarice of RDOC and the Kiyosakis").  The Trustee reasonably rejected RDOC's offer of an indemnity, and the Bankruptcy Court did not abuse its discretion in approving the Trustee's decision.

Finally, RDOC argues that the rejection of RDOC's proposal is a legal issue that must be reviewed *de novo*.  There is no merit to this contention.  The Trustee was not obligated to accept the RDOC counter-proposal as a matter of law.  Nor did the Bankruptcy Court "ignore" the proposal, as the Rich Dad Companies wrongly contend.  The Bankruptcy Court properly

analyzed the facts and issues under Rule 9019 (including the RDOC offer), and reasonably approved the settlement the Trustee reached.

**D.    The Bankruptcy Court Properly Treated The Agreement As A Settlement And Not As A Sale**

The transaction between Learning Annex and the Trustee was properly characterized by the Trustee as a compromise or settlement – not a sale – and thus was correctly analyzed by the Bankruptcy Court under Rule 9019 rather than Section 363.   The Rich Dad Companies' argument to the contrary is disingenuous:  they have repeatedly argued in other scenarios that the SDNY Appeal is not an asset that can be sold.   In fact, they continue to make contradictory statements with regard to this issue in their appeal briefs.

Furthermore, changing the characterization of the agreement would not change the outcome.   A bankruptcy court reviews a "sale" only to determine if the Trustee has exercised a reasonable business judgment.   The Bankruptcy Court's decision that the Trustee acted reasonably is sufficient to support the approval of the agreement no matter what characterization is applied to it.

**1.    The Settlement Does Not Constitute a Sale**

Section 363 applies only to circumstances in which the Trustee seeks to "use, sell, or lease… *property* of the estate." 11 U.S.C. § 363(b) (emphasis added).   The Rich Dad Companies have repeatedly (and correctly) argued that the Appeal is not property of the estate.   *See, e.g.,* ECF 48; App. R., at 363-367; ECF 49; App. R., at 368-371; and ECF 50; App. R., at 372-374.   In fact, Rich Global in its appellate brief argues that it is not an asset that can be sold:  "The legal right of Rich Global to pursue the appeal was not listed as an 'asset' on its schedules and never has the right of appeal ever been considered an asset in bankruptcy."  RG Br. at 7.

While it is settled law that causes of action owned by a debtor are "property" within the meaning of 11 USC § 541, very few courts have addressed whether the defensive right to appeal constitutes "property," and no clear precedent has been developed.  *See, e.g., In re Novak*, 383 B.R. 660, 671 n. 16 (Bankr. W.D. Mich. 2008) (noting that the applicability of § 363 to settlement agreements is dubious, and that "settlements do not always involve causes of action that are property of the estate… [f]or example trustees also settle disputes involving claims against the estate").  The two cases cited by RDOC to now contend that the Appeal is in fact property of the estate are inapposite and based on other states' laws; they are neither authoritative nor informative.  *See In re Mozer*, 302 B.R. 892 (C.D. Cal. 2003) (district court found that defensive appellate rights did constitute property under California law, where a state statute broadly defined property to include all "rights created or granted by statute" and where appellate rights were created by statute); *Owry v. Croft (In re Croft)*, Bankr. Civ. A. No. A-12-CV-535-XR, 2012 WL 6115658 (W.D. Tex. Dec. 10, 2012) (district court found that defensive appellate rights are property under Texas case law which defines law broadly, and recognizes that legal claims are property).   No such Wyoming statute or case law broadly defining "property" is in question here.

Many courts have explicitly declined to equate settlement agreements to sales.  *See, e.g., Hicks, Muse & Co. v. Brandt (In re Healthco, Inc.)* 136 F.3d 45, 49 (1st Cir. 1998) (distinguishing between a settlement which "by its very nature ... resolves adversarial claims prior to their definitive determination by the court" with a "sale" which "effects a 'transfer of the title ... [to] property for consideration'" and, accordingly, refusing to hold that a settlement of a Chapter 7 trustee's fraudulent conveyance action was the equivalent of a "sale" or "lease" as those terms are used in Section 363(m)) (emphasis in original); *In re Neshaminy Office Bldg.*

*Assocs.*, 62 B.R. 798, 805 (E.D. Pa. 1986); *In re Fidelity Am. Fin. Corp.*, 43 B.R. 74, 77 (Bankr. E.D. Penn. 1984).

Here, there was no transfer of assets to Learning Annex, only a compromise between the Trustee and Learning Annex.  Learning Annex did not receive the right to pursue the SDNY Appeal; the Trustee merely agreed to dismiss that appeal.  Moreover, the SDNY Appeal was a $23.6 million *liability* to the estate, not an asset, and the receipt of $100,000 was an amount to agree to resolve a dispute over this liability.  That the estate is receiving any money in exchange for not contesting this liability is an impressive feat.  It was therefore reasonable for the Bankruptcy Court to conclude that the transaction was a settlement and not a sale.

Contrary to RDOC's arguments, the Trustee's statements at the hearing on the Settlement do not change the legal analysis.  The Bankruptcy Court was present for the Trustee's statements, yet still correctly hinged its analysis on the particular facts of this case, which demonstrate that the transaction was clearly a compromise that benefitted both sides.  The Rich Global estate benefits not only by receiving a cash infusion allowing it to begin to wrap up and settle the estate's claims, but it also is spared the long and expensive process of having to litigate the SDNY Appeal in the Second Circuit and potentially another trial.

Moreover, RDOC's statement that "the Settlement Agreement bears the hallmarks of a 'sale' primarily because, at the Settlement Hearing, Trustee admitted that she tried to auction the Second Circuit Appeal, but failing to convince RDOC and Learning Annex that the rules for the auction were fair, the auction did not occur" misstates the facts.  The auction that failed involved a proposed sale of the Kiyosakis' Notes and not the SDNY Appeal.  Furthermore, the auction ultimately failed because the parties could not come to agreement on the procedures of that auction: namely whether the bids would be sealed and whether the Notes would include the

broad and excessive releases requested to indemnify the Kiyosakis and 17 of their related entities from any claims the estate might bring.

RDOC's argument that the Bankruptcy Court erred as a matter of law "when it decided the Settlement Agreement should be analyzed solely under Rule 9019 because 'compromise' and a 'sale' are mutually exclusive" is also incorrect.  RDOC Br., 23.  Nowhere in the Opinion did the Bankruptcy Court conclude that Rule 9019 and Section 363 are mutually exclusive as a matter of law.  The Bankruptcy Court instead held that the proper characterization of this particular transaction was that it was a settlement.  ECF 93, at 4-5 ("The court finds that the actions between the Debtor and Learning Annex is a settlement or compromise, *not a sale,* and proceeds under Fed. R. Bankr. P. 9019."); App. R., at 858-59.

### 2.      Even Under a Section 363 Analysis, the Settlement Agreement Warranted Approval

Even if Section 363 were applicable, the Bankruptcy Court's approval of the settlement would not constitute reversible error.

Section 363(b)(1) of the Bankruptcy Code provides that the trustee, after notice and a hearing, may sell other than in the ordinary course of business, property of the estate.  A bankruptcy trustee "is given ample discretion to administer the estate, including authority to conduct public or private sales of estate property…."  *In re C. W. Mining Co*., 2010 Bankr. LEXIS 407, 29 (Bankr. D. Utah Feb. 10, 2010) (citations and quotations omitted).  While the trustee has a duty to maximize the value obtained from a sale, a reviewing "court will not entertain objections to a trustee's conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the [Bankruptcy] Code."  *In re C. W. Mining Co.*, 2010 Bankr. LEXIS 407, 29-30 (Bankr. D. Utah Feb. 10, 2010) (citing *In re Curlew Valley Associates*, 14 B.R. 506, 513-514 (Bankr. D.

Utah 1981)); *see also Austin Assocs. v. Howison (in Re Murphy)*, 288 B.R. 1, 5 (D. Me. 2002) ("so long as a trustee conducts the affairs of the estate by exercising his business judgment in good faith, upon a reasonable basis, and within the scope of his authority under the Code, he may proceed without interference.") (citations and quotations omitted).   Where it has a reasonable basis, the "trustee's business judgment is to be given great judicial deference" by reviewing courts.   *In re C. W. Mining Co.*, 2010 Bankr. LEXIS 407, 29-30 (Bankr. D. Utah Feb. 10, 2010).

The "reasonable business judgment" standard that governs a sale is no different from the reasonableness decision that governs a settlement.   In addition, a court order that approves a sale is subject to review on appeal only under the same "abuse of discretion" standard that governs an appeal from the approval of a settlement.   *See, e.g., Stephens Industries, Inc. v. McClung,* 789 F.2d 386, 388-389 (6th Cir. 1986) ("the Bankruptcy Appellate Panel for the First Circuit stated that:  'This power falls within the sound discretion of the trial court.'"); *In re Ancor Exploration Company*, 30 Bankr. 802, 808 (N.D. Okla. 1983) ("the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)"); *United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 23, 2003).

Here, it is clear that the Settlement Agreement reflects sound business judgment.   As the Bankruptcy Court indicated in its opinion, the Settlement will save the estate from the burden of pursuing the costly and lengthy appeal which is unlikely to succeed on its merits, and it will infuse the estate with $100,000, increasing funds available for the payment of administrative expenses and for distribution to creditors and allow the proceedings to move forward at a more rapid pace.

**V.      The Settlement Does Not Violate Public Policy**

Rich Global alleges that the settlement is contrary to public policy because certain kinds of claims cannot be sold or assigned.   RG Br., 8-10.   However, the agreement involved a settlement (not a sale), and there is no public policy against the settlement of litigation.   To the contrary, "Bankruptcy policy [is] that settlements should be favored."   *In re Kaiser Steel Corp.*, 105 B.R. at 978; *Korngold v. Loyd (In re S. Med. Arts Cos.)*, 2006 Bankr. LEXIS 1771 at *11.

Furthermore, Rich Global has not identified any case law suggesting that a "sale" would be contrary to public policy in this particular litigation.   Its challenges on this ground therefore should be rejected.

## VI.      CONCLUSION

For the foregoing reasons, Learning Annex respectfully requests that the Court affirm the Order of the Bankruptcy Court and dismiss the appeals filed by the Rich Dad Companies, and that the Court grant such other and further relief as may be proper.

Dated this 27th day of September, 2013

/s/ James R. Belcher
James R. Belcher
Wyoming Bar # 5-2556
Crowley Fleck PLLP
237 Storey Boulevard, Ste. 110
Cheyenne, WY  82009
Attorneys for Learning Annex

## CERTIFICATE OF SERVICE

I hereby certify that on the day the BRIEF ON APPEAL OF APPELLEES LEARNING ANNEX HOLDINGS, LLC, LEARNING ANNEX, LLC, AND LEARNING ANNEX, L.P. was filed, a copy was served by the Court's CM/ECF electronic service to counsel for all other parties.

s/_____
James R. Belcher