**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

Civil Action No. 13-cv-00167-ABJ

IN RE RICH GLOBAL, LLC,

      Debtor.

---

RICH DAD OPERATING COMPANY, LLC, and RICH GLOBAL, LLC

      Appellants,

v.

TRACY L. ZUBROD, Chapter 7 Trustee, LEARNING ANNEX
HOLDINGS, LLC, LEARNING ANNEX, LLC, and LEARNING ANNEX, L.P

      Appellees.

---

**REPLY BRIEF OF APPELLANT RICH DAD OPERATING COMPANY, LLC**

## I.    TABLE OF CONTENTS

I.      TABLE OF CONTENTS .................................................................................................. ii

II.     TABLE OF AUTHORITIES ......................................................................................... iii

III.    INTRODUCTION ........................................................................................................ 1

IV.     STATEMENT OF THE CASE ..................................................................................... 2

    1.  RDOC is not asking for a mini-trial or for mathematical exactitude ..................... 2

    2.  Debtor's decision to file for bankruptcy is irrelevant to the merits of the Second
        Circuit Appeal. .......................................................................................................... 3

    3.  RDOC is not attempting to stay the Second Circuit Appeal until Debtor's
        bankruptcy case concludes. ...................................................................................... 3

    4.  It is not accurate to state that there were "two trials" in the Southern District
        Litigation that considered and decided all issues on appeal. ................................... 4

    5.  There is no legal or factual reason to doubt that RDOC will pay for the entire cost
        of litigating the Second Circuit Appeal in a timely, honest, and straight-forward
        fashion with no attempt to control Trustee and make her its "hired gun" against
        Learning Annex. ...................................................................................................... 4

V.      ARGUMENT ................................................................................................................ 5

  A.  **The Settlement Agreement is not reasonable or in the best interests of the Estate
      because it does not fall within the reasonable range of possible litigation outcomes**.
      ................................................................................................................................... 5

  B.  **The bankruptcy court abused its discretion in approving the Settlement
      Agreement** ................................................................................................................. 9

    1.  The Settlement Order does not canvass Debtor's probable success on the merits
        of the Second Circuit Appeal. ................................................................................ 10

    2.  The Settlement Order fails to canvas the complexity and costs of the Second
        Circuit Appeal. ....................................................................................................... 12

    3.  The Settlement Order fails to canvas the interests of creditors or the public. ...... 13

  C.  **The Settlement Order does not comply with Fed. R. Bankr. P. 7052.** .................... 14

  D.  **The bankruptcy court's failure to analyze the Settlement Agreement as both a
      settlement and a sale was legal and reversible error.** ............................................... 17

  E.  **The Settlement Order erred, as a matter of law, when it refused to consider
      RDOC's Indemnification Offer.** ............................................................................ 19

    1.  Learning Annex's challenges to the Indemnification Offer are supported by
        neither fact nor law. .............................................................................................. 19

    2.  The Settlement Order either erred as a matter of law, fell short of Fed. R. Bankr.
        P. 7052 as a matter of law, or abused its discretion by dismissing because it
        dismissed the Indemnification Offer with no explanation or factual support. .... 20

    3.  Trustee's belief that the Indemnification Offer would make her RDOC's "hired
        gun" is based upon an inaccurate perception of the Indemnification Offer. ....... 21

    4.  Trustee's remaining arguments against accepting the Indemnification Offer are
        best addressed through further research and objective evaluation on remand. ... 22

VI.     CONCLUSION ........................................................................................................... 23

## II.   TABLE OF AUTHORITIES

**Cases**

*Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414 (S.D.N.Y. 1993) ................................................................................................. 8

*Featherstone v. Barash*, 345 F.2d 246 (10th Cir. 1965) ............................................................. 14

*Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45 (1st Cir. 1998) ................ 6

*In re Bakalis*, 220 B.R. 525 (Bankr. E.D.N.Y. 1998) ................................................................. 18

*In re Energy Co-op, Inc.*, 886 F.2d 921 (7th Cir. 1989) ..................................................... 7, 8, 10

*In re Gordon*, 484 B.R. 811 (Bankr. N.D. Okla. 2013) ................................................................ 9

*In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) ................................................................. 21

*In re Marshall*, 33 B.R. 42 (Bankr. D. Conn. 1989) .................................................................. 20

*In re Psychrometric Sys., Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) ............................... 18

*In re Rimsat, Ltd.*, 224 B.R. 685 (Bankr. N.D. Ind. 1997) ........................................................ 7, 8

*In re The Hermitage*, 66 B.R. 71 (Bankr. D. Colo. 1986) ............................................................ 6

*Jeffery v. Desmond*, 70 F.3d 183 (1st Cir. 1995) ......................................................................... 6

*Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971 (D.Colo. 1989) ................ 9

*Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020 (10th Cir. BAP 1997) ..................................................................................................................................... 14

*LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159 (7th Cir. 1987) ......... 6, 9

*Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating, LLC)*, 478 F.3d 452 (2d Cir. 2007) .................................................................................................... 6

*O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58 (Bankr. E.D.N.Y. 2009) .................................. 6

*Official Committee of Unsecured Creditors v. W. Pac. Airlines, Inc. (In re W. Pac Airlines, Inc.)*, 219 B.R. 575 (D. Colo. 1998) .............................................................................................. 6, 9

*Reiss v. Hagmann*, 881 F.2d 890 (10th Cir. 1989) ........................................................... 9, 12, 20

*Ungaretti & Harris, LLP v. Steinberg (In re Resource Tech. Corp.)*, 356 B.R. 435 (Bankr. N.D. Ill. 2006) ................................................................................................................................. 6

*United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984) ..................... 9

*Woods Constr. Co. v. Pool Constr. Co.*, 314 F.2d 405 (10th Cir. 1963) ..................................... 14

**Statutes**

11 U.S.C. § 327 (2012) ................................................................................................................ 5

11 U.S.C. § 328 (2012) ................................................................................................................ 5

11 U.S.C. § 363 (2012) .......................................................................................................... 17, 18

**Other Authorities**

*2012 Judicial Business of the U.S. Courts*, U.S. Courts of Appeals, available at http://www.uscourts.gov/Statistics/JudicialBusiness/2012/us-courts-of-appeals.aspx (last accessed Oct. 11, 2013) ...................................................................................................... 7

*Black's Law Dictionary* (9th ed. 2009) ........................................................................................ 6

**Rules**

Fed. R. Bankr. P 7052 ........................................................................................................ passim

Fed. R. Bankr. P. 9019 ....................................................................................................... passim

**Treatises**

Michael E. and Jane B. Tigar, *Federal Appeals Jurisdiction and Practice* § 5:3 (3d ed.) (database updated Nov. 2012) .............................................................................................................. 8

### III.   INTRODUCTION

The basic questions Rich Dad Operating Company, LLC ("RDOC") poses in this appeal are simple:  Under what circumstances may a chapter 7 bankruptcy trustee settle the appeal of a $24 million judgment against the estate for just $100,000?  And, more importantly, are those circumstances present here?

As outlined in RDOC's Opening Brief, and supported herein, there are circumstances under which a trustee can settle litigation for just .45% of its potential value to the estate, <u>but those circumstances are not present here</u>.  In finding to the contrary, the bankruptcy court abused its discretion by relying upon numerous legal errors, taking no evidence, and relying upon facts[1] and analysis completely unsupported by the record before it.  Furthermore, the Settlement Order fails to provide the factual and legal description necessary for meaningful review pursuant to Fed. R. Bankr. P. 7052.

The "Settlement Agreement" between Chapter 7 Trustee Tracy L. Zubrod ("Trustee") and Learning Annex Holdings, LLC, Learning Annex, LLC, and Learning Annex, L.P. (collectively "Learning Annex"), which settles for just $100,000 the "Second Circuit Appeal" of Learning Annex's $24 million judgment against Debtor Rich Global, LLC ("Debtor"), is far from routine.  It is an extraordinarily low settlement of the largest claim against the bankruptcy estate (the "Estate") and, as such, the Settlement Agreement is only fair and equitable to the

---

[1] RDOC respectfully requests that the present Appeal be decided by facts in the record rather than Learning Annex's constant stream of untried, unproven, and untrue accusations and unfounded personal attacks upon Robert and Kim Kiyosaki (collectively the "Kiyosakis").  Although RDOC is tempted to defend these accusations throughout this Brief, these baseless allegations are irrelevant to the issues before this Court.  Moreover, the Southern District, which dealt with Debtor and Learning Annex through several years of hard fought litigation, responded to Learning Annex's similar accusations by dubbing Learning Annex's demand for an "extensive list of protections" to be part of any stay of execution "redundant and unnecessary" as well as "inappropriate because it ignores corporate formalities."  (App. R. at 722.)

Estate if extraordinary circumstances are present.  Those circumstances are not present because the Estate does not require quick money, no creditor will benefit from a fast infusion of $100,000, the litigation to be settled is far from hopeless, the litigation to be settled will not take long to conclude, and the litigation to be settled will cost the Estate nothing to pursue.

In some situations, a bird in the hand may very well be better than two in the bush. (Trustee Br. at 11.)  But from the Estate's perspective, $100,000 the Estate does not require, and its creditors do not need, is not better than even a small chance of eliminating a $24 million liability.  Thus, it is better for the Estate to forgo this $100,000 in order to preserve its ability to eliminate the Learning Annex Claim.  RDOC's legal research has found not a single case that approves a settlement as extraordinarily low as the Settlement Agreement in circumstances such as these.  Lacking any good reason to hurry up and settle for essentially nothing, Trustee should not be allowed to do so.

## IV.        STATEMENT OF THE CASE

For the sake of clarity, RDOC believes it is necessary to correct a few misunderstandings reflected in the Appellee Briefs prior to reaching legal argument.

### 1.   RDOC is not asking for a mini-trial or for mathematical exactitude

At no point in its Opening Brief did RDOC ask the bankruptcy court to conduct a mini-trial or to calculate, with mathematical precision, the probability of Debtor's success in the Second Circuit Appeal.  (*Cf.* LA Br. at 2, Trustee Br. at 3-6.)  RDOC merely asks that the bankruptcy court "generally" determine the range of reasonableness into which the Settlement Agreement must fall, decide what the $100,000 Learning Annex payments represents (the approximate cost of litigation or the value of the Second Circuit Appeal to the Estate), discuss the likely cost and probable success of all issues, not just factual issues, on appeal, and specify why RDOC's offer to indemnify Trustee for the expense of litigating the Second Circuit Appeal

2

(the "Indemnification Offer") is so worrisome that it can be excluded, entirely, from analysis of the cost and complexity of litigating the Second Circuit Appeal.  (RDOC Op. Br. at 12, 15-17, 18.)  The level of detail RDOC would find appropriate is essentially provided in its own analysis of whether the Settlement Agreement is reasonable recited herein.  (*See* Argument *infra* 5-9.)

> 2. <u>Debtor's decision to file for bankruptcy is irrelevant to the merits of the Second Circuit Appeal.</u>

The Learning Annex Brief erroneously states:  "The Court also observed that the objectors actions belied their statements of confidence in the merits of the SDNY Appeal, since at the time of the bankruptcy filing Rich Global had enough assets to post the $2.3 million supersedeas bond required by the SDNY Court, yet chose to file for bankruptcy rather than pursue the SDNY Appeal."  (LA Br. at 14.)  While the Settlement Order does note that Debtor filed for Chapter 7 protection rather than pledge a supersedeas bond, the Settlement Order does not connect Debtor's bankruptcy any alleged lack of confidence in the Second Circuit Appeal.  (App. R. at 855-56, 860 n.9.)

> 3. <u>RDOC is not attempting to stay the Second Circuit Appeal until Debtor's bankruptcy case concludes.</u>

RDOC has never represented that it wants to keep the Second Circuit Appeal on ice until Debtor's bankruptcy case concludes.  It is also illogical and untrue to assign such motivation to RDOC at the present time because  RDOC has offered to pay Trustee to unstay the Appeal and litigate it to conclusion.  Moreover, if Learning Annex wants to reinitiate its Cashflow Cross Appeal, it can file a motion for relief from stay in the bankruptcy court.  The Settlement Agreement is not a necessary predicate to the Cashflow Cross Appeal.

4.   It is not accurate to state that there were "two trials" in the Southern District Litigation that considered and decided all issues on appeal.

The Learning Annex Brief correctly notes that once the Southern District decided that Learning Annex had a cognizable claim for *quantum meriut*, the case went to a jury that found liability and assessed damages.  When the Southern District decided this jury had insufficient evidence from which to assess the damages it awarded, the Southern District ordered a second trial *for damages only*.  (LA Br. at 4-5.)

However, no jury ever decided the legal issue on appeal, *i.e.*, whether a party that is cut out of a business deal after entering a memorandum of understanding that it has no expectation of being included in a future business deal states a cognizable claim for *quantim meriut* in the Second Circuit.  Thus, the fact that there were two trials is not relevant to the strength of this legal issue on appeal.  [*Cf.* Trustee Br. at 8 (stating that two trials relevant to merit of legal issue on appeal).]  The legal issue was novel in the Second Circuit before the first trial, before the second trial on damages, and when Debtor filed its notice of appeal to the Second Circuit.  The fact that a single judge in the Southern District did not change her mind on the legal issue between trials on damages is not highly relevant to whether a panel of different judges will disagree on appeal as to Learning Annex's legal entitlement to *quantum meriut* relief.

5.   There is no legal or factual reason to doubt that RDOC will pay for the entire cost of litigating the Second Circuit Appeal in a timely, honest, and straight-forward fashion with no attempt to control Trustee and make her its "hired gun" against Learning Annex.

The Learning Annex Brief states that RDOC's offer to "indemnify" Trustee "against 'reasonable' expenses" puts "the estate in the position of potentially having to incur costs in reliance on an indemnity promise of uncertain collectability."  (LA Br. at 24.)  This statement ignores the fact that counsel for RDOC carefully explained the Indemnification Offer, and attested to its validity, on the record during oral argument before the bankruptcy court.  (App. R.

4

at 1056:8-1057:9.)    As counsel for RDOC explained, Learning Annex's portrayal of the Indemnification Offer as one that allows RDOC to pay only the legal expenses RDOC deems reasonable, and hence to control Trustee with the threat of leaving her with legal bills the Estate cannot pay, reflects a lack of familiarity with basic bankruptcy procedure.   In bankruptcy, a Trustee needs court permission to retain outside counsel to litigate cases such as the Second Circuit Appeal.   11 U.S.C. § 327(a), (e) (2012).   Such counsel is retained with the express understanding that its fees will only be paid once the bankruptcy court approves of them as "reasonable" and that any fees not found to be "reasonable" cannot be charged to the trustee or the estate.   11 U.S.C. § 328(a) (2012).   Thus, as counsel for RDOC has attested on the record before the bankruptcy court, RDOC's offer to "indemnify" Trustee for the "reasonable" fees incurred in litigating the Second Circuit Appeal was not an offer to indemnify Trustee for only those fees *RDOC* deems "reasonable".   It was an offer to indemnify Trustee for all fees that *the bankruptcy court* deems "reasonable" and, hence, for all fees that are due.[2]

## V.    ARGUMENT

### A. The Settlement Agreement is not reasonable or in the best interests of the Estate because it does not fall within the reasonable range of possible litigation outcomes.

The first question of this appeal is whether it is reasonable to hastily settle the Second Circuit Appeal – the core of which is a clean legal issue capable of eliminating the entire $24 million Learning Annex Claim with no need for remand proceedings – so that the Estate can have access to a quick $100,000.

Such an arrangement is not reasonable and the Appellee Briefs fail to prove otherwise.

---

[2] Because no fees will be due until Second Circuit counsel files a fee application, discussion of "advancing the costs of litigation" is premature and was not included in RDOC's initial offer to indemnify Trustee.

5

Case law could not be clearer:  in order to be reasonable and fair to the estate and its creditors, the terms[3] of a settlement agreement must reflect a comparison of the likely costs of litigating, the benefits of winning, and the consequences and odds of losing a particular cause of action.  *See, e.g., LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 161 (7th Cir. 1987) ("Central to the bankruptcy judge's determination is a comparison of the settlement's terms with the litigation's probable costs and probable benefits."); *Official Committee of Unsecured Creditors v. W. Pac. Airlines, Inc. (In re W. Pac Airlines, Inc.)*, 219 B.R. 575, 579-80 (D. Colo. 1998) ("The overall purpose is to weigh 'carefully ... the value of the settled claim against the value to the estate by the settlement.'") (quoting *In re The Hermitage*, 66 B.R. 71, 72 (Bankr. D. Colo. 1986)); *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 (1st Cir. 1998) ("The bankruptcy court essentially is expected to 'assess [] and balance the value of the claim[s] … being compromised against the value … of the compromise proposal.'") (alteration in original) (quoting *Jeffery v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)).  Case law does support that this analysis essentially measures the "balance between the benefits of a successful outcome in the litigation discounted to reflect the likelihood of that outcome, and the benefits of the proposed settlement." *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 71 (Bankr. E.D.N.Y. 2009) (citing *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating, LLC),* 478 F.3d 452, 462 (2d Cir. 2007)). This comparison creates the "reasonable" range of litigation possibilities into which a settlement agreement must fall. *Ungaretti & Harris, LLP v. Steinberg (In re Resource Tech. Corp.)*, 356 B.R. 435 (Bankr. N.D. Ill. 2006) (stating that a bankruptcy court must estimate both the value of proposed

---

[3] Trustee argues that "terms" in this sentence cannot mean "price" because "price" is not a "term" according to *Black's Law Dictionary*.  (Trustee Br. at 5.)  This is not correct.  According to *Black's Law Dictionary*, "price" is a "material term" of a contract.  *Black's Law Dictionary* at 1068 (9th ed. 2009).

settlement and likely outcome of litigating the claims proposed to be settled to determine whether terms of proposed compromise fall within reasonable range of litigation possibilities); *In re Rimsat, Ltd.*, 224 B.R. 685, 688 (Bankr. N.D. Ind. 1997) ("Thus, the consideration being given in connection with the settlement must be 'reasonably equivalent' to the value of the disputed claim, by 'fall[ing] within the reasonable range of litigation possibilities.'") (quoting *In re Energy Co-op, Inc.*, 886 F.2d 921, 929 (7th Cir. 1989)).

The Settlement Agreement's terms are:  the Second Circuit Appeal is settled for $100,000, the Second Circuit Appeal is dismissed, and the $24 million Learning Annex Claim is allowed at full value.

The probable costs of litigating the Second Circuit Appeal are $0 because there is no rational reason to doubt that RDOC will not keep its promise to pay all legal fees the bankruptcy court allows as "reasonable" as soon as they are due.  (*See* Statement of the Case *supra* at 4-5.)

The consequence of losing the Second Circuit Appeal will be that the Estate will not get $100,000 from Learning Annex and will have to remain open while the Appeal is briefed, argued, and decided.  This delay will not be the "years" to which the Settlement Order and Appellee Briefs elude.  In 2012, the average duration of a circuit court appeal fell from 11 to 9.8 months.[4]  Otherwise, if the Estate loses the Second Circuit Appeal, it will be in materially the same position it is in right now.

One possible benefit of litigating the Second Circuit Appeal is completely eliminating the $24 million Learning Annex Claim with a favorable ruling on Debtor's assertion that Learning Annex, as a matter of law, has no claim for *quantum meriut* for being excluded from a business

---

[4] *See 2012 Judicial Business of the U.S. Courts*, *U.S. Courts of Appeals*, available at http://www.uscourts.gov/Statistics/JudicialBusiness/2012/us-courts-of-appeals.aspx                (last accessed Oct. 11, 2013).

relationship after entering a memorandum of understanding that Learning Annex had no expectation of being included in a future business relationship with Debtor.

The probability of this result cannot be predicted with exactitude, but is probably higher than 8.8% because the issue is purely legal, and novel, in the Second Circuit and, by definition, the appeal of a novel legal issue has a greater probability of success than the appeal of purely factual or previously (and unfavorably) decided legal issues. *See* Michael E. and Jane B. Tigar, *Federal Appeals Jurisdiction and Practice* § 5:3 (3d ed.) (database updated Nov. 2012). The Southern District did not find this factor persuasive enough to hold that the Second Circuit Appeal has a mathematical probability of success. But it did find this reasoning persuasive enough to state the Second Circuit Appeal is a "substantial case on the merits" and grant Debtor a stay of execution with only a partial supersedeas bond. (App. R. at 720-24.) It is therefore logical to conclude that the Second Circuit Appeal has an average or above average probability of success which, in the Second Circuit, means it is 8.8% or more likely to succeed.

From the above factors, it is apparent that the terms of the Settlement Agreement are not reasonable and do not match, even approximately, the cost benefit analysis case law requires. In its legal research, RDOC has not found a single case that allows the nuisance settlement of a meritorious appeal when an estate is not in desperate need of money, no creditor needs a quick payout from the estate, litigating the appeal will not cost the estate a penny, and there is no other factor that makes the cost of waiting high and the benefit of winning low.[5]

---

[5] *See, e.g.*, *In re Energy Coop., Inc.*, 886 F.2d at 929 (allowing low settlement because "Trustee faced a small chance of a large recovery and a large chance of losing all the money and the estate and thus being unable to make a distribution to the general creditors"); *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 428 (S.D.N.Y. 1993) *aff'd*, 17 F.3d 600 (2d Cir. 1994) (approving settlement agreement for litigation that would take estate 5 years to litigate at $300,000 per month); *In re Rimsat, Ltd.*, 224 B.R. at 697 (approving settlement because most likely result of litigation "would be to delay the

**B.  The bankruptcy court abused its discretion in approving the Settlement Agreement**

As stated in RDOC's Opening Brief:  Rule 9019 gives bankruptcy trustees significant discretion to settle a debtor's litigation.  *In re Gordon*, 484 B.R. 811, 817 (Bankr. N.D. Okla. 2013).  However, a bankruptcy court must do more than "rubber stamp" a trustee's proposed settlement.  *In re W. Pac. Airlines, Inc.*, 219 B.R. at 580 (quoting *In re Am. Reserve Corp.),* 841 F.2d at 162.  Instead, a bankruptcy must canvass the following four factors in order to decide whether the trustee has proposed a settlement agreement that is "fair and equitable and in the best interests of the estate":

> (1) the probable success of the litigation on the merits; (2) any potential difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views.

*Id.* at 579-80 (quoting *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 105 B.R. 971, 976 (D.Colo. 1989)).

As also stated in RDOC's Opening Brief, "canvassing" the four factors above does not require a bankruptcy court to conduct a mini-trial or write a treatise to evaluate the litigation a trustee wishes to settle.  However, a "bankruptcy court's decision to approve the settlement . . . must be an informed one based upon an objective evaluation of developed facts."  *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).   "'An approval of a compromise, absent a sufficient factual foundation, inherently constitutes an abuse of discretion.'"  *Id.* (quoting and altering *United States v. AWECO, Inc. (In re AWECO, Inc.),* 725 F.2d 293, 299 (5th Cir. 1984)).  Committing legal errors and "failing to do legal research" regarding claims in litigation to be settled also constitute abuses of discretion.  *Id.*  (finding bankruptcy court abused its discretion

---

administration of the case and deplete (if not exhaust) the resources that are available for distribution").

when it failed "to do any legal research or made any attempt to properly separate the issues and

evaluate the facts"). As shown below  the Appellee Briefs only serve to highlight the

Settlement Order's failure to properly canvass the required elements for approving a settlement.

1. <u>The Settlement Order does not canvass Debtor's probable success on the merits of the Second Circuit Appeal.</u>

RDOC has always admitted that the Settlement Order need not contain rigid

mathematical analysis of the probability of success on appeal. *See In re Energy Co-op, Inc.*, 886

F.2d at 928 (stating that a settlement agreement need not read like an accountant's balance

sheet); (RDOC Op. Br. at 15-17.) In this case, the Settlement Order's problem is that it fails to

describe even a ballpark approximation of the probability of success on appeal and its final

result, settling for .45% of the Second Circuit Appeal's maximum value, is not rationally related

to the record.

The Settlement Order canvasses the Second Circuit Appeal's probability of success as

follows: (1) the court reviewed pleadings from the Southern District; (2) the case was

"extensively litigated" and "litigated well" in the Southern District, and (3) the Southern

District's description of the legal issue on appeal when granting Debtor a stay of execution is

"out of context" to Trustee's Motion to Settle, (4) Trustee asserts the probability of success on

appeal is low because the Second Circuit reverses just 8.8% of the case before it, and (5) there is

no assurance the bankruptcy estate will ultimately prevail in the Second Circuit Appeal. (App.

R. at 859-60.)

Outside of lacking the specificity Fed. R. Bankr. P. 7052 requires, (*see* Argument *infra* §

14-17), this "canvass" of the probability of success on the merits fails to satisfy the requirements

for approving an extraordinarily low settlement under Fed. R. Bankr. P. 9019. Specifically, the

Settlement Order fails to remotely quantify the probability of success should the Estate pursue

the Second Circuit Appeal.

First, the Settlement Order, insofar as it might have adopted Learning Annex and Trustee's reliance upon the average rate of success for civil appeals in the Second Circuit, is not rationally related to an 8.8% probability of success: $100,000 is 0.45% of the Learning Annex Claim, *i.e.*, not even close to 8.8%. The Settlement Order never finds that the Second Circuit Appeal has virtually no probability of success.

Second, the Settlement Order falls short of canvassing the probability of success on appeal because using the average reversal rate in a given circuit as the controlling measure of an appeal's probability of success fails to do what case law specifically requires: assess the merits of a particular appeal based upon the facts and law presented in that particular appeal. Applying only the average rate of success in the Second Circuit means that all appeals in the Second Circuit are unlikely to succeed and, therefore, all appeals in the Second Circuit should be settled for nuisance value or less. Moreover, as a matter of law, litigation need not be more than 50% likely to succeed in order to net more than a nuisance value settlement.

Finally, the bankruptcy court's conclusion that further remand proceedings would be necessary for the Estate to recover any value from the Second Circuit Appeal, (R. App. at 860-61), proves that the bankruptcy court mistakenly evaluated the potential success of *factual* and *procedural* issues – such as whether the second jury had sufficient evidence or applied the correct damages calculation to award Learning Annex a full 1/3 of Debtor's revenues as damages. Should Second Circuit decide as a matter of law that Learning Annex has no *quantum meriut* claim, the Learning Annex Claim will be eliminated with no further remand proceedings. Thus, the bankruptcy court failed to address the *legal* issue RDOC endeavored to bring to its

attention,[6] and the Settlement Order's conclusions regarding the Second Circuit Appeal's probability of success are not rationally related to the record before the court because they are based upon an analysis of some, but not all, claims included within the Second Circuit Appeal.

> 2. <u>The Settlement Order fails to canvas the complexity and costs of the Second Circuit Appeal.</u>

Similarly, the Settlement Order fails to canvas the complexity and costs of the Second Circuit Appeal for a number of reasons, including: basing its decision to exclude RDOC's offer to indemnify Trustee for the costs of litigation upon a "concern" rather than facts in the record; expressing a "concern" not supported by any facts in the record and the procedure of attorney compensation in bankruptcy; and assuming that the Second Circuit Appeal must go through remand proceedings prior to netting any benefit to the Estate in spite of the record clearly demonstrating that no remand will be necessary if the Second Circuit Appeal succeeds on a pure issue of law.

First and foremost, the Settlement Order should assess the "cost" of litigating the Second Circuit Appeal as "zero" rather than "high."  Canvassing this issue required the bankruptcy court to make an "informed" decision "based on an objective evaluation of developed facts." *Reiss*, 881 F.2d at 892.  The bankruptcy court's "concern" regarding what might result if Trustee accepts the Indemnification Offer is not an objective evaluation of developed facts because it completely ignores RDOC's description of the Indemnification Offer without any legal or factual explanation for the exclusion.

Second, the bankruptcy court's conclusion that the Second Circuit Appeal "could potentially take years to litigate at a substantial cost", (App. R. at 861), is not an informed

---

[6] Learning Annex claims RDOC failed to bring the existence of a legal issue on appeal to the bankruptcy court's attention.  This is not accurate.  RDOC specifically argued that its potential success on appeal was better than the average appeal because, as the Southern District itself noted, the Second Circuit Appeal presents a novel issue of law.

decision based upon an objective evaluation of developed facts because it rests upon the incorrect assumption that remand will be necessary.  Learning Annex fails to assert in its Brief that the Second Circuit Appeal will require remand proceedings – because it is undeniable from the Record on Appeal that this assumption is incorrect.  Moreover, the fact that trial court proceedings were long and complex, and required two trials to properly assess damages, does not mean that any appeal, much less one of a purely legal issue, will be anything other than routine.  Thus, it was not logical for "the Bankruptcy Court [to] evaluate the facts as the juries did and find that Rich Global would not be successful" on appeal."  (Trustee Br. at 8.)

3.   The Settlement Order fails to canvas the interests of creditors or the public.

Finally, the Settlement Order fails to canvas the interests of creditors because it fails, entirely, to note that no creditor has any interest whatsoever in the Estate receiving a quick $100,000.  Learning Annex will have to pay $100,000 into the Estate in order to receive a distribution from the $100,000 and an allowed claim of $24 million.  Alternatively, RDOC is willing to pay for the cost of litigating the Second Circuit Appeal in order to prevent Trustee from bringing the $100,000 into the Estate.  Moreover, the Settlement Order fails to note that should Learning Annex succeed on the Second Circuit Appeal, it will be in the same position that it presently enjoys – only $100,000 richer.  So, unless litigating the Second Circuit Appeal costs Learning Annex more than $100,000, refusing to approve the Settlement Agreement will leave Learning Annex in an equivalent or better position.

On this topic, the Learning Annex Brief incorrectly asserts that its ability to litigate the Cash Flow Cross Appeal, which if successful could benefit the Estate by reducing the Learning Annex Claim against Debtor, is somehow contingent on the Settlement Agreement.  (*See* Statement of the Case *supra* at 3.)

Finally, neither Trustee nor Learning Annex contest that while public policy generally favors the expedient administration of bankruptcy estates, and the settlement of litigation, this policy does not apply when the only reason to settle rather than pursue litigation is to save time and effort. Bankruptcy trustees are encouraged to administer estates efficiently – but not in a manner that allows a trustee to avoid administering a complex estate by simply settling valuable litigation at nuisance value.

**C. The Settlement Order does not comply with Fed. R. Bankr. P. 7052.**

Despite arguments to the contrary, the Settlement Order fails to satisfy Rule 7052. The Settlement Order is not based upon factual findings, refers to suspicions upon issues where it should have addressed evidence and facts, and overall is impossible to review without reference to the Record on Appeal for the legal arguments and factual analysis upon which the Final Order might, but might not, rely.

Under Fed. R. Bankr. P 7052, a bankruptcy court's "[f]indings may be sufficient if they permit a clear understanding of the basis of decision of the trial court, irrespective of their mere form or arrangement." *Featherstone v. Barash*, 345 F.2d 246, 249 (10th Cir. 1965). A final order fails to satisfy Rule 7052 when an appellate court has to "read the transcript of the evidence in order to determine the essential facts before applying the law of the case." *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1023 (10th Cir. BAP 1997) (citing *Woods Constr. Co. v. Pool Constr. Co*., 314 F.2d 405, 407 (10th Cir. 1963)).

The Appellee Briefs fail to establish that the Settlement Order meets the requirements of Rule 7052.

First, it is not possible to determine whether the Settlement Order relies on Trustee's 8.8% average success as a reasonable measure of Debtor's probability of success on appeal. In fact, the Settlement Order never even says that the probability of success on appeal is "low",

"non-existent," "minimal", "negligible", or any other descriptive term that would justify settling

the Second Circuit Appeal for 0.45% of its potential value to the Estate.  The Settlement Order

simply states:

> This court finds that the District Court, through the jury trials and numerous
> motions, litigated this case well. Its statements regarding the likelihood of success
> on appeal were taken out of context by Rich Dad and the Kiyosakis in an attempt
> to make the statements applicable to the circumstances before this court. The
> court rejects their argument.

(App. R. at 860.)  The Settlement Order then moves onto address different considerations –

leaving no option but review the Record on Appeal for the arguments made by Trustee and

Learning Annex upon which the bankruptcy court may have relied and the descriptions of the

probability of success on appeal with which the bankruptcy court may have agreed.

Second, it is not possible to decide whether the Settlement Order's "concern" regarding

RDOC's Indemnification Offer is reasonable because there are no factual findings regarding

what, even in a general sense, the bankruptcy court understood the Indemnification Offer to be.

Without specific factual findings what the Indemnification Offer in this case actually included, it

is not possible to review whether it should have been entirely excluded from the Settlement

Order's analysis of the cost and complexity of litigating the Second Circuit Appeal.  Trustee in

particular, in her Brief to this Court, relies upon findings and analysis in the record, but not in the

Settlement Order, to justify its complete exclusion from any consideration or weight.  (Trustee

Br. at 21-22.)

Third, the Settlement Order does not explain why the Southern District's assessment of

Debtor's "substantial case on the merits" was "out of context" when assessing the strength of the

Debtor's position in Second Circuit Appeal for purposes of Rule 9019.  The Settlement Order

states that the Southern District's analysis is "out of context".  But the Settlement Order does not

explain *why*.  As a result, is difficult to review without referring to the Record on Appeal and

guessing as to an explanation of why the Settlement Order considered the Southern District's analysis "out of context" in a discussion of Rule 9019.

Fourth, the Settlement Order states that trial level litigation in the Southern District was "complex" – but does not explain why this necessarily means that the Second Circuit Appeal will be complex, followed by further trial proceedings on remand, and of no benefit the Estate.  The only way to determine why the Settlement Order makes the jump between a complicated trial and a complicated appeal followed by remand, it is to, again, review the Record on Appeal and guess as to the basis upon which the Settlement Order might have relied.

Fifth, while the Settlement Order states that the Southern District "litigated the case well" – it does not explain, even generally, in what respect the Southern District Litigation was well litigated.  The Settlement Order does not state that the bankruptcy court particularly agrees with the Southern District's legal conclusions, conduct at trial, procedural decisions, jury instructions, or any aspect of litigation management.  At the same time, a more specific finding is required in order to tie the general observation of competent litigation management to the potential trajectory of different factual, procedural, and legal issues on appeal – especially in light of the Settlement Order's decision that the Second Circuit Appeal is of so little value to the Estate that it can reasonably be settled for .45% of its potential value.

Sixth, it is noteworthy that the Settlement Order does not identify the primary legal issue of Debtor's Second Circuit Appeal – or even that the Second Circuit Appeal contains a pure issue of law.  In order to discover that there is a purely legal issue, and that the issue is whether a party that enters a memorandum of understanding that it has no expectation of inclusion in future business deals may later sue under a *quantum meriut* theory for being excluded from future business deals, it is again necessary to consult the Record on Appeal.

Finally, the Settlement Order, in spite of arguments presented at the Settlement Hearing,

makes no factual findings regarding the Trustee's aborted attempt to auction, rather than settle, the Second Circuit Appeal.  [App. R. at 856 (The auction "appears to have been unsuccessful due to the demands of objecting parties.").]  The Appellee Briefs' assertions that Trustee did not attempt to auction the Second Circuit Appeal, but instead attempted to auction the Kiyosakis' promissory notes to Debtor, (Trustee Br. at 2-3; LA Br. at 9, 28), further underlies the extent to which the Settlement Order's loose recitation of facts, and failure to actually find facts with any sort of evidentiary hearing, has led to trouble.  Especially if this Court decides it was error for the Settlement Order not to treat the Settlement Agreement as both a settlement and a sale, further findings and analysis of this issue will be required.

### D.  The bankruptcy court's failure to analyze the Settlement Agreement as both a settlement and a sale was legal and reversible error.

Trustee agrees that, as a matter of law, it was permissible and appropriate for the bankruptcy court to analyze the Settlement Agreement as both a settlement and a sale.  (Trustee Brief at 18.)  While Learning Annex disputes whether it was appropriate to analyze under 11 U.S.C. § 363 the Settlement Agreement, which solely concerned a claim against, rather than held by, the Estate, Learning Annex seems to agree that, because it is important to not elevate form over function, Rule 9019 is sufficiently flexible to allow a bankruptcy court to consider factors normally applied under 11 U.S.C. § 363 when a settlement agreement has many characteristics of a sale.  (LA Br. at 29.)

Where Learning Annex, Trustee, and RDOC materially differ is in their harmless error analysis.   Trustee and Learning Annex assert that any failure to analyze the Settlement Agreement as a sale was harmless.  (LA Br. at 29-30; Trustee Br. at 19-20.)

The error was not harmless because analyzing the Settlement Agreement as a sale would have altered the bankruptcy court's ultimate conclusion.

First, as stated in the preceding section, *the bankruptcy court was operating on the mistaken assumption, which was reasonable based upon Trustee's oral argument in favor of the Settlement Agreement*, that Trustee actually did attempt to auction the Second Circuit Appeal as opposed to, or in addition to, promissory notes the Estate presently holds.  (App. R. at 856-57.)  Under § 363(b), "the court must always scrutinize whether the trustee has fulfilled his duty to 'maximize the value obtained from a sale, particularly in liquidation cases.'"   *In re Psychrometric Sys., Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)).  Moreover, when a trustee proposes selling estate assets outside the ordinary course of business, without considering competing bids, and without marketing the asset to be sold, she is unlikely to articulate a business justification that satisfies 11 U.S.C. § 363(b).  *Id.* at  674-77 (denying Trustee leave to sell estate claims without considering competing offer or marketing the claims).  Thus, it is impossible to state that the bankruptcy court's refusal to analyze the Settlement Agreement as a sale was harmless because the bankruptcy court was, by all appearances, operating under an assumption that Trustee attempted to market the Second Circuit Appeal at an auction to which both estate creditors were invited.

Moreover, as indicated in the preceding paragraph, the analysis applied to a sale is more stringent than the analysis applied to a compromise because rather than settling within the range of reasonable litigation possibilities, the Trustee must maximize the sale price she receives.  *In re Psychrometric Sys., Inc.*, 367 B.R. at 674.   This does not mean a Trustee must go to extraordinary extremes in order to net the best price possible, but it does generally require that when one creditor offers to buy an asset, other creditors be given a chance to make a counteroffer.  In this case, Trustee gave no notice, whatsoever, of Learning Annex's $100,000 offer until after she entered the Settlement Agreement.  (Trustee Br. at 2-3.)  At no time did she discuss the Settlement Agreement with RDOC.  Moreover, RDOC's offer to indemnify Trustee

18

for the cost of litigating the Second Circuit Appeal was made in response to Trustee's Motion to Abandon the Second Circuit Appeal.  (App. R. at 479 ¶ 5, 481 ¶ 9.)  It was not the product of any opportunity to bid for the Second Circuit Appeal.

**E.   The Settlement Order erred, as a matter of law, when it refused to consider RDOC's Indemnification Offer.**

Finally, nothing in the Appellee Briefs indicates that it was not error, as a matter of law, for the Settlement Order to decide that the Indemnification Offer was irrelevant to the bankruptcy court's canvass of the complexity and cost of litigating the Second Circuit Appeal.

1.   Learning Annex's challenges to the Indemnification Offer are supported by neither fact nor law.

To the extent a reply to Learning Annex's opposition to this issue warrant further discussion, it suffices to state that Learning Annex's arguments are largely based on facts not appearing in the record – and based upon inaccurate record citations.  For example, the Learning Annex Brief states that RDOC's Offer to Indemnify is inherently untrustworthy because RDOC "previously stated its position was that the stay of the SDNY Appeal should remain in place during the pendency of the bankruptcy."  (LA Br. at 24.)  Learning Annex cites to its own argument in favor of this statement, (App. R. at 494-512), which does not refer to a position held by RDOC, [App. R. at 501-02 ¶ 17 (citing to position of Robert and Kim Kiyosaki)], and incorrectly describes the position of Robert and Kim Kiyosaki to which it does refer, [App. R. at 369-70 (stating that appeal is meritorious and should be pursued by Trustee or used in negotiations with Learning Annex).]

Similarly, there is no record support for Learning Annex's claim that RDOC was offered the opportunity to match the $100,000 payment for the Second Circuit Appeal.  In reality, Trustee never attempted to auction the Second Circuit Appeal and RDOC only found out about

Trustee's acceptance of Learning Annex's $100,000 offer when Trustee filed her Motion to Approve Settlement Agreement.

Overall, as stated above, (*see* Introduction *supra* at 1 n.1), the Record on Appeal contains absolutely no factual support for Learning Annex's belief that RDOC's offer to indemnify the Trustee will leave the Trustee holding the bill.  (App. R. at 1056:18-1057:3.)

2.  The Settlement Order either erred as a matter of law, fell short of Fed. R. Bankr. P. 7052 as a matter of law, or abused its discretion by dismissing because it dismissed the Indemnification Offer with no explanation or factual support.

Neither Appellee Brief refutes that, in the Tenth Circuit, indemnification offers are an "appropriate consideration when weighing the reasonableness of a proposed settlement," *Frates v. Weinshienk*, 882 F.2d 1052, 1505 (10th Cir. 1989), or that the extent to which an indemnification offer is determinative, or of little importance, depends entirely on the cost-benefit analysis and facts a particular case presents, (Trustee Br. at 20-23).  In fact, it is an abuse of discretion to approve a settlement agreement when a creditor is willing to fund litigation that, if successful, will greatly benefit the estate and that, if not successful, will cause little harm. *Reiss*, 881 F.2d at 893 (holding that bankruptcy court abused its discretion in approving a settlement agreement based upon trustee's belief that fraudulent transfer litigation would be expensive, complex, and lengthy while declining a creditor's offer to pay for litigation).  In cases like the present, where a Trustee's assessment of the complexity and duration of litigation is not supported by the record and a creditor is willing to pay for the litigation trustee seeks to settle, approving the proposed settlement is improper.  *In re Marshall*, 33 B.R. 42, 44-45 (Bankr. D. Conn. 1989) (disapproving settlement of litigation for 1/3 potential value when trustee overestimated complexity and duration of litigation and creditor offered to pay legal bills).  A court is "obliged to consider" a creditor's offer to pay the costs of litigation that "would not

otherwise deleteriously affect the administration of the estate." *In re Lahijani*, 325 B.R. 282, 292 (B.A.P. 9th Cir. 2005).

Thus, the fact that the Settlement Order mentions, and summarily dismisses, the Indemnification Offer as part of RDOC's interest in the Second Circuit Appeal, but does not mention or apply the Indemnification Offer in its analysis of the cost litigating the Second Circuit Appeal, (App. R. at 860-61), or find any of the facts upon which other cases rely when assessing the importance of an indemnification offer, (Trustee Br. at 23-22), means that the Settlement Order:  (1) erred as a matter of law in failing to realize that indemnification offers are highly relevant to a decision between settling and litigating an appeal; (2) failed to satisfy Fed. R. Bankr. P. 7052 by omitting factual analysis and findings that would render the Indemnification Offer irrelevant or unimportant under existing law; or (3) abused its discretion in deciding that that the Indemnification Offer was anything other than what RDOC has consistently and cogently described.

No matter what, on this issue the Settlement Order erred and its error was reversible.

3. Trustee's belief that the Indemnification Offer would make her RDOC's "hired gun" is based upon an inaccurate perception of the Indemnification Offer.

Trustee's opposition to accepting the Indemnification Offer relies primarily upon Trustee's belief that it would be improper for the Trustee to spend Estate assets merely to help help RDOC increase its recovery from the Estate at Learning Annex's expense or to be a "hired gun" or "employee" of RDOC.  (Trustee Brief at 23.)

These statements are somewhat confusing to RDOC and lead RDOC to believe that Trustee does not understand RDOC's Indemnification Offer.  First, if Trustee accepted RDOC's offer to pay for litigating the Second Circuit Appeal, Trustee would not be expending Estate

funds to pursue the Second Circuit Appeal. RDOC would pay whatever fees the bankruptcy court allows as "reasonable" and this would leave the Estate responsible for no fees or costs.

Moreover, the Indemnification Offer will in no manner make Trustee an employee or hired gun under RDOC's control because the Indemnification Offer makes sure that the Estate pays no money to litigate the Second Circuit Appeal, but gives RDOC no control over the litigation or Trustee. RDOC gets the bill – and nothing else. (*See* Statement of the Case *supra* at 4-5.)

4. Trustee's remaining arguments against accepting the Indemnification Offer are best addressed through further research and objective evaluation on remand.

The remainder of Trustee's objections to the Indemnification Offer seem to stem from Trustee's belief that the Second Circuit Appeal "will not be successful and there is no benefit to the estate by pursuing litigation", (Trustee Brief at 24-25), because the Second Circuit Appeal's odds of success are "abysmal". (*Id.* at 17.)

Whatever the cause of Trustee's opinions regarding the Second Circuit Appeal's absolute and complete lack of merit,[7] it is clear that Trustee has concluded that it is better for the Estate to be burdened with a permanent $24 million claim rather than take any time to litigate the Second Circuit Appeal at no expense to the Estate.

And that really is the crux of this appeal:  what sort of facts and analysis are necessary for Trustee to reach, and the bankruptcy court to approve, such an unusually low settlement?  RDOC asserts that, in this appeal, the minimum analysis never occurred – because if it had, the Settlement Agreement would never have been reached – much less approved.

---

[7] The record makes clear that Trustee's judgment in this instance is not entitled to deference because she has never spoken to Debtor's New York counsel regarding the issues on appeal or their potential merit.  (App. R. at 369 ¶5.)  At the same time, Trustee has been the subject of intense lobbying from Learning Annex that is derogatory to Debtor and RDOC, (App. R. at 68-69).

## VI.     CONCLUSION

On remand, all parties and the bankruptcy court should take a little more time to accurately and objectively look at the Second Circuit Appeal, look at and take evidence regarding RDOC's offer to indemnify Trustee for the cost of litigating the Second Circuit Appeal, and objectively evaluate the advantage of settling the Second Circuit Appeal to an Estate that, as Trustee admits, has other assets from which to pay its administrative claims and two creditors with no interest in making a quick $100,000.

For the reasons stated herein, Creditor Appellant Rich Dad Operating Company, LLC, respectfully requests the Court REVERSE the Settlement Order entered on July 16, 2013.

Respectfully submitted this 11th day of October, 2013.

MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC

By: */s/  Devi C. Yorty*
      Gregory L. Williams (Wyoming Bar No. 52363)
      John F. Young (Pro Hac Vice)
      Devi C. Yorty (Pro Hac Vice)
      1700 Lincoln Street, Suite 4000
      Denver, Colorado 80203-4505
      Telephone (303) 830-0800
      Facsimile (303) 830-0809
      Attorneys for Appellant Rich Dad Operating
      Company, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 11th day of

October, 2013, via CM/ECF upon the following:

**James R. Belcher**
Belcher & Boomgaarden LLP
237 Storey Boulevard, Suite 110
Cheyenne, WY 82009
Attorneys for **The Learning Annex**

**Ethan J. Birnberg**
Lindquist & Vennum P.L.L.P.
600 17th Street Suite 1800 South
Denver, CO 80202
Attorneys for **Cashflow Technologies, Inc.**

**Jenny M.F. Fujii**
Kutner Miller Brinen. P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Attorney for **Robert and Kim Kiyosaki**

**Jonathan Harris**
111 Broadway, Suite 402
New York, NY 10006
Attorneys for **Learning Annex Holdings, LLC;
Learning Annex, LLC; Learning Annex L.P.**

**Paul Hunter**
2616 Central Avenue
Cheyenne, WY 82001
Attorneys for **Robert and Kim Kiyosaki**

**Lee M. Kutner**
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Attorneys for **Robert and Kim Kiyosaki**

**Mark E. Macy**
Macy Law Office, P.C.
217 West 18th Street
Cheyenne, WY  82001
Attorney for **Rich Global, LLC**

**Edwin G. Schallert**
Debevoise & Plimpton, LLP
919 Third Avenue
New York, NY 10022
Attorneys for **Learning Annex Holdings, LLC;
Learning Annex, LLC; Learning Annex L.P.**

**Tracy Zubrod, Trustee**
1907 House Avenue
Cheyenne, WY  82001

*/s/ Summer Witt*
Legal Assistant to Devi C. Yorty

24